**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company (n/k/a Sussex Insurance Company), | )<br>)<br>)<br>) | Civil Action No. 3:15-cv-01300-JMC |
| Plaintiff, | ) | **ORDER AND OPINION** |
| v. | )<br>) | |
| U.S. Bank National Association, | )<br>) | |
| Defendant. | )<br>) | |
| _____ | ) | |

Plaintiff Companion Property and Casualty Insurance Company ("Plaintiff") filed this action against Defendant U.S. Bank National Association ("Defendant") for (1) breach of contract – trust agreements, (2) breach of fiduciary duty, (3) negligence/gross negligence, (4) negligent misrepresentation, (5) equitable estoppel, and (6) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 to -560 (2014). (See ECF No. 1.)

This matter is before the court on Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 16.) Plaintiff filed a Response in Opposition (ECF No. 25), and Defendant filed a Reply (ECF No. 33). For the following reasons, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.

## I.    JURISDICTION

The District Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Plaintiff is an insurance company organized under the laws of South Carolina with

1

its principal place of business in Richland County, South Carolina.  (ECF No. 1 at 1 ¶ 1.)

Defendant is a nationally chartered bank with its principal place of business in Ohio.  (Id. at ¶ 2.)

The court is satisfied that the amount in controversy exceeds $75,000.00.  (See ECF No. 1.)

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has been a participant in a fronted insurance program (the "Program") with

Redwood Reinsurance SPC, Ltd. ("Redwood") and Dallas National Insurance Company

("Freestone"), two reinsurance companies.[1]  (Id. at 4 ¶ 12 (explaining that in a fronted insurance

program, the reinsurer (here, Freestone and Redwood) bears the actual risk of program

performance and the insurance company (here, Plaintiff) receives a fee for allowing its name and

paper to be used as the front).)  "Redwood's and Freestone's reinsurance obligations to [Plaintiff]

under the Program were secured by reinsurance collateral trusts established for the sole benefit of

[Plaintiff] and established pursuant to the Redwood and Freestone Reinsurance Agreements . . .

."  (ECF No. 1 at 4 ¶ 16 (explaining that the primary purpose of these trusts was to provide liquid

assets to Plaintiff to satisfy the reinsurers' reinsurance obligations if they became insolvent);

ECF No. 16-1 at 7).)[2]

Pursuant to two Trust Agreements, Defendant became Trustee to Plaintiff: (1) the

"Second Amended and Restated Trust Agreement," dated December 21, 2012, between

---

[1] (See ECF No. 16-1 at 7 (explaining a fronted insurance program).)

[2]  In the Motion to Dismiss, Defendant explains that:

> In a fronting arrangement, state regulations governing the insurer
> and reinsurer generally require that assets serving as collateral be
> liquid and marketable, allowing them to be converted quickly into
> cash to pay claims.  By following this structure, [Plaintiff] was
> allowed to treat the trust deposits as an asset on its financial
> statements filed with regulators, offsetting the insurance coverage
> promised on its paper and freeing it to issue additional insurance.

(ECF No. 16-1 at 7 (citations omitted); see ECF No. 1 at 5 ¶ 17 (providing similar explanation).)

Redwood as Grantor, Plaintiff as Beneficiary, and Defendant as Trustee (the "Redwood Trust

Agreement"); and (2) the "Amended and Restated Trust Agreement," dated December 28, 2012,

between Freestone as Grantor, Plaintiff as Beneficiary, and Defendant as Trustee (the "Freestone

Trust Agreement").  (ECF No. 1 at 1 ¶ 3.)

     The Redwood Trust Agreement (ECF No. 1-1) and the Freestone Trust Agreement (ECF

No. 1-2) (collectively the "Trust Agreements" or "TAs"), provide in relevant part that:[3]

> Section 4(c): "From time to time, subject to Section 2 of this
> Agreement, [Redwood or Freestone] may direct [Defendant] to
> substitute Assets of comparable value for other Assets presently
> held in the Trust Account with written notification to [Plaintiff] of
> the substitute Assets.  [Defendant] shall comply with any such
> direction.  Each time that [Redwood or Freestone] provides
> [Defendant] with substitution direction it shall be considered a
> representation and warranty of [Redwood or Freestone] that (i) the
> substitute Assets are Eligible Securities or cash, and (ii)
> [Defendant] has determined that the fair market value of the
> substituted Assets is not less than the fair market value of the
> Assets being replaced thereby."
>
> Section 7(b): "Before accepting any Asset submitted for deposit to
> the Trust Account, [Defendant] shall determine that such Asset is
> in such form that [Plaintiff] whenever necessary may, or
> [Defendant] upon direction by [Plaintiff] will be able to, negotiate
> such Asset without consent or signature from [Redwood or
> Freestone] or any person or entity other than [Defendant] in
> accordance with the terms of this Agreement."
>
> Section 7(f): "[Defendant] shall furnish to [Redwood or Freestone]
> and [Plaintiff] a statement of all Assets in the Trust Account
> including their fair market value (1) as of the inception of the Trust
> Account and (2) as of the end of each calendar month . . . . Such
> statement shall be considered a certification of [Defendant] that the
> fair market value of the Assets in the Trust Account is true and
> correct according to the best information and belief of
> [Defendant]."

Moreover, the TAs provide that:

---

[3] The court observes that the relevant sections of the TA are nearly identical.

> Section 7(i): "The duties and obligations of [Defendant] shall only be such as are specifically set forth in this Agreement . . . and no implied duties or obligations shall be read into this Agreement against [Defendant]. [Defendant] shall not be liable except for its own negligence, willful misconduct or lack of good faith."

Finally, the TAs also provide that:

> Section 7(l): "[Defendant] shall not be responsible for the genuineness or value of any of the Assets or for the validity, perfection, priority or enforceability of liens in any of the Assets, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder (except to the extent such action or omission constitutes negligence, willful misconduct or lack of good faith on the part of [Defendant]), for the validity of title to the Asset, for insuring the Assets or for the payment of taxes, charges, assessments or liens upon the Assets."

At the start of Defendant's role as Trustee, Plaintiff alleges that in January 2013 the Redwood Trust Account had Assets totaling approximately $107.2 million. (ECF No. 1 at 7 ¶ 26 (consisting of $12.6 million in cash, approximately $92.1 million worth of investments in reputable bond companies, and $2.5 million in stock).) Between May 2013 and January 2014, Defendant allegedly approved and permitted the substitution of Assets for various investments. (See id. at ¶ 27.) Plaintiff alleges that as of March 2014, the Redwood Trust Account had approximately $364,000 in cash, investments in Destra Unit Investment Trusts ("UITs") purported to be worth approximatively $93.4 million but allegedly worth far less, and investments in stocks and other securities purported to be worth $28.1 million but that appear to have little value. (See id. at 8 ¶ 28.)

As for the Freestone Trust Account, Plaintiff alleges that in January 2013 the Trust Account had approximately $72.8 million in cash. (Id. at ¶ 31.) Between May 2013 and January 2014, Plaintiff alleges that Defendant approved and permitted the substitution of Assets for various investments. (See id. at ¶ 32.) Plaintiff further alleges that as of March 2014, the

4

Freestone Trust Account had $5,000 in cash, investments in Destra UITs purported to be worth approximately $33.8 million but worth far less, and investments in stocks and other securities purported to be worth approximately $21 million but that appear to have little value.  (See id. at 9 ¶ 33.)

Plaintiff filed this Complaint on March 20, 2015.  (ECF No. 1).  On May 18, 2015, Defendant replied with a Motion to Dismiss.  (ECF No. 16.)  On June 22, 2015, Plaintiff filed a Response in Opposition (ECF No. 25) to which Defendant, on July 13, 2015, filed a Reply (ECF No. 33).  On September 10, 2015, the court held a hearing regarding the Motion to Dismiss. (ECF No. 37.)

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

## IV.    ANALYSIS

In its Motion to Dismiss, Defendant seeks dismissal of the following claims: (1) breach of contract – trust agreements, (2) breach of fiduciary duty, (3) negligence/gross negligence, (4) negligent misrepresentation, (5) equitable estoppel, and (6) violation of SCUTPA.

1.  Breach of Contract – Trust Agreements (Count 1)

Defendant maintains that the Complaint fails: (A) to adequately plead that any of the allegedly depleted Assets were securing reinsurance obligations for which it served as Trustee; and (B) to state a claim for breach of contract because it is predicated on duties that are not expressed in the TAs.  (See ECF No. 16-1 at 17–22.)

A.  *Adequacy of Pleadings Regarding Allegedly Depleted Assets*

Defendant maintains that the Complaint should be dismissed because it does not adequately allege that Assets in the accounts secure obligations under the two Reinsurance Agreements specified in the TAs.  (See ECF No. 16-1 at 17–18 (noting that the "Complaint creates the possibility that *all* of the assets at issue secure Redwood's and Freestone's obligations under *other* reinsurance contracts — for which [Defendant] never consented to serve as Trustee"); ECF No. 33 at 3–5).)  At the hearing, Defendant emphasized two points.  With respect to the Freestone Trust Agreement, Defendant argued that the Complaint fails to include any allegations that any of the allegedly depleted Assets relate to the January 2011 Reinsurance

6

Agreement, which is the defined Reinsurance Agreement in the Freestone Trust Agreement, and according to Defendant, is the basis for the entire Freestone Trust Agreement. (See ECF No. 38 at 17.) Similarly, concerning the Redwood Trust Agreement, Defendant explained that the Complaint fails to identify which Assets are covered under the operative Reinsurance Agreement (*i.e.*, the October 2011 Reinsurance Agreement). (See id. at 17–18 (emphasizing that plausibility not possibility is the Rule 12(b)(6) standard).) Plaintiff responds that the fact that there may be other agreements between Plaintiff and Redwood or Freestone does not establish that the Assets at issue were not governed by the TAs. (See ECF No. 25 at 10.)

Upon review, the court finds that Plaintiff's allegations, taken as true, allow the court to draw the reasonable inference that Defendant is liable for the misconduct alleged. Rule 8(a) of the Federal Rules of Civil Procedure only requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 570). Additionally, "the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992) (citing Wolman v. Tose, 467 F.2d 29, 34 (4th Cir. 1972)). At the hearing, Plaintiff explained *inter alia* that the TAs define the term "Grantor's Obligations" to mean Redwood's and Freestone's obligations to Plaintiff under the terms of the Reinsurance Agreement, policies, or program agreement. (See ECF No. 38 at 52–53, 67–68 (adding that § 1(c)(iii) of the TAs, which discusses the "Grantor's Obligations," indicates that Defendant understood that the Assets deposited into the account were broader than simply the Reinsurance Agreement).) Plaintiff has presented an interpretation of the TAs that is broader than Defendant's assertion of Redwood's and Freestone's obligations, and therefore challenges the foundation of Defendant's argument. Without addressing the

ultimate merit of Plaintiff's interpretation, the court finds that Plaintiff has alleged sufficient facts, taken as true, that establish that the allegedly depleted Assets secure obligations under the TAs.

### B. Duties Under TAs

Defendant maintains that the Complaint should be dismissed because it is predicated on duties that are not expressed in the TAs.[4]  (See ECF No. 16-1 at 19–22.)  Specifically, Defendant argues that it had no duty: (i) to determine that the substituted Assets were of comparable value (see TAs § 4(c)), and (ii) to independently value the Assets (see TAs § 7(f)).  (See ECF No. 16-1 at 19 (emphasizing that TAs § 7(i) limits Defendant's duties to those set forth in the TAs and states that "no implied duties or obligations shall be read into this Agreement against [Defendant]").)

#### i.    Section 4(c)

Defendant maintains that it had no duty to determine that Redwood and Freestone were supplying Assets of "comparable value," or to refuse to follow their directions if they were not. (See ECF No. 16-1 at 20.)   Specifically, Defendant argues that the TAs expressly authorize Redwood and Freestone to direct Defendant to substitute Assets, and it instructs that Defendant "shall comply with any such direction." (See id. (quoting TAs § 4(c)).)   Second, Defendant argues that the TAs place on Redwood and Freestone the duty to represent and warrant that the values of the substituted and replaced Assets are comparable.  (See ECF No. 16-1 at 20–21; ECF No. 33 at 6.)  In support, Defendant points to § 7(c) and (l) of the TAs.  Section 7(c) states that

---

[4] Regarding Plaintiff's claim that Defendant breached § 7(b) of the TAs by accepting Assets for deposit without determining that Plaintiff could negotiate such assets, the court observes that Defendant relies on the same "insufficient connection" argument to dismiss Plaintiff's Complaint.  (See ECF No. 16-1 at 19 n.5 ("Because of the facts the Complaint alleges, that claim cannot be dismissed based on the reasoning set forth in Point II of this memorandum.  However, the claim still can and should be dismissed on the grounds set forth above in Point I.").)

"[Defendant] shall have no responsibility whatsoever to determine that any Assets in the Trust Account are or continue to be 'Eligible Securities.'" (See ECF No. 16-1 at 21 (quoting TAs § 7(c)).) Section 7(l) states that:

> [Defendant] shall not be responsible for the genuineness or value of any of the Assets or for the validity, perfection, priority or enforceability of liens in any of the Assets, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder (except to the extent such action or omission constitutes negligence, willful misconduct or lack of good faith on the part of [Defendant]), for the validity of title to the Asset, for insuring the Assets or for the payment of taxes, charges, assessments or liens upon the Assets.

(ECF Nos. 1-1 (quoting TAs § 7(l)), 1-2 (quoting TAs § 7(l)).) Finally, Defendant contends that the potential liability for losses in § 7(l) relates only to liens in the Assets. (See ECF No. 16-1 at 21; ECF No. 33 at 7 (emphasizing *inter alia* that the phrase "'except to the extent such action or omission constitutes negligence, willful misconduct or lack of good faith' modifies *only* the immediately preceding clause addressing conduct that impairs the 'validity . . . of liens in the Assets'").)

The court finds that the Complaint adequately alleges that Defendant breached duties it owed under the TAs. Again, as the Fourth Circuit stated in <u>Martin</u>: "[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." Section 4(c) of the TAs states that: "Each time that [Redwood or Freestone] provides [Defendant] with substitution direction it shall be considered a representation and warranty of [Redwood or Freestone] that . . . (ii) [Defendant] has determined that the fair market value of the substituted Assets is not less than the fair market value of the Assets being replaced thereby." The language of § 4(c) appears to assign Defendant the duty to make the determination that the fair market value of the substituted Assets is comparable. As

Plaintiff argues, if Defendant did not have this duty – the TAs would necessarily have been drafted differently to omit any reference to Defendant.  (See ECF No. 25 at 12.)   Given Plaintiff's allegation that the substituted Assets were of little to no value and the fact that § 4(c) can be interpreted to create a duty for Defendant, the court finds that Plaintiff's Complaint sufficiently pleads the alleged breach of § 4(c) of the TAs.

Likewise, Defendant's reliance on § 7(c) of the TAs is insufficient to dismiss Plaintiff's claim for breach of § 4(c) of the TAs.  As Plaintiff correctly points out, the determination of whether Assets are or continue to be Eligible Securities is a different question than determining the value of those Assets.[5]   (See id. (maintaining that the determination of an investment's eligibility was left to Redwood and Freestone, whereas the obligation to determine that the value of the substituted Assets was comparable belonged to Defendant).)  Moreover, it is not clear that § 7(c) of the TAs applies to Defendant's obligations as they relate to substituted Assets.  As Plaintiff argues: "Assets being *substituted into the Trust Account* – what is at issue with respect to the breaches of section 4(c) – by definition are not '*in the Trust Account*' and thus section 7(c) has nothing to say about [Defendant's] obligations with respect to substituted assets."  (ECF No. 25 at 13.)   Accordingly, the court finds that § 7(c) is insufficient to support Defendant's argument that Plaintiff's Complaint should be dismissed for failure to state a claim.

Finally, the court finds that § 7(l) of the TAs does not support Defendant's argument that Plaintiff's Complaint fails to allege sufficient facts for the court to draw a reasonable inference that Defendant is liable for the conduct alleged.  As previously noted, there is a dispute regarding

---

[5] "The term 'Eligible Securities' shall mean and include only those investments permitted or allowed under the investment laws applicable to domestic insurance companies as promulgated by the State of South Carolina  from time to time, including cash, certificates of deposit . . . and securities . . . representing investments of the types specified in Title 38, Chapter 12 of the South Carolina Insurance Law[.]" (ECF Nos. 1-1 (quoting § 11); 1-2 (quoting § 11).)

the proper interpretation of the TAs,[6] which according to <u>Martin</u> militates against dismissing Plaintiff's Complaint.  Accordingly, the court finds that Defendant's Motion to Dismiss as to § 4(c) is without merit.

### ii.    Section 7(f)

Defendant maintains that the TAs do not impose any independent duty to value the Assets that Redwood and Freestone placed in the Trust. (<u>See</u> ECF No. 16-1 at 22.)  Section 7(f) of the TAs states that: "[Defendant] shall furnish to Redwood, Freestone, and Plaintiff a statement of all Assets in the Trust Account including their fair market value . . . . Such statement shall be considered a certification of [Defendant] that the fair market value of the Assets in the Trust Account is true and correct according to the best information and belief of [Defendant]."   Specifically, Defendant argues that Plaintiff's allegations do not "assert that [Defendant] played any role in valuing the securities or learned anything about their fair market values that would cause its inclusion of the assets' reported values to be contrary to 'its best information and belief.'" (ECF No. 16-1 at 22; <u>see also</u> ECF No. 33 at 8 (maintaining that Plaintiff's allegation that Defendant "is the custodian" and "involved in the management and oversight" of certain assets is insufficient to state a claim that the values Defendant certified were contrary to its best information and belief).)

---

[6] The TAs are attached as exhibits to the Complaint and are referenced throughout the document. (<u>See</u> ECF Nos. 1-1 & 1-2.)  The court may consider the TA and any other document attached or incorporated into the Complaint without converting Defendant's Motion to Dismiss into a summary judgment motion.  <u>See</u> <u>E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." (citing <u>Sec'y of State for Defence v. Trimble Navigation Ltd.</u>, 484 F.3d 700, 705 (4th Cir. 2007))); <u>Phillips v. LCI Int'l Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and there was no authenticity challenge).

The court finds that the Complaint adequately alleges a breach of § 7(f). A well-pleaded complaint "simply calls for enough facts to raise a reasonable expectation" of recovery. Twombly, 550 U.S. at 556. Plaintiff's Complaint alleges that Defendant is the custodian and is involved in the management and oversight of Destra UITs, which are held in the TA for Plaintiff – as well as several other Assets. (See ECF No. 1 at 5 ¶¶ 19–20.) Accepting as true Plaintiff's allegations that the substituted Assets are of little or no value and that Defendant was required to certify the fair market value of Assets that allegedly had nominal value, the court finds that Plaintiff's Complaint has sufficiently alleged facts for the court to draw the reasonable inference that Defendant is liable for its breach of § 7(f).

2. Breach of Fiduciary Duty (Count 2), Negligence/Gross Negligence (Count 3), and Negligent Misrepresentations (Counts 4)

Defendant maintains that the Complaint does not state a claim for breach of fiduciary duty, negligence, or negligent misrepresentation. First, Defendant argues that Plaintiff cannot base a tort claim on an alleged breach of contractual duties, but must identify an independent basis for the duty; the South Carolina Trust Code precludes Plaintiff's independent tort claims; and the Complaint does not plead facts showing a separate special relationship. (See ECF No. 16-1 at 20–27.) Second, Defendant contends that the claim for negligent misrepresentation does not demonstrate that Defendant made false statements or that Plaintiff's reliance was justifiable. (See id.)

i.    Fiduciary Duty and Negligence

Defendant contends that Plaintiff cannot base a tort claim on an alleged breach of contractual duties because it has not identified an independent basis for that duty. The South Carolina Supreme Court has held that: "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie."

12

Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 463 S.E.2d 85, 88 (S.C. 1995). "When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." Tommy, 463 S.E.2d at 88 (citations omitted). This principle, which is identified as the economic loss rule, explains that "parties to a contract may allocate their risk by agreement and do not need the special protections of tort law to recover damages caused by a breach of contract." Laidlaw Envtl. Servs., (TOC), Inc. v. Honeywell, Inc., 966 F. Supp. 1401, 1414 (D.S.C. 1996) (citations omitted). "[T]he question of whether [a] plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed." Tommy, 463 S.E.2d at 54 (emphasis supplied) (adding that a "breach of a duty arising independently of any contract duties between the parties . . . may support a tort action"). Here, Plaintiff argues that its trustee/beneficiary relationship is a special relationship, which gives rise to a separate duty of care and a duty of loyalty to act solely in the interest of the beneficiary. (See ECF No. 25 at 17, 18.) Thus, the court finds that Plaintiff has identified an independent basis for its breach of fiduciary duty claim.

The court finds that although the TAs do not exonerate Defendant from liability if it exhibits a lack of good faith in performing its contractual duties, it is not clear that the source of this duty is independent from the South Carolina Trust Code's Default and Mandatory Rule, which provides for: "the duty of a trustee to act in good faith and in accordance with the purpose of the trust[.]" See S.C. Code Ann. § 62-7-105(b)(2) (2014). In making this assessment, the court acknowledges Defendant's contention that the South Carolina Trust Code's Default and Mandatory Rule provides eleven separate requirements that may not be waived, and that these requirements do not include a duty of care. See S.C. Code Ann. § 62-7-105(b), Reporter's

Comment; (ECF No. 33 at 10.)  However, the court also observes that S.C. Code Ann. § 62-7-804 (2014) states that: "A Trustee shall administer the trust as a prudent person would . . . . In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution."  See Verenes v. Alvanos, 690 S.E.2d 771, 773 n.4 (S.C. 2010) (stating that "a trustee owes a trust a duty of reasonable care").[7]  While the Reporter's Comment to this section also states that a "settlor who wishes to modify the standard of care specified in this section is free to do so," the TAs do not appear to address or expressly modify this standard of care.  Accordingly, the court finds that Plaintiff has sufficiently alleged that there exists an independent duty of good faith and care, which supports Plaintiff's claims for breach of fiduciary duty and negligence/gross negligence.

### ii.     Negligent Misrepresentation

Defendant maintains that Plaintiff's negligent misrepresentation claim fails because the Complaint does not allege facts showing that Defendant made false statements or that Plaintiff's reliance was justifiable.  (See ECF No. 16-1 at 27 (emphasizing that "[Plaintiff] pleads no facts

---

[7] See S. Alan Medlin, *The Impact of Significant Substantive Provisions of the South Carolina Trust Code*, 57 S.C. L. Rev. 137, 166 (2005) (discussing the South Carolina Trust Code). Medlin states that:

> Arguably, former [South Carolina Probate Code] section 62-7-302 left a statutory gap in coverage by not providing for a statutorily expressed standard of care for trustee matters other than investment and management. [The South Carolina Trust Code ("SCTC")] section 62-7-804 rectifies this omission by providing that '[a] trustee shall administer the trust as a prudent person would . . . [and] shall exercise reasonable care, skill, and caution.' By applying the standard of care to the administration of the trust, rather than only to investment and management, the SCTC globally imposes its standard of care to a trustee's action or failure to take action.

Id. (discussing the South Carolina Trust Code's standard of care).

showing that [Defendant] possessed information contradicting the values it relayed in its account

statements, and so does not allege that [Defendant] certified Asset values contrary to its best

information and belief . . . .").  Furthermore, Defendant contends that Plaintiff does not allege

that "anything prevented it from obtaining information directly from Freestone and Redwood –

particularly in light of their longstanding relationship spanning multiple agreements."  (ECF No.

16-1 at 27; ECF No. 33 at 11 n.3 (maintaining that § 7(l) of the TAs precludes Plaintiff from

relying on Defendant for the value of any Assets).)

The court finds that Plaintiff has sufficiently alleged facts for the court to draw the

reasonable inference that Defendant is liable for the misconduct alleged.  To establish liability

for negligent misrepresentation:

> [T]he plaintiff must show by a preponderance of the evidence: (1)
> the defendant made a false representation to the plaintiff; (2) the
> defendant had a pecuniary interest in making the representation;
> (3) the defendant owed a duty of care to see that he communicated
> truthful information to the plaintiff; (4) the defendant breached that
> duty by failing to exercise due care; (5) the plaintiff justifiably
> relied on the representation; and (6) the plaintiff suffered a
> pecuniary loss as the proximate result of his reliance on the
> representation.

See Turner v. Milliman, 708 S.E.2d 766, 769 (S.C. 2011) (citation omitted).  Here, Plaintiff has

sufficiently alleged that Defendant made false representations regarding the value of Assets.

(See ECF No. 1 at 7 ¶ 27–9 ¶ 33 (alleging that Assets had little to no value), & 15 ¶ 60.)  As

Plaintiff indicated at the hearing, the negligent misrepresentation claim is separate from the

breach of § 7(f).  (See ECF No. 38 at 65–66 (distinguishing the "best information and belief"

language in § 7(f) from the element of making a false representation under the negligent

misrepresentation claim).)  Moreover, Plaintiff has sufficiently alleged that Defendant had a

pecuniary interest, established a duty of care, and breached that duty of care when it made false

3:15-cv-01300-JMC     Date Filed 11/24/15     Entry Number 41     Page 16 of 19

representations.  (See ECF No. 1 at 16 ¶¶ 61–63 (alleging that as a result of Defendant's business dealing with Destra UITs, Defendant  had a pecuniary interest in making representations about the value of the Assets).)   As for the element concerning Plaintiff's justifiable reliance on Defendant's representation, as previously discussed, the court finds that Plaintiff has presented an interpretation of § 7(l) and an argument regarding Defendant's fiduciary duties under the TA, which permit the court to infer that Plaintiff justifiably relied on Defendant's representations. Finally, the court finds that Plaintiff has sufficiently alleged that it suffered a pecuniary loss as the proximate result of these representations.  (See ECF No. 1 at 16 ¶ 65.)   Accordingly, the court finds that Plaintiff's Complaint provides sufficient facts for the court to establish that Defendant is liable for the alleged negligent misrepresentations.

3.   Equitable Estoppel (Count 5)

Defendant maintains that Plaintiff's claim fails as a matter of law because estoppel is not an affirmative claim under South Carolina law.  (See ECF No. 16-1 at 28.)  The South Carolina Supreme Court has held that: "While the doctrine of waiver or equitable estoppel may be invoked as affirmative defenses to counterclaims, they may not be asserted in a complaint as offensive weapons."  Janasik v. Fairway Oaks Villas Horizontal Prop. Regime, 415 S.E.2d 384, 388 (S.C. 1992); Nash v. Tara Plantation Homeowners Ass'n, Inc., No. 2010-UP-355, 2010 WL 10080093, at *4–5 (S.C. Ct. App. July 12, 2010); see also Buffington v. T.O.E. Enters., 680 S.E.2d 289, 291 (S.C. 2009) (recognizing Janasik's holding regarding the use of equitable estoppel in a complaint).  While the court acknowledges Plaintiff's argument that the recognition of equitable estoppel in South Carolina's courts has not been limited simply to its use as a counterclaim, it also observes that, in the cases Plaintiff presents, the issue of whether an equitable estoppel claim can properly be raised in a complaint appears not to have been brought

16

directly to the state appellate court's attention.  (See ECF No. 25 at 22–23 (relying *inter alia* on S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth., 426 S.E.2d 748, 750 (S.C. 1993) (reviewing petitioner's claim of equitable estoppel and affirming the Master in Equity's decision to equitably estop respondent)).)  Accordingly, Plaintiff's equitable estoppel claim is dismissed.

4.    South Carolina Unfair Trade Practice Act ("SCUTPA") (Count 6)

Defendant maintains that Plaintiff's SCUTPA claim fails because it does not adequately allege an impact on the public interest.  (See ECF No. 16-1 at 28–30.)  SCUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."  S.C. Code Ann. § 39-5-20 (2015).  To establish a SCUTPA claim, a plaintiff must demonstrate that "(1) the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest."  Network Computing Servs. Corp. v. Cisco Syss., Inc., 152 F. App'x 317, 320 (4th Cir. 2005) (quoting Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283, 291 (4th Cir. 1998)).  "Conduct that affects only the parties to the transaction provides no basis for a SCUTPA claim."  Morgan v. HSBC Bank USA, N.A., 6:13-cv-03593-JMC, 2015 WL 3888412, at *4 (D.S.C. June 24, 2015) (citation omitted).  "An impact on public interest may be shown if the acts or practices have the potential for repetition."  Id. (citation and quotation omitted).  The potential for repetition may be shown in two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts."  Id. (citation and quotation omitted).  A "plaintiff must use specific facts to demonstrate that members of the public were or were likely to be

17

affected."  Id. at *5 (citation omitted).  Moreover, "the mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element."  Id.  (citation omitted).

Upon review, the court finds that the Complaint does not establish a claim under SCUTPA.  A claim under SCUTPA is inadequate where it "fails to allege any specific procedures or business practices that create the potential for repetition."  See Ethox Chem., LLC v. Coca-Cola Co., No. 12-1682, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013).  Plaintiff argues that: "[Defendant's] current procedures and course of conduct allow it to take on responsibilities to manage trusts, but it fails to do so, all while distributing inaccurate account statements and false certifications." (ECF No. 25 at 24.) Additionally, Plaintiff maintains that Defendant's "failure to ensure that the Trust Accounts in fact held sufficient funds jeopardized the ability of Redwood and Freestone to meet their obligations to insureds."  (Id. at 25.)

Plaintiff's Complaint does not present specific facts demonstrating that Defendant's conduct is the result of standard procedures or business practices that have an adverse impact on public interest.  The fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice.  "While every private dispute doubtless has remote public ramifications, these cannot be held to satisfy the element of injury to the public interest which is a prerequisite to any recovery under the UTPA. Were the rule otherwise, every ordinary commercial dispute would become a candidate for the extraordinary remedies provided by the Act."  Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc., 974 F.2d 502, 507–08 (4th Cir. 1992).  Accordingly, the court finds that the Complaint does not establish a claim under SCUTPA.

## V.    CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART**

18

Defendant's Motion to Dismiss.  (ECF No. 16.)  The court grants Defendant's Motion to Dismiss as to the equitable estoppel claim (count 5) and the SCUTPA claim (count 6).  The court denies Defendant's Motion to Dismiss as to the claims for breach of contract (count 1), breach of fiduciary duty (count 2), negligence/gross negligence (count 3), and negligent misrepresentation (count 4).

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

November 24, 2015
Columbia, South Carolina

19