## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company (n/k/a Sussex Insurance Company), | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:15-cv-01300-JMC |
| v. | ) ) | |
| U.S. Bank National Association, | ) ) | **ORDER AND OPINION** |
| Defendant. | ) ) ) | |
| ——————————————— | ) ) | |
| U.S. Bank National Association, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| Redwood Reinsurance SPC, Ltd.; Southport Specialty Finance; Southport Lane Advisers; Administrative Agency Services; Alexander Chatfield Burns, | ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |
| ——————————————— | ) | |

Companion Property and Casualty Insurance Company ("Companion") filed this action against Defendant and Third-Party Plaintiff, U.S. Bank National Association ("U.S. Bank"), for (1) breach of contract – trust agreements, (2) breach of fiduciary duty, (3) negligence/gross negligence, (4) negligent misrepresentation, (5) equitable estoppel, and (6) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 *et seq.* (2015).  (*See* ECF No. 1.)  U.S. Bank filed a Motion to Dismiss (ECF No. 16), and this court dismissed

Companion's claims against it except for the claims of breach of contract, breach of fiduciary duty, negligence/gross negligence, and negligent misrepresentation. (*See* ECF No. 41.)

Now before the court are the Motions to Dismiss of Third-Party Defendants Southport Specialty Finance ("SSF"), Southport Lane Advisers ("SLA"), and Administrative Agency Services ("AAS"), (ECF No. 80), as well as the Motion to Dismiss of Third-Party Defendant Alexander Chatfield Burns, (ECF No. 83-1) (collectively, "Third-Party Defendants") as to U.S. Bank's third-party action against them for apportionment, contribution, and equitable indemnification.[1] (*See generally* ECF No. 50.) For the reasons stated herein, this court **GRANTS IN PART** and **DENIES IN PART** Third-Party Defendants' Motions to Dismiss (ECF Nos. 80, 83). Specifically, the court dismisses U.S. Bank's third-party claims of apportionment and equitable indemnification.[2]

## I.     JURISDICTION

The District Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (2012) because the parties are citizens of different states and the amount in controversy exceeds $75,000.[3] (*See* ECF No. 50 at 2–9.)

---

[1] On May 10, 2016, the court held a hearing regarding Third-Party Defendants' Motions to Dismiss. (ECF No. 112.)

[2] This court does not consider in this Order U.S. Bank's claim for contractual indemnification against Redwood Reinsurance SPC, Ltd. ("Redwood") (*see* ECF No. 50 at 35), as Redwood did not file a motion to dismiss regarding that claim.

[3] *See infra* IV.D for a discussion of Third-Party Defendant Burns's arguments concerning dismissal of claims against him under Fed. R. Civ. P. 12(b)(1) (2012) for lack of subject matter jurisdiction.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[4]

A.     Companion's Claims against U.S. Bank: Factual Background

Companion participated in a fronted insurance program (the "Program") with Redwood Reinsurance SPC, Ltd. ("Redwood") and Dallas National Insurance Company ("Freestone"), two reinsurance companies.  (ECF No. 1.)  In a fronted insurance program, the reinsurer—here, Freestone and Redwood—bears the actual risk of program performance.  (ECF No. 50 at 7.)  The insurance company—here, Companion—receives a fee for allowing its name and paper to be used as the front.  (*Id.*)  As part of the Program, reinsurance collateral trusts established for Companion's benefit under the reinsurance agreements secured Redwood's and Freestone's reinsurance obligations to Companion.  (ECF No. 1 at 4.)  According to U.S. Bank, the main purpose of these trusts was to provide liquid assets to satisfy the reinsurers' reinsurance obligations in the event that the reinsurers became insolvent.  (ECF No. 16-1 at 7.)

Third-Party Defendant Burns founded Southport,[5] a New-York based private equity firm, and was at all times relevant to this action Southport's beneficial owner, controlling person, and chief strategist.  (ECF No. 50 at 11.)  Affiliates of Southport acquired Redwood in 2012 and Freestone in 2013.  (*Id.* at 12.)  During the time of these acquisitions (the fall of 2012), U.S. Bank was substituted as a successor trustee on Companion's reinsurance trust agreements with Redwood and Freestone.  (*Id.* at 13.)  U.S. Bank became trustee to Companion under two separate trust agreements: (1) the "Redwood Trust Agreement," between Redwood as Grantor, Companion as

---

[4] The relevant facts referenced from the Complaint in this section are taken as true only for the purposes of Third-Party Defendants' Motions to Dismiss.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) ("When ruling on a Rule 12(b)(6) motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (quotations omitted).).

[5] "Southport" refers collectively to Southport Lane, LP; Southport Lane Management, LLC; Southport Lane Genesis, LP; SLI Holdings, Inc.; and Southport Lane Financial, Inc. and their respective subsidiaries and affiliates.

Beneficiary, and U.S. Bank as trustee; and (2) the "Freestone Trust Agreement," between Freestone as Grantor, Companion as Beneficiary, and U.S. Bank as trustee. (ECF No. 50 at 14.)

The Redwood Trust Agreement (ECF No. 50-1) and the Freestone Trust Agreement (ECF No. 50-2) (collectively the "Trust Agreements") stated that Freestone and Redwood, as Grantors, would be making representations and warranties regarding the quality and sufficiency of the assets that they transferred for deposit in the trust accounts. (§ 1(c).) Specifically, by agreement, Redwood and Freestone would promise that the assets: (1) consisted only of "Eligible Securities"[6] as defined by contract; (2) were in such form that Companion could transfer and dispose of any assets without the consent of anyone else; and (3) at all times had a value sufficient to cover 125% of Redwood's and Freestone's respective reinsurance obligations. (*Id.*; *see also id.* § 6.)

Companion vested authority to administer the trust's assets and make investment decisions in Redwood and Freestone, who then gave directions to U.S. Bank for investing the assets. (§§ 4(b)-(d) (requiring U.S. Bank to "execute Investment Orders as directed").) In executing these orders, U.S. Bank was "authorized to follow and rely upon all instructions" pursuant to Redwood's and Freestone's authorized signatories—if U.S. Bank followed the instructions, it was not to incur liability for actions "in reliance in good faith on such instructions." (*Id.* § 7(h).) Other provisions of the Trust Agreements specifically highlighting the parties' responsibilities provided that:

> Section 4(c): "From time to time, subject to Section 2 of this Agreement, [Redwood or Freestone] may direct [U.S. Bank] to substitute Assets of comparable value for other Assets presently held in the Trust Account with written notification to [Companion] of the substitute Assets. [U.S. Bank] shall comply with any such direction. Each time that [Redwood or Freestone] provides [Companion] with substitution direction it shall be considered a representation and warranty of [Redwood or Freestone] that (i) the substitute Assets are Eligible Securities or cash,

---

[6] The Trust Agreements define Eligible Securities as "investments permitted or allowed under South Carolina's investment laws applicable to domestic insurance companies" including cash and investment of the types specified in South Carolina's Investments of Insurers Act. (§ 11.) The Trust Agreements further provide that securities issued by a Parent, Subsidiary, or Affiliate of any Grantor are not Eligible Securities. (*Id.*)

and (ii) [U.S. Bank] has determined that the fair market value of the substituted Assets is not less than the fair market value of the Assets being replaced thereby."

Section 7(b): "Before accepting any Asset submitted for deposit to the Trust Account, [U.S. Bank] shall determine that such Asset is in such form that [Companion] whenever necessary may, or [U.S. Bank] upon direction by [Companion] will be able to, negotiate such Asset without consent or signature from [Redwood or Freestone] or any person or entity other than [U.S. Bank] in accordance with the terms of this Agreement."

Section 7(f): "[U.S. Bank] shall furnish to [Redwood or Freestone] and [Companion] a statement of all Assets in the Trust Account including their fair market value (1) as of the inception of the Trust Account and (2) as of the end of each calendar month . . . . Such statement shall be considered a certification of [U.S. Bank] that the fair market value of the Assets in the Trust Account is true and correct according to the best information and belief of [U.S. Bank]." (Freestone Trust Agreement)

Moreover, the Trust Agreements provide that:

Section 7(i): "The duties and obligations of [U.S. Bank] shall only be such as are specifically set forth in this Agreement . . . and no implied duties or obligations shall be read into this Agreement against [U.S. Bank]. [U.S. Bank] shall not be liable except for its own negligence, willful misconduct or lack of good faith."

Finally, the Trust Agreements also provide that:

Section 7(l): "[U.S. Bank] shall not be responsible for the genuineness or value of any of the Assets or for the validity, perfection, priority or enforceability of liens in any of the Assets, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder (except to the extent such action or omission constitutes negligence, willful misconduct or lack of good faith on the part of [U.S. Bank]), for the validity of title to the Asset, for insuring the Assets or for the payment of taxes, charges, assessments or liens upon the Assets."

As Grantors and parties of these Trust Agreements, Redwood and Freestone identified authorized signers, as referenced, *supra*, who could act for them with regard to each trust account. (ECF No. 50 at 17.)  One of the authorized signers empowered to act was Michael Morrow, President and Chief Investment Officer of Third-Party Defendant SLA.  (*Id.*)

Third-Party Defendant SLA was registered as an investment advisor with the Securities and Exchange Commission until March 31, 2014 and managed the asset allocation strategies for

all of Southport's companies, including Redwood and Freestone. (*Id.* at 4.) Third-Party Defendant Burns was the "Ultimate Control Person" and "Chief Strategist" for Third-Party Defendant SLA. (*Id.*) Through Morrow, Third-Party Defendant SLA had authority to "at all times act on behalf of, and as agent of" Redwood and Freestone based on "Investment Management Agreements" entered into with each of them. (*Id.* at 18.) Freestone and Redwood, "directly or through [Third-Party Defendant SLA]," decided which assets to buy, which to sell, and in what amounts. (*Id.* at 37.)

Between May 2013 and January 2014, U.S. Bank, as trustee, approved and permitted the substitution of assets for various investments for the Freestone and Redwood trust accounts. (*Id.* at 18–21.) Companion alleges U.S. Bank is liable because certain assets in the trust accounts violated the terms of the Trust Agreements. (ECF No. 1 at 7–10.) Specifically, Companion alleges certain Southport affiliate securities held in the trust accounts were not "Eligible Securities" under the Trust Agreements, were not freely negotiable, and/or had little to no value. (*Id.* at 12–18.) Companion makes these same allegations with regard to the acquisition of Destra Targeted Income Unit Investment Trusts ("Destra UITs") for the trust accounts.[7] (*Id.*).[8]

---

[7] A unit investment trust ("UIT") is a registered investment vehicle governed by the Investment Company Act of 1940. A UIT typically offers multiple series. Each series holds a fixed portfolio of underlying assets (known as "Portfolio Securities") that have been contributed to the UIT. Each series issues a fixed number of units, and each unit represents an undivided fractional interest in the underlying Portfolio Securities. Unitholders receive shares of income that the Portfolio Securities generate. (ECF No. 50 at 22.)

[8] More generally, Companion alleges that in January 2013 the Redwood Trust Account had assets totaling approximately $107.2 million. (ECF No. 1 at 7.) Companion alleges that as of March 2014, the Redwood Trust Account had approximately $364,000 in cash, investments in Destra Unit Investment Trusts ("UITs") purported to be worth approximately $93.4 million but allegedly worth far less, and investments in stocks and other securities purported to be worth $28.1 million but that appear to have little value. (*See id.* at 8.) As for the Freestone Trust Account, Companion alleges that in January 2013 the account had approximately $72.8 million in cash. (*Id.*) Companion further alleges that as of March 2014, the Freestone Trust Account had $5,000 in cash, investments in Destra UITs purported to be worth approximately $33.8 million but worth far less, and investments in stocks and other securities purported to be worth approximately $21 million but that appear to have little value. (*See id.* at 9.)

B.     U.S. Bank's Third-Party Action against Third-Party Defendants: Factual Background

U.S. Bank, who managed the contribution of assets from May 2013 through January 2014 as Companion's trustee, denies Companion's claims.  However, it argues that if Companion's allegations are proven at trial, Third-Party Defendants are liable to Companion.  (ECF No. 50 at 27.)

First, U.S. Bank alleges Redwood and Freestone—either directly or through Third-Party Defendant SLA—directed U.S. Bank's purchases of securities and other membership interests in various companies.  (*Id.* at 18–21.)  Companion now disputes these assets.  (*Id.*)  U.S. Bank alleges that Third-Party Defendant SLA provided a false representation regarding the values of the securities to be purchased—specifically, that the value of these securities and interests was "grossly overinflated."  (*Id.* at 20.)

Southport affiliates controlled several of the companies that issued the membership interests.  (*Id.* at 18–20.)  Third-Party Defendant AAS was the "managing member" for some of these issuing companies.  (*Id.* at 18 (stating that in that position, Third-Party Defendant AAS "executed multiple stock certificates in the names of Companion's reinsurance trusts with Redwood and Freestone").)  Third-Party Defendant SSF, a wholly-owned Southport subsidiary, (*id.* at 4), was Third-Party Defendant AAS's sole member, which means Third-Party Defendant SSF had the "exclusive and complete authority and discretion to manage Third-Party Defendant AAS's business affairs."  (*Id.* at 4.)  Third-Party Defendant Burns was Third-Party Defendant SSF's sole director, sole authorized signatory, and "control person."  (*Id.* at 7–8.)

Second, U.S. Bank alleges that Redwood and Freestone caused the Redwood and Freestone trust accounts to acquire Destra UITs from June 2013 through January 2014.  (*Id.* at 21.)  Companion also disputes these assets.  (*Id.*)  Southport established the Destra UITs, and Third-

Party Defendant SSF contributed the underlying portfolio of securities for the UITs.  (*Id.* at 22.)

Third-Party Defendant Burns personally executed a series of contribution agreements that

contained representations regarding the nature and value of the assets contributed to the Destra

UITs.  (*Id.* at 22.)

Per another trust agreement, Third-Party Defendant AAS was the "administrative agent"

for the Destra UITs.  (*Id.*)  As an administrative agent, Third-Party Defendant AAS was responsible

for valuing the portfolio securities and for approving important decisions regarding the transfers

of units.  (*Id.* at 22–23.)  U.S. Bank was not a party to that agreement, but its affiliate, "U.S. Bank

Trust National Association," was a party.  (*Id.* at 22.)  U.S. Bank states that Third-Party Defendant

AAS had "the most authority and duties with respect to the Destra UITs" (e.g., valuing the

underlying assets, directing distributions, etc.) and that U.S. Bank's affiliate, U.S. Bank Trust

National Association, had limited duties.  (*Id.* at 23–24.)

As with the securities and ownership interests, U.S. Bank alleges Redwood and Freestone

directed its purchases of units in the Destra UITs—directly or through Third-Party Defendant

SLA—from June 2013 through January 2014 and provided a representation regarding the values

of the units to be purchased.  (*Id.* at 24–26.)  In its action against U.S. Bank, Companion alleges

the values of the units were overstated.  (*Id.*)  Third-Party Defendant AAS approved each sale and

approved Companion as a unitholder.  (*Id.*)

C.     <u>U.S. Bank's Third-Party Claims</u>

U.S. Bank alleges Third-Party Defendant SLA owed a duty of reasonable care to

Companion and that if Companion's allegations against U.S. Bank are proven as true, Third-Party

Defendant SLA "acted negligently, grossly negligently, recklessly, willfully, knowingly, and

wantonly in" both causing Companion's reinsurance trusts to acquire the assets and in

8

misrepresenting and overstating their value. (*Id.* at 28.) U.S. Bank also claims Third-Party Defendant SLA breached a fiduciary duty to Companion in managing the assets, and/or aided and abetted Redwood and Freestone in breaching their fiduciary duty to Companion by causing the trust accounts to acquire the assets. (*Id.* at 29.)

U.S. Bank claims Third-Party Defendant SSF "negligently, grossly negligently, recklessly, willfully, knowingly, and wantonly" misrepresented the value and nature of the portfolio securities it contributed to the Destra UITs and the assets sold to the trust accounts. (*Id.* at 30.) On this basis, U.S. Bank claims Third-Party Defendant SSF procured Redwood and Freestone's breaches of the Trust Agreements. (*Id.*) U.S. Bank also claims Third-Party Defendant SSF aided and abetted Redwood and Freestone's breach of fiduciary duty to Companion. (*Id.* at 31.)

As for Third-Party Defendant AAS, U.S. Bank claims that it "acted negligently, grossly negligently, recklessly, willfully, knowingly, and wantonly in": (a) valuing the portfolio securities in the Destra UITs, (b) approving submission of the values to NASDAQ and Bloomberg (where the Destra UITs were listed and quoted, respectively), (c) approving the purchase and/or transfer of the units of the Destra UITs into the trust accounts, (d) approving Companion's reinsurance trusts with Redwood and Freestone as unitholders, (e) entering into subscription agreements with Companion, and (f) selling and/or contributing certain of the securities into the trust accounts. (*Id.* at 31.) U.S. Bank also alleges Third-Party Defendant AAS "negligently, grossly negligently, recklessly, willfully, knowingly, and wantonly misrepresented" the value and nature of the portfolio securities and other security assets sold by Third-Party Defendant AAS to the trust accounts. (*Id.* at 32.) U.S. Bank further alleges Third-Party Defendant AAS tortiously interfered with Redwood and Freestone's performance of the Trust Agreements and aided and abetted Redwood and Freestone's breach of fiduciary duty to Companion. (*Id.* at 32–33.)

In sum, U.S. Bank alleges that Third-Party Defendants SLA and Redstone "directed the conduct that underlies Companion's claims." (ECF No. 104 at 12.) U.S. Bank further alleges that Third-Party Defendants SSF and AAS "created the contested assets, provided valuations that Companion says were inflated, and sold or contributed the contested assets to the trusts." (*Id.*) U.S. Bank names Third-Party Defendant Burns as a Third-Party Defendant since he allegedly "dominated and controlled" each of the other Third-Party Defendants and "directed or participated in all of the relevant conduct." (*Id.*; ECF No. 50 at 33.) U.S. Bank alleges that "it was reasonably foreseeable, and [Third-Party Defendant] Burns should have known, did know, and/or intended, that Companion . . . would receive the asset valuations that [Third-Party Defendant] Burns originated in account statements and other communications directed to Companion" and that Third-Party Defendant Burns had a pecuniary interest in making representations regarding the assets. (*Id.*)

With these underlying tort theories of liability, U.S. Bank alleges the following specific causes of action against Third-Party Defendants: 1) apportionment under S.C. Code. Ann. § 15-38-15 (2015); 2) contribution under S.C. Code § 15-38-10 (2015) "or other applicable grounds"; and 3) equitable indemnification.

D.    Procedural Posture

Companion filed a Complaint in this court on March 20, 2015. (ECF No. 1). On May 18, 2015, U.S. Bank moved to dismiss that action, (*see* ECF No. 16), a motion this court granted in part and denied in part.[9] (*See* ECF No. 41.) After this court issued that Order, U.S. Bank filed a Third-Party Complaint (ECF No. 50) against Third-Party Defendants (as well Redwood). Third-Party Defendants SLA, SSF, and AAS moved to dismiss U.S. Bank's third-party action, (*see* ECF

---

[9] On September 10, 2015, the court held a hearing regarding the Motion to Dismiss. (ECF No. 37.)

No. 80), under Fed. R. Civ. P. 12(b)(6) (2012).  Third-Party Defendant Burns separately moved to dismiss U.S. Bank's third-party action under both Rule 12(b)(6) and Fed. R. Civ. P. 12(b)(1) (2012).  (ECF No. 83-1.)  The court addresses Third-Party Defendants' Motions to Dismiss below.

### III.    LEGAL STANDARD

A.    <u>Fed. R. Civ. P. 12(b)1) Motion to Dismiss</u>

A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999).  Unless a matter involves an area of a federal court's exclusive jurisdiction, a plaintiff may bring suit in federal court only if 1) the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or 2) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states," 28 U.S.C. § 1332(a)(1).  In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).   "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*  (citation omitted).

B.    <u>Fed. R. Civ. P. 12(b)(6) Motion to Dismiss</u>

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th

Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A court should not grant a Rule 12(b)(6) motion unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice.  *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

# IV.    THE COURT'S ANALYSIS[10]

A.    <u>Apportionment Claim under South Carolina Law</u>

In its Third-Party Complaint, U.S. Bank alleges:

> To the extent any liability can be determined as belonging to U.S. Bank, which is denied, U.S. Bank asserts that the Third-Party Defendants possess an identifiable difference in the degree of fault. Pursuant to S.C. Code. Ann. § 15-38-15 *et seq.* the Court is to determine fault allocation as to Third-Party Defendants and/or any non-parties responsible for the damages alleged by [Companion]. U.S. Bank requests relief from any and all damages owed to [Companion] which resulted from the relative fault of the Third-Party Defendants and/or any responsible non-parties.

(ECF No. 50 at 34.)  S.C. Code. Ann. § 15-38-15 addresses "[l]iability of defendant responsible for less than fifty per cent of total fault; apportionment of percentages; willful, wanton, or grossly negligent defendant and alcoholic beverage or drug exceptions."[11]

---

[10] For the purposes of its analysis, this court regards the arguments in the Motion to Dismiss of Third-Party Defendants SLA, SSF, and AAS, (ECF No. 80), as encompassing of the same arguments Third-Party Defendant Burns advances in his Motion to Dismiss, (ECF No. 83-1), unless otherwise acknowledged. (*See* ECF No. 83-1 ("For purposes of this motion, Burns adopts each and every argument set forth by Southport Lane Advisors ("SLA"), Southport Specialty Finance ("SSF") and Administrative Agency Services ("AAS") (collectively, "Southport") in their motion to dismiss the third-party complaint pursuant to Rule 12(b)(6), FRCP.").)

[11] Section 15-38-15, in its entirety, reads:

(A) In an action to recover damages . . . if indivisible damages are determined to be proximately caused by more than one defendant, joint and several liability does not apply to any defendant whose conduct is determined to be less than fifty percent of the total fault for the indivisible damages as compared with the total of: (i) the fault of all the defendants; and (ii) the fault (comparative negligence), if any, of plaintiff. A defendant whose conduct is determined to be less than fifty percent of the total fault shall only be liable for that percentage of the indivisible damages determined by the jury or trier of fact.

(B) Apportionment of percentages of fault among defendants is to be determined as specified in subsection (C).

(C) The jury, or the court if there is no jury, shall:

(1) specify the amount of damages;

(2) determine the percentage of fault, if any, of plaintiff and the amount of recoverable damages under applicable rules concerning "comparative negligence"; and

### 1. Third-Party Defendants' Arguments

Third-Party Defendants contend that South Carolina law does not recognize an action for apportionment.  (ECF No. 80 at 2, 9–10.)  They explain that there is no reported case that recognizes an apportionment cause of action and that there is "nothing in the South Carolina Contribution Among Tortfeasors Act ("SCCATA") to suggest a legislative intent to create this action."  (*Id.* at 2.)  Third-Party Defendant Burns separately argues that according to the statute's text, only after Companion elects to name more defendants "would U.S. Bank then have the right to seek apportionment of any verdict, by motion at the appropriate time."  (ECF No. 83-1 at 12.) Third-Party Defendant Burns further contends that the "right" referred to in § 15-38-15(D)[12] refers

---

(3) upon a motion by at least one defendant, where there is a verdict under items (1) and (2) above for damages against two or more defendants for the same indivisible injury, death, or damage to property, specify in a separate verdict under the procedures described at subitem (b) below the percentage of liability that proximately caused the indivisible injury, death, damage to property, or economic loss from tortious conduct, as determined by item (1) above, that is attributable to each defendant whose actions are a proximate cause of the indivisible injury, death, or damage to property. In determining the percentage attributable to each defendant, any fault of the plaintiff, as determined by item (2) above, will be included so that the total of the percentages of fault attributed to the plaintiff and to the defendants must be one hundred percent. . . .

    (a) For this purpose, the court may determine that two or more persons are to be treated as a single party.  . . .

        (b) After the initial verdict awarding damages is entered and before the special verdict on percentages of liability is rendered, the parties shall be allowed oral argument, with the length of such argument subject to the discretion of the trial judge, on the determination of the percentage attributable to each defendant. However, no additional evidence shall be allowed.

(D) A defendant shall retain the right to assert that another potential tortfeasor, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party.

[12] "A defendant shall retain the right to assert that another potential tortfeasor, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party."

to a right to contribution and does not create a separate cause of action for apportionment. (ECF No. 111 at 6.)

### 2. U.S. Bank's Arguments

U.S. Bank counters that South Carolina does recognize an apportionment cause of action, emphasizing that the SCCATA specifically references "apportionment" at § 15-38-15 and that Defendants overlook the significance of § 15-38-15(D) in creating that right. (ECF No. 104 at 18–19.) Furthermore, in response to Third-Party Defendant Burns's argument, U.S. Bank maintains that a "tortfeasor," as used in the statute, need not be a defendant and therefore that the provision "authorizes a defendant to assert a claim against a potential wrongdoer, even if the tortfeasor is not already in the suit." (*Id.* at 19.)[13]

### 3. Court's Review

The court first observes that U.S. Bank's claim amounts to one of negligence per se. *See Rayfield v. S.C. Dep't of Corr.*, 374 S.E.2d 910, 915 (S.C. Ct. App. 1988) ("Negligence *per se* simply means the jury need not decide if the defendant acted as would a reasonable man in the circumstances. The statute fixes the standard of conduct required of the defendant, leaving the jury merely to decide whether the defendant breached the statute . . . ."). As both parties point out, a cause of action in South Carolina is "a primary right possessed by plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consists

---

[13] The Supreme Court of South Carolina is currently considering a potentially related issue of whether state law permits a jury to apportion fault to a non-party employer where the plaintiff employee was injured on the job. *See Machin v. Carus Corp.*, No. 3:12-cv-02675 (D.S.C. Apr. 24, 2015) (Anderson, J.) (Certifying Appellate Question: "Under South Carolina law, when Plaintiff seeks recovery from a person, other than his employer, for an injury sustained on the job, may the court allow the jury to apportion fault among the non-party employer by placing the name of the employer on the verdict form?"). Upon review of the particular facts and legal issues of that case, this court is satisfied that the issue currently before it in this third-party action—essentially, whether "apportionment" is a cause of action in South Carolina—is sufficiently different such that this court's ruling on the issue would not be premature.

in a breach of such primary right, and duty." *Harth v. United Ins. Co.*, 221 S.E.2d. 102, 104 (S.C. 1975). In the context of negligence per se, the primary factor to determine whether a statute creates such a "primary right" is legislative intent, which "is determined primarily from the language of the statute." *Doe v. Marion*, 645 S.E.2d 245, 248 (S.C. 2007).

At the outset, this court finds it compelling that in over a decade since the passage of the SCCATA in 2005, not a single state or federal court in South Carolina has ever recognized apportionment, or "non-party fault allocation," as a cause of action under the SCCATA.[14] This is unsurprising, given that the statute's plain text neither makes apparent that an apportionment cause of action exists, nor suggests that there was a legislative intent to do so in the SCCATA.

As to the plain text of the SCCATA, the statute appears to describe "apportionment" as a procedure that occurs only after the jury (a) has awarded damages to a plaintiff, (b) has determined any comparative negligence by the plaintiff, and then (c) only after motion by the defendant. *See* S.C. Code Ann. § 15-38-15(B)-(C). It is not evident that apportionment, as the statute describes it, is a cause of action that involves "a delict or wrong done by the defendant which consists in a breach of such primary right, and duty." *Harth*, 221 S.E.2d. at 104. As Third-Party Defendant

---

[14] U.S. Bank points out that a South Carolina trial court recently agreed not to dismiss a cause of action for apportionment. (*See* ECF No. 104 at 19; ECF Nos. 104-1–104-5 (Exs.).) That court denied the third-party defendant's motion to dismiss by a form order, providing this court with no analysis or discussion otherwise to determine on what grounds the court actually accepted the third-party plaintiff's arguments that "apportionment" is a separate cause of action. To highlight the insufficiency of that lone South Carolina trial court form order, this court references, as an example, its own decision in *Simons v. Wal-Mart Stores East, L.P.* to deny dismissal for a cause of action for "apportionment." No. 8:11-cv-03180-JMC, 2013 WL 417671, at *5 (D.S.C. 2013). In denying the dismissal, this court construed the claim for apportionment as one for contribution. *See id.* Thus, that South Carolina trial court decision not to dismiss the claim does not bind this court in its own determination of whether South Carolina recognizes a cause of action for apportionment.

Burns explains, apportionment appears to be "a procedural process involving U.S. Bank's claim, and not a claim or substantive right to recovery in and of itself." (ECF No. 83-1 at 11.)

Ultimately, however, this court must interpret the statute under this guidance: "The cardinal rule of statutory construction is that the intent of the legislature must prevail if it reasonably can be discerned from the words used in the statute." *Cabiness v. Town of James Island*, 712 S.E.2d 416, 425 (S.C. 2011). At a hearing on the Motions to Dismiss, U.S. Bank reasoned that the disjunctive, "and/or," in § 15-38-15(D) marks the South Carolina legislature's intention of creating a cause of action separate from contribution; otherwise, the inclusion of the disjunction in the provision would be unnecessary. U.S. Bank further argued at the hearing that the statute's reference to "retain" in the statute refers to the future right against non-parties, while Third-Party Defendants countered in response that the "[retained] right" § 15-38-15(D) refers to a future right to contribution. (*See* ECF No. 111 at 6–7.)

This court finds that U.S. Bank's arguments do not overcome the strong evidence that the South Carolina legislature did not intend to create a separate cause of action for apportionment. First, "contribution," which U.S. Bank also alleges as a claim against Third-Party Defendants, is explicitly described as a "*right* of contribution," S.C. Code Ann. § 15-38-20 (2015) (emphasis added), and an "*action* for contribution," S.C. Code Ann. § 15-38-40 (2015) (emphasis added), several provisions later in the SCCATA. *See Byrd v. Irmo High Sch.*, 468 S.E.2d 861, 865 (S.C. 1996) (finding when one provision does not include a right that is included in a related provision, legislative intent is that a right will not be implied where it does not exist).[15]

---

[15] In *Doe v. Marion*, for example, the Supreme Court of South Carolina considered whether a particular statutory provision gave rise to a private cause of action for negligence *per se* against a physician or psychiatrist for failing to report or warn of her patient's predilection for child molestation. 645 S.E.2d 245, 246–50 (S.C. 2007). That court explained that because that provision was "silent as to civil liability" and because other provisions did clearly impose liability for making a false report, those other provisions "indicate[d] the legislature intended to impose

Similarly, this court finds significant that the language and statutory construction creating the contribution cause of action—namely, the "action for contribution" and "right to contribution" subtitles in the SCCATA—are absent with regard to apportionment.  *Compare, e.g*., S.C. Code Ann. § 15-38-40(A) ("[C]ontribution may be enforced by separate action."), *with* S.C. Code Ann. § 15-38-15(D) ("Apportionment of percentages of fault among defendants is to be determined as specified in subsection (C).")  It is reasonable to conclude that had the South Carolina legislature intended to allow for a separate third-party cause of action for apportionment as part of the SCCATA, it would have done so using the same language and structure to make clear its intent to do so.  This assumption is buttressed by the fact that where a South Carolina statute uses terms that have well-recognized meaning in the law, like "right to contribution" and "action for contribution," "the presumption is that the Legislature intended to use the term in that sense."  *See Coakley v. Tidewater Constr. Corp.*, 9 S.E.2d 724, 726 (1940).  Therefore, by logical inverse, the legislature also presumably avoided the use of those terms in other provisions in the SCCATA— as to describe "apportionment," for example—when it did not want to use those terms as they are commonly recognized in the law.

Second, assuming, *arguendo*, that § 15-38-15(D)—with its reference to a "right to assert"—created a separate cause of action for apportionment against another potential non-party tortfeasor, § 15-38-15(C)(3) states that "the total of the percentages of fault attributed to the plaintiff and to the *defendants* must be one hundred percent," with no mention of any fault allocation to third-party defendants. (emphasis added).  As Third-Party Defendant Burns's references, (*see* ECF No. 83-1 at 12), a strict reading of the statute implies, then, that *third-party*

---

civil liability and establish private causes of action in certain instances."  *Id.* at 397.  Especially relevant to this court's determination, the *Doe* court concluded: "The fact that such language is missing . . . indicates the legislative intent was . . . not to create civil liability."  *Id.*

defendants cannot be "liable," or "at fault" under § 15-38-15(D) for purposes of fault allocation. U.S. Bank nonetheless rebuts that the provision's reference to "another potential tortfeasor" suggests that the tortfeasor need not be a first-party defendant and therefore that the provision "authorizes a defendant to assert a claim against a potential wrongdoer, even if the tortfeasor is not already in the suit."  (ECF No. 104 at 19.)

But U.S. Bank's interpretation of the statute in this way conflicts with another District Court of South Carolina ruling on this issue, albeit a ruling not within the specific context of a third-party action.  *See Fagnant v. K-Mart Corp.*, No. 4:11-cv-00301-RBH, 2013 WL 6901907, at *4 (D.S.C. 2013).  The specific issue before the *Fagnant* court was whether it was appropriate under § 15-38-15 to include a non-party on the jury verdict form "in order to permit the jury to allocate fault among all tortfeasors."  *Id.*  In concluding that it was not, the court explained:

> A review of section 15–38–15 reveals that only subsections (D) and (E) refer to other potential tortfeasors. *See* S.C. Code Ann. § 15-8-15(E) . . . . All other subsections only refer to "defendants." This distinction is significant because only subsections (A), (B), and (C) affected substantive changes in the law as it existed at the time [before the 2005 enactment of SCCATA]. Also telling is how the special verdict procedure outlined in subsection (C)(3) only provides for jury findings regarding the allocation of fault when there are "two or more defendants" who were previously found liable. The subsection provides no accommodation for non-party tortfeasors. Nevertheless, there is little question that subsection (D) presents an apparent conflict and thus an ambiguity in the scheme. But such a conflict can be harmonized by the context in which the law was passed. . . . [T]he Supreme Court emphatically reaffirmed—*after* the enactment of the statute at issue—the long-recognized rule that "a plaintiff has the sole right to determine which co-tortfeasor(s) she will sue." *Chester* [*v. S.C. Dep't of Pub. Safety*], 698 S.E.2d [559], 560 [(S.C. 2010)] . . . Moreover, prior to the statute's passage, defendants were entitled to assert an "empty chair" defense at trial and receive a setoff for any settlement obtained from a joint and several tortfeasor. *See Chester*, 698 S.E.2d at 560. The plain language of the statute simply codified a *defendant's* retention of these rights. A reading to the contrary would create more friction with the plain language than it would resolve.

*Id.* (emphasis added).  The *Fagnant* court stated that for it to rule that the non-party be included on the verdict form to allow allocation of fault, "the intent of the General Assembly must be more

readily apparent from the plain language of the statute," effectively concluding that § 15-38-15(D)'s reference to "tortfeasor" did not refer to non-parties. *Id.*

With this same emphasis on discerning the apparent intent of the South Carolina legislature based on the language of the SCCATA, this court cannot conclude that the legislature intended to create an apportionment cause of action. Accordingly, U.S. Bank's claim for apportionment is dismissed.

B.    Contribution Claim under South Carolina Law

The court turns next to U.S. Bank's contribution claim. U.S. Bank alleges in its Third-Party Complaint:

> In the event that U.S. Bank is held liable to [Companion], then it is entitled to contribution from the Third-Party Defendants under S.C. Code § 15-38-10 *et seq.* or other applicable grounds in an amount to be determined pursuant to the provisions of said statute.

(ECF No. 50 at 34.)

South Carolina recognizes the right of joint tortfeasors to seek contribution from one another. *See* S.C. Code Ann. § 15-38-20 (2015). But "the right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." § 15-38-20(B). The SCCATA further indicates that it "does not apply to breaches of trust or of other fiduciary obligation." § 15-38-20(G).

1.    *Third-Party Defendants' Arguments*

Third-Party Defendants argue that U.S. Bank's contribution claim should be dismissed because the underlying tort claims, as alleged, "sound in breach of trust and/or breach of fiduciary obligation," a theory of liability for which a plaintiff cannot recover under the SCCATA. (ECF No. 80 at 2–3, 11–13 (referring to § 15-38-20(G)).) Secondly, Third-Party Defendant Burns

20

contends that all of the underlying theories of tort liability U.S. Bank relies on to support its third-party claims, including contribution, fail because Third-Party Defendants owed no duty of care to Companion. (ECF No. 83-1 at 21; ECF No. 111 at 9–13.) Third-Party Defendant Burns further challenges the adequacy of the factual allegations to support liability against him under any of the tort theories, asserting that U.S. Bank attempts to "impute upon [him] some sort of broad-stroked owner or director's liability." (ECF No. 83-1 at 21.) Finally, Third-Party Defendants collectively maintain that because U.S. Bank fails to allege that it has made any payments to Companion, its contribution claim is not yet "ripe" under § 15-38-20(B). (*Id.* at 11–13.)

### 2.  *U.S. Bank's Arguments*

U.S. Bank responds by first noting that just one of Companion's three tort claims against it[16] explicitly relate to a breach of fiduciary duty. (ECF No. 104 at 21–22.) U.S. Bank further notes that the negligent misrepresentation claim "on its face does not rest on any purported breach of trust or other fiduciary obligation—instead, any duty arose out of U.S. Bank's alleged pecuniary interests in the transactions." (*Id.*) And as to the Third-Party Defendants' potential contribution based on the negligence claim, U.S. Bank explains that "the ultimate basis for any negligence liability" is unknown and possibly will be determined through discovery. (*Id.* at 22.)

Regarding Third-Party Defendants' separate arguments for why the underlying tort theories fail, U.S. Bank responds that to owe a duty of care for purposes of negligent misrepresentation, Third-Party Defendants need only have "'a pecuniary interest in the transaction.'" (ECF No. 104 at 16.) Second, the other causes of action U.S. Bank alleges in this third-party action against Defendants—intentional misrepresentation, aiding and abetting

---

[16] Companion's tort causes of action against U.S. Bank included breach of fiduciary duty, negligence/gross negligence, and negligent misrepresentation. (*See* ECF No. 1 at 14–19.)

Redwood and Freestone's breach of fiduciary duty, and tortious interference with the Trust Agreements—are all torts for which no duty is required. (*Id.* at 16–18.) Finally, U.S. Bank argues that its allegations that Freestone, Redwood, and Third-Party Defendant SLA had the authority to—and did—direct investments in the Trust Accounts for Companion's benefit support a finding that Third-Party Defendants had a duty of care to support its simple negligence claim. (*Id.* at 17.)

U.S. Bank further clarifies that Third-Party Defendant Burns's liabitliy does not "arise from his mere status as a director or passive shareholder" and states that it has more than sufficiently pleaded facts to demonstrate that Third-Party Defendant Burns could be held liable. (*Id.*) As to the ripeness of the contribution claim, U.S. Bank counters that courts in the District of South Carolina have been clear that "a claim for contribution is properly pleaded as a third party claim before the third-party plaintiff has incurred liability." (ECF No. 104 at 20 (relying heavily on *Brown v. Shredex, Inc.*, 69 F. Supp. 2d 764, 766–69 (D.S.C. 1999).)

     *3. Court's Review*

      a.  <u>Sufficiency of Underlying Theories of Tort Liability</u>

As a threshold matter, this court generally agrees that U.S. Bank's underlying non-fiduciary duty tort claims still allow for it to pursue its contribution claim under South Carolina law. On the specific issue of whether Third-Party Defendants need to have owed Companion a duty for U.S. Bank to pursue those non-fiduciary duty tort claims, this court sides with U.S. Bank. In particular, U.S. Bank is correct that to sustain its underlying negligent representation claim, pleading a pecuniary interest supports a reasonable finding that a duty existed. *See Winburn v. Ins. Co. of N. Amer.*, 339 S.E.2d 142, 146 (S.C. Ct. App. 1985) ("A duty to exercise reasonable care in giving information *exists* when the defendant has a pecuniary interest in the transaction.") (emphasis added); *S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 346 S.E.2d 324, 325 (S.C. 1986)

("A cause of action for negligence requires . . . the *existence* of a duty on the part of the defendant to protect the plaintiff . . . ."); s*ee also deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 406 (S.C. Ct. App. 2000) ("[E]vidence that a statement was made in the course of the defendant's business, profession, or employment is sufficient to prove the defendant's pecuniary interest. . . . ."). In this matter, U.S. Bank specifically alleges Third-Party Defendants' pecuniary interest. (ECF No. 50 at 28–33.)

Further, the presence of a "duty" is not required to allege intentional misrepresentation, *see* Fed. R. Civ. P. 9(b) (2012) (providing that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally"), or tortious interference with contract, *see Dutch Fork Dev. Group II, LLC v. SEL Props., LLC*, 753 S.E.2d 840, 844 (S.C. 2012) (describing the elements of a tortious interference with contract claim). Neither is it required for aiding and abetting breach of fiduciary duty, *see Vortex Sports Entm't, Inc. v. Ware*, 662 S.E.2d 444, 448 (S.C. 2008) (describing the elements of a claim for aiding and abetting breach of fiduciary duty), to the extent that the S.C. Code Ann. § 15-38-20(G) does not preclude it as one of U.S. Bank's grounds for pursuing its third-party claims. Therefore, it would be erroneous for this court to dismiss U.S. Bank's contribution claim based on the grounds that the underlying tort theories fail for insufficient pleading.

Only Third-Party Defendant Burns contests the adequacy of the factual allegations against him. (*See* ECF No. 83-1 at 21–23; ECF No. 111 at 12–15.) To this challenge, this court also finds that U.S. Bank makes adequate allegations to maintain a claim personally against Third-Party Defendant Burns under the tort theories described, *supra*, as well as under a theory of simple negligence.

First, Third-Party Defendant Burns argues that with regard to intentional misrepresentation, U.S. Bank's allegations fail under Fed. R. Civ. P. Rule 9(b) because U.S. Bank limits its Third-Party Complaint to allegations "that the communications 'included representations regarding the value' and that those are 'values that Companion now alleges were grossly inflated.'" (ECF No. 111 at 12–13; *see also* ECF No. 83-1 at 22–23.)  Though Rule 9(b) of the Federal Rules of Civil Procedure provide that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally," Third-Party Defendant Burn contends: "U.S. Bank's pleading does not say that [Third-Party Defendant] Burns, or any of the other Third-Party Defendants that made such representations knew or should have known those [asset] values were inflated.   The only scienter it has pled is that Burns 'should have known, did know, and/or intended', that Companion would receive those statements, but not that he knew or should have known that the representations contained therein were false when made."  (ECF No. 111 at 13.)

But this court cannot reconcile Third-Party Defendant Burns's arguments of pleading insufficiency under Rule 9(b) with the instances throughout the Third-Party Complaint where U.S. Bank pleads:

1) Third-Party Defendant SLA "acted negligently, grossly negligently, recklessly, willfully, knowingly, and wantonly in" not just "causing Companion's reinsurance trusts to purchase and otherwise acquire" the allegedly overinflated assets, but also "issuing Investment Orders and other communications that *misrepresented* and *overstated* the value" of those assets. (ECF No. 50 at 28 (emphasis added).);

2) Third-Party Defendant SSF "negligently, grossly negligently, recklessly, willfully, knowingly, and wantonly *misrepresented* and *failed to disclose the value and nature*" of the assets it contributed and provided. (*Id.* at 30 (emphasis added).);

3) Third-Party Defendant AAS "negligently, grossly negligently, recklessly, willfully, knowingly, and wantonly *misrepresented* and *failed to disclose the value and nature*" of the assets it contributed and provided.

(*Id.* at 32 (emphasis added).)   In addition, U.S. Bank specifically alleges that Third-Party Defendant Burns was the sole owner, director, and authorized signatory for Third-Party Defendant SSF, which, in turn, had exclusive and complete control over Third-Party Defendant AAS.  (ECF No. 50 at 4.)  Moreover, U.S. Bank alleges that Third-Party Defendant Burns was Third-Party Defendant SLA's "Ultimate Control Person," "beneficial owner," and "chief strategist."  (*Id.* at 3.) The allegations also state that Third-Party Defendant Burns personally had a pecuniary interest in making representations regarding the assets.  (*Id.* at 33.)  Therefore, contrary to Third-Party Defendant Burns's argument that U.S. Bank's allegations fail under Rule 9(b), this court finds that these allegations, taken together, more than "generally" implicate Third-Party Defendant Burns and the other Third-Party Defendants' knowledge in accordance with Rule 9(b), as they provide at least a minimal factual basis for allegations of scienter.  *See* Fed. R. Civ. P. 9(b) (2012) (providing that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally"); *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (ruling that the district court's dismissal of a complaint was improper and explaining: "If . . . the word 'misrepresentation' connotes a culpable state of mind, then the complaint *pleads* that state of mind by using the word "misrepresentation," for under Rule 9(b) '[m]alice, intent, knowledge, and other condition of mind . . . may be averred generally.'").

Third-Party Defendant Burns's argument that because U.S. Bank did not plead *his* duty of care, specifically, then "there can be no actionable negligence claim" against him, (ECF No. 111 at 12), fails for similar reasons.  U.S. Bank states that its allegation that Freestone, Redwood, and

Third-Party Defendant SLA authorized and directed investments in the Trust Accounts for Companion's benefit gives rise to a duty of care.[17]  (ECF No. 104 at 17.)  This court agrees.  Indeed, it is difficult for this court to imagine how U.S. Bank has not alleged an inherent duty Third-Party Defendant Burns owed Companion, given his authority, actions, and responsibilities in relation to the other Third-Party Defendants, all of which U.S. Bank pleads.  *See BPS, Inc. v. Worthy*, 608 S.E.2d 155, 159–61 (S.C. Ct. App. 2005) (explaining that, generally speaking, a director or an officer of a corporation is not personally liable for the corporation's torts merely because of his position in the corporation, but if the officer or director participated in, authorized, or directed the tort, he or she is subject to personal liability).

This court finds that U.S. Bank pleads factual allegations from which it can comfortably infer that Third-Party Defendant Burns owed Companion a duty of care.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient

---

[17] U.S. Bank explains:

> [The Third-Party Complaint] expressly alleges that Burns "participated in and/or directed each of the tortious acts alleged" in the Third-Party Complaint. (Third Pty. Compl. ¶ 99.) U.S. Bank further avers that Burns "dominated and controlled each of the other Third-Defendants [sic]." (*Id.*) For example, the Third-Party Complaint alleges that Burns: (1) was SLA's Ultimate Control Person and Chief Strategist; (2) was SSF's sole owner, sole director, sole authorized signatory, and control person—such that SSF could, and did, act only through him; (3) was AAS's sole owner and control person—such that Burns, through SSF, had sole and complete authority over AAS; and (4) actively controlled both Redwood and Freestone as their sole or super-majority owner. (Third Pty. Compl. ¶¶ 6-9, 11(b)-(d), 22-26, 99.) Beyond that, the Third-Party Complaint pleads various actions and misrepresentations directly by Burns as part of the Third-Party Defendants' tortious conduct. (*Id.* ¶¶ 53, 57-58, 62, 72, 77.) U.S. Bank also alleges that Burns had a pecuniary interest in the transactions and in making representations regarding the Portfolio Securities, Targeted Income Units, and Closely Held Shares, and that he received the financial benefits of the challenged transactions. (*Id.* ¶¶ 54, 59, 74, 79, 100.)

(ECF No. 104 at 17.)

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'. . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)));  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764–765 (4th Cir. 2003) (concluding that it is not the legal conclusions asserted by the plaintiff, but rather "the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage").  Specifically, this court finds sufficient U.S. Bank's allegations as to Third-Party Defendant Burns's leadership positions, participation, and actions in relation to the other Third-Party Defendants to survive dismissal of the underlying negligence claim against him in this case.[18]  *See, e.g.*, *Rotter v. Institutional Brokerage Corp.*, No. 93 Civ. 3578 (JFK), 1994 WL 389083, at *4 (S.D.N.Y. 1994) (granting a motion to dismiss and explaining that while New York law prevents directors or officers of a corporation from incurring personal liability for torts of a corporation due "solely" to their positions as directors and officers, "some type of participation or authorization by the official is required to hold that person liable").  This court relies on this same rationale and conclusion regarding Plaintiff's pleadings to reject Third-Party Defendant Burns's contention that U.S. Bank inappropriately tries to impute on him director's liability because U.S. Bank does not plead that Third-Party Defendant Burns "'directed'

---

[18] In *Crago v. Capital Advantage Fin. & Dev., Inc.*, 242 F.R.D. 341, 346 (D.S.C. 2007), for example, the court granted leave to amend to assert individual tort claims against a representative of the defendant corporation; the court specifically found that granting leave to amend would not be "futile" under Fed. R. Civ. P. 15(a).  In granting leave to amend, the court pointed to the plaintiff's proposed allegations that the individual was "a director, officer, shareholder, agent, and/or employee of" the corporation, and that "all or some of the acts or omissions of [the corporation] . . . were personally committed, participated in, directed, or authorized" by the individual.  *Id.*  Of relation to the present issue before this court, the standard a court should employ for analyzing whether an amendment is futile—the standard the *Crago* court applied—is the same standard as the motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (concluding that an amendment is futile if the amended claim would fail to survive motion to dismiss).

any of the acts," his "knowing participation," or that he "knew or should have known that anything was misstated." (ECF No. 83-1 at 21.)

In sum, this court finds that U.S. Bank has made sufficient allegations of underlying tort theories for its claim of contribution to proceed against Third-Party Defendants SLA, SSF, and AAS as well as Third-Party Defendant Burns.

### b. Ripeness of Contribution Claim

The court next turns to why the contribution claim will not be dismissed for lack of ripeness.

The Supreme Court of South Carolina has held that because "the right to contribution does not arise *prior* to payment," there is no "existing right" upon which a third-party plaintiff could file an impleader action for contribution. *See First Gen. Servs. v. Miller*, 445 S.E.2d 446, 448 (S.C. 1994). U.S. Bank does not allege that it has made any payments to Companion. Consequently, under South Carolina law, U.S. Bank would not be permitted to assert its contribution claim in a third-party action filed under Rule 14 of the South Carolina Rules of Civil Procedure, a rule that instructs when a defendant may bring a third-party claim. *See Brown v. Shredex, Inc.*, 69 F. Supp. 2d 764, 766 (D.S.C. 1999) (concluding the same).

However, district courts have also recognized that Rule 14(a) of the Federal Rules of Civil Procedure, which similarly instructs when a defendant may bring a third-party claim in federal court, permits third-party contribution actions if the governing substantive law recognizes a right of contribution. *See, e.g.*, *Brown*, 69 F. Supp. 2d at 767 (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1448, at 386 (1990)). South Carolina's substantive law recognizes a right to contribution, yet qualifies that recognition such that a tortfeasor has to file a separate action for recovery after he has paid out more than his pro rata share. *See* S.C. Code Ann. § 15-38-20(B) (2015); *First Gen. Servs.*, 445 S.E.2d at 448. The *Brown*

court determined that "because the inchoate right to contribution after payment is clearly substantive, the key question becomes whether the rule regarding when this right may be asserted is a matter of substance or procedure." *Brown*, 69 F. Supp. 2d at 767.

As a general matter, this court is required to follow a state rule that is substantive. *See Myrick v. United States*, 723 F.2d 1158, 1159 (4th Cir. 1983). But if the state rule is procedural, this court must apply Rule 14(a) of the Federal Rules of Civil Procedure, assuming it comports with the Rules Enabling Act. *See generally Hanna v. Plumer*, 380 U.S. 460 (1965).

In *Brown*, the court concluded that the state rule was procedural, reasoning:

> Procedure is "'the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Hanna v. Plumer*, 380 U.S. 460, 464, 85 S. Ct. 1136, 14 L.Ed.2d 8 (1965) (*quoting Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S. Ct. 422, 85 L.Ed. 479 (1941)). The South Carolina Contribution Among Tortfeasors Act and the decisional law interpreting it mandate that the enforcement of the right to contribution occur by separate action after a tortfeasor has paid more than his pro rata share of the judgment. *See* S.C. Code Ann. § 15-38-20(B) (Supp. 1998); *First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 445 S.E.2d 446, 448 (1994). Regardless of whether the contribution question is litigated as a third-party action or as a separate action, the outcome in principle ought to be the same. As a result, this court found the rule to be basically procedural.

*Brown*, 69 F. Supp. 2d at 767. Accordingly, that court found that Rule 14(a) of the Federal Rules of Civil Procedure took precedence over South Carolina's conflicting state-law rule since Rule 14(a) is also valid under the Rules Enabling Act. *Brown*, 69 F. Supp. 2d at 768. Again, the court explained, rather compellingly:

> Under this [Rules Enabling] Act, the Rule must be within the Supreme Court's "power to prescribe general rules of practice and procedure" and "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a), (b) (1994). Although following the Federal Rule would alter the method of enforcing the state substantive right to contribution, the United States Supreme Court has noted that "[t]o hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Hanna*, 380 U.S. at 473, 85 S. Ct. 1136 .

. . The court is not aware of any Federal Rule that has been found to violate the "substantive" term of the Act, and the court can conceive of no reason why Rule 14 would do so either. *See* [*Burlington N. R.R. Co. v.*] *Woods*, 480 U.S. 1, 6 [(1987)] ("[T]he study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, and [the Supreme] Court, and the statutory requirement that the Rule be reported to Congress for a period of review before taking effect give the Rules presumptive validity under both the constitutional and statutory restraints.") (citations omitted); *Hanna*, 380 U.S. at 471 ("[T]he court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."). Consequently, Rule 14 takes precedence over the state-law rule prohibiting the assertion of the third-party complaint for contribution so that [Third-Party Plaintiff] may assert such a claim against [Third-Party Defendant] in this case.

*Id.*

Instead of distinguishing *Brown* or countering the authorities or analyses on which that decision relies, Third-Party Defendants remind the court that it "is free to disagree with prior court decisions." (ECF No. 80 at 13.) That very well may be. But this court can find no justification for ignoring the well-reasoned analysis of its fellow district court in *Brown* that Rule 14(a) of the Federal Rules of Civil Procedure is a procedural right that accelerates the determination of liability without enlarging or modifying any substantive state right. *Brown*, 69 F. Supp. 2d at 767–69. Other district courts also agree with *Brown*'s analysis and conclusions. *See, e.g.*, *Tetra Tech EC/Tesoro Joint Venture v. Sam Temples Masonry, Inc.*, No. 3:10-cv-1597-CMC, 2011 WL 1527066, at *3 (D.S.C. Apr. 20, 2011) (considering and rejecting a challenge to *Brown* similar to Third-Party Defendants' challenge in this case). Applying the same rationale as *Brown*, this court finds that Rule 14(a) of the Federal Rules of Civil Procedure permits third-party contribution actions under South Carolina law because it trumps South Carolina's conflicting state-law rule.

U.S. Bank denies any liability to Companion, but, to the extent that it is found negligent, it seeks to share liability with Third-Party Defendants. (ECF No. 50 at 34.) In addition to the specific factual allegations of Third-Party Defendants' tortious conduct toward Companion that U.S. Bank

outlines in its Third-Party Complaint, the Trust Agreements suggest that Third-Party Defendants

owed separate duties of care to Companion, that which sounds in joint tortfeasance. *See infra*

IV.C.3.a (addressing the issue of joint tortfeasor liability in considering U.S. Bank's equitable

indemnification claim). As a result, U.S. Bank has sufficiently pleaded its cause of action for

contribution under S.C. Code Ann. § 15-38-20, and the court therefore does not dismiss it.

C.    Equitable Indemnification Claim under South Carolina Law and Fed. R. Civ. P. 14(a)

The court next turns to U.S. Bank's final claim of equitable indemnification. U.S. Bank

alleges as part of its Third-Party Complaint:

> U.S. Bank denies that it has liability of any type to [Companion]. The Third-
> Party Defendants' tortious conduct caused U.S. Bank to become involved in
> legal disputes and to incur attorneys' fees and costs. The damages alleged by
> [Companion], if any are proven at trial, were due to the actions of the Third-
> Party Defendants and were not caused by any act or omission on the part of
> U.S. Bank. The damages alleged by [Companion], if any are proven at trial,
> were due to the active and/or primary fault of the Third-Party Defendants, and
> to the extent liability or damages are imposed against U.S. Bank, U.S. Bank
> alleges that its liability to [Companion], if there is any at all, is secondary or
> passive based on the Third-Party Defendants' conduct, and [Companion's]
> injuries, if any are proven at trial, were caused by the active or primary fault of
> the Third-Party Defendants.
>
> U.S. Bank is entitled to be equitably indemnified by the Third-Party Defendants
> for all damages, costs, and expenditures in connection with this action, said
> indemnity to include any and all such damages for which U.S. Bank is held
> liable, together with the costs and attorney's fees that U.S. Bank incurs in this
> action.

(ECF No. 50 at 35–36.)

A successful equitable indemnity claim would allow U.S. Bank to recover expenses

remunerated in the first-party action "because of negligence imputed to him as the result of a tort

committed by another." *Vermeer Carolina's Inc. v. Wood/Chuck Chipper Corp.*, 518 S.E.2d 301,

305 (S.C. Ct. Ap. 1999). But for U.S. Bank to recover the "damages for which [it] is held liable,

together with the costs and attorney's fees"[19] it seeks under a theory of equitable indemnification, it must prove that: (1) Third-Party Defendants were liable for causing Companion's damages, (2) U.S. Bank was innocent of any liability for those damages, and (3) U.S. Bank suffered damages as a result of Companion's claims, which were eventually proven to be the fault of Third-Party Defendants. *Vermeer Carolina's, Inc.*, 518 S.E.2d at 305–08.

### 1. Third-Party Defendants' Arguments

Third-Party Defendants assert that U.S. Bank cannot recover for equitable indemnification based on South Carolina law and the requirements of Rule 14(a) of the Federal Rules of Civil Procedure. (ECF No. 80 at 3.) According to Third-Party Defendants, U.S. Bank's allegations suggest that it is a joint tortfeasor, and South Carolina law does not allow recovery for equitable indemnification between joint tortfeasors. (*Id.* at 3, 14–18.) Third-Party Defendants also point out that U.S. Bank fails to fulfill Rule 14(a)'s requirement that Third-Party Defendants' liability "relate" to Companion's first-party claim against U.S. Bank—that is, U.S. Bank fails to show that Third-Party Defendants' liability "arises only if U.S. Bank is first held liable to [Companion]." (*Id.* at 3, 18–20.) Third-Party Defendants lastly contend that U.S. Bank fails to allege a "special relationship" with Third-Party Defendants, as South Carolina law requires, to recover from Third-Party Defendants under an equitable indemnification claim. (*Id.* at 3, 20–23.)

### 2. U.S. Bank's Argument

U.S. Bank responds that an equitable indemnification claim for attorneys' fees should stand because this court could find that it satisfied all of its duties to Companion under the Trust

---

[19] This court notes that in its Response, U.S. Bank seems to emphasize that it "[p]roperly [p]leads a [c]laim for [e]quitable [i]ndemnity for [a]ttorney [f]ees," (ECF No. 104 at 22–24), and does not discuss whether dismissal of its claim for equitable indemnification of damages would be appropriate.

Agreements but did not simultaneously detect Third-Party Defendants' misconduct. (ECF No. 104 at 23.) Consequently, U.S. Bank argues that it could "recover the legal fees and expenses it incurred by being subjected to suit because of the . . . [Third-Party] Defendants' actions." (*Id.*)

### 3. *Court's Review*

#### a. Equitable Indemnity under South Carolina Law

Given the three requirements for making out an equitable indemnity claim, *see Vermeer Carolina's Inc. v. Wood/Chuck Chipper Corp.*, 518 S.E.2d at 307, this court must be satisfied that U.S. Bank and Third-Party Defendants have no legal or contractual relation to one another and that they do not share duties of care to Companion—that is, that they do not share a common liability and are not joint tortfeasors. Otherwise, U.S. Bank is without a right to indemnity from Third-Party Defendants. *Vermeer Carolina's, Inc.*, 518 S.E.2d at 307 (citing *Scott v. Fruehauf Corp.*, 396 S.E.2d 354 (S.C. 1990).).

First, Third-Party Defendants note that based on U.S. Bank's allegations, they and U.S. Bank have no legal relation. (ECF No. 80 at 15.) And to be joint tortfeasors, U.S. Bank and Third-Party Defendants must be parties who "contributed to [Companion's] injury." Black's Law Dictionary 1718 (10th ed. 2014). As evidence of how the two parties appear to share common liability as joint tortfeasors, Third-Party Defendants explain:

> U.S. Bank alleges [that Third-Party Defendants] had a role in causing the trust accounts to acquire the Assets, which had values that were overstated and/or misrepresented. (Complaint at ¶¶ 1-3, 80, 84, 89, 94). However, under the Trust Agreements, U.S. Bank was required to certify that the fair market value of the Assets was not less than the fair market value of the assets being replaced, and that the fair market value was true and correct to best [sic] information and belief of U.S. Bank. (Exhibits 1 and 2 to Complaint, at ¶¶ 4(c), 7(f) (Dkt. Nos. 50-1 and 50-2). Based on these provisions, U.S. Bank shares in the same duties it alleges were owed by the [Third-Party Defendants] and – if Companion's allegations are proven to be true – U.S. Bank shares a common liability to Companion.

> In addition to these duties, U.S. Bank also had duties independent of the Trust Agreements and independent of any duties owed by [Third-Party Defendants]. For example, the South Carolina Trust Code does not allow the terms of a trust to limit "the duty of a trustee to act in good faith and in accordance with the purposes of the trust." S.C. Code § 62-7-105(b)(2). Furthermore, this Court has recognized that South Carolina Code section 62-7-804 sets forth that "[a] Trustee shall administer the trust as a prudent person would . . . . In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." (Order and Opinion at 13-14 (Dkt. No. 41) (citing *Verenes v. Alvanos*, 387 S.C. 11, 16 n.4, 690 S.E.2d 771, 773 n.4 (S.C. 2010) (stating that "a trustee owes a trust a duty of reasonable care.")). Based on these duties, U.S. Bank is a joint tortfeasor and has no right of equitable indemnification against the Southport entities.

(*Id.* at 15–16.)

Third-Party Defendants conclude that as a result of the duties the Trust Agreements and South Carolina trust law set forth, "[t]here is no scenario where U.S. Bank can satisfy all three of the required elements for an equitable indemnity claim . . . ."  (ECF No. 80 at 16.)  Third-Party Defendants maintain:

> If [Third-Party Defendants] w[ere] negligent, U.S. Bank was also negligent because U.S. Bank had a duty to make a determination that the fair market value of the substituted Assets was comparable, as well as a duty of good faith and reasonable care. If [Third-Party Defendants] w[ere] not negligent, then although U.S. Bank may be found "innocent," it is not entitled to equitable indemnity from [Third-Party Defendants] because [Third-Party Defendants] ha[ve] not been found to be at fault.

(*Id.*)  This court finds availing Third-Party Defendants' explanation.  Because U.S. Bank's allegations suggest that it is a joint tortfeasor that shares common liability with Third-Party Defendants—that is, that U.S. Bank and Third-Party Defendants have contributed to Companion's injury—it cannot make out an equitable indemnity claim.

U.S. Bank, in response, nonetheless suggests a scenario wherein a potential recovery of attorneys' fees—not damages—justifies a claim for equitable indemnity.  (*See* ECF No. 104 at 23 ("U.S. Bank could recover the legal fees and expenses it incurred by being subjected to suit because of the . . . [Third-Party] Defendants' actions.").)  U.S. Bank specifically argues that this court could

"find that U.S. bank satisfied all of its duties, and so was not liable to Companion, yet did not detect [Third-Party Defendants'] misconduct" that "caused Companion to sue U.S. Bank."  (*Id.*)  This court disagrees.

Based on Third-Party Defendants' apparent duties, as set forth in the Trust Agreements and included in the allegations, any "misconduct" on Third-Party Defendants' part with regards to valuation of assets necessarily implicates U.S. Bank.  U.S. Bank's direction to Companion to substitute various assets was considered "a representation and a warranty" that the fair market value of the assets was not less than the fair market value of the assets being replaced, and that statements of assets and their fair market value provided to Companion were considered "a certification" that the fair market value was "true and correct to [its] best information and belief." (ECF Nos. 50-1, 50-2.)  And because the allegations and Trust Agreements suggest that U.S. Bank and Third-Party Defendants share common liability as joint tortfeasors, the equitable indemnification claim fails under South Carolina law with regard to recovery of attorneys' fees for the same reason it fails as a claim more generally.[20]  *See, e.g.*, *Stuck v. Pioneer Logging Mach., Inc.*, 301 S.E.2d 552, 553 (S.C. 1982) (holding that equitable indemnity lies "where one person is exposed to liability by the wrongful act of another in which he does not join").

---

[20] Moreover, the Supreme Court of South Carolina has explained that "[t]he law of equitable indemnification allows recovery of expenses when the act of the wrongdoer involves the innocent defendant in litigation or places him in such relation with others as makes it necessary to incur expenses to protect his interest."  *Vermeer Carolina's Inc. v. Wood/Chuck Chipper Corp.*, 518 S.E.2d 301, 305 (S.C. Ct. Ap. 1999). "Expenses" refer to "*any* costs which are reasonably necessary to defend litigation or otherwise protect the innocent party's interest."  *Id.* (emphasis added).  Therefore, for the same reasons U.S. Bank's equitable indemnity claim fails with regard to damages as "expenses," it also fails with regard to attorneys' fees as "expenses"—common liability as joint tortfeasors would seem to preclude recovery of either under an equitable indemnity theory under South Carolina law.

b.  Equitable Indemnity under Fed. R. Civ. P. 14(a)

Even if U.S. Bank had successfully made out an equitable indemnity claim under South Carolina law, this court finds that the claim would still fail as a third-party action.  It appears here that making out an equitable indemnification claim would simultaneously preclude U.S. Bank from showing that Third-Party Defendants' liability is "derivative" or secondary to its liability in accordance with the requirements of Fed. R. Civ. P. 14(a).  *See Scott v. PPG Indus. Inc.*, No. 89-2362, 1990 WL 200655, at *3 (4th Cir. Dec. 13, 1990); *Deutsche Bank Nat'l Tr. Co. v. Tyner*, 233 F.R.D. 460, 462 (D.S.C. 2006).  More specifically, for U.S. Bank's third-party claim to satisfy Rule 14(a)'s requirements, 1) Third-Party Defendants must be potentially liable to U.S. Bank, and 2) Third-Party Defendants' liability must relate to Companion's claim against U.S. Bank such that Third-Party Defendants' liability arises only if U.S. Bank is first held liable to Companion.  *See, e.g.*, *Tetra Tech EC/Tesoro Joint Venture v. Sam Temples Masonry, Inc.*, No. 3:10-CV-1597-CMC, 2011 WL 1048964, at *5 (D.S.C. 2011).  A successful equitable indemnity cause of action under South Carolina law would seem to prevent U.S. Bank from being able to fulfill the second requirement.

As Third-Party Defendants explain:

> U.S. Bank must be innocent of any liability to Companion under South Carolina law in order to recover for equitable indemnity against [Third-Party Defendants]. Therefore, there is no scenario where U.S. Bank's claim is appropriate as a Rule 14(a) third-party claim. If U.S. Bank is exonerated of liability to Companion, then its indemnity action against [Third-Party Defendants] ends. If U.S. Bank is found liable to Companion . . . , it is not entitled to equitable indemnification from [Third-Party Defendants].

(ECF No. 80 at 19.)  This court agrees.  *See, e.g.*, *Pickett v. United States*, 724 F. Supp. 390, 395 (D.S.C. 1989) (granting the third-party defendant's motion to dismiss the South Carolina indemnity claim under the same rationale); *Surber v. Shanghai Zhenhua Heavy Indus. Co.*, No.

C14-FL79RBL, 2015 WL 630573, at *3 (W.D. Wash. Feb. 13, 2015) (finding a first-party defendant's equitable indemnification claim against third-party defendants improper under Rule 14(a) since the first-party defendant's claims against them alleged their liability to the first-party plaintiff and not to it).

As to U.S. Bank's reliance on *First General Servs. v. Miller* for the opposing argument that South Carolina law allows equitable indemnification claims to be pleaded as third-party derivative claims under Rule 14(a), (*see* ECF No. 104 at 26), this court first notes that *First General Services* involved a *state* court interpreting its own *state* impleader rule, *First General Servs.*, 445 S.E.2d 446, 448 (S.C. 1994)—an interpretation of little authority on the issue of what federal courts require under Fed. R. Civ. P 14(a) as here.  Moreover, the reason why the court in *First General Services* seemed to permit the third-party equitable indemnity claim under its impleader rule is not as persuasive here.  In *First General Services*, the court found that the *first*-party plaintiff's "mere allegations" of the third party defendant's negligence should not defeat a third-party derivative claim of equitable indemnity.  *Id.*  In this matter, however, as already discussed, this court relies not on scant allegations from Companion for U.S. Bank and Third-Party Defendants' common liability, but rather on the liability for which the actual Trust Agreements appear to provide.

In sum, this court agrees with Third-Party Defendants that the third-party equitable indemnity claim would fail under Fed. R. Civ. P. Rule 14(a), even if U.S. Bank could successfully plead it as a cause of action under the facts of this case.  In light of this conclusion, this court finds no reason to also discuss whether a "special relationship" existed between U.S. Bank and Third-Party Defendants, as South Carolina law requires to sustain an equitable indemnification claim.

D.     Subject Matter Jurisdiction over Claims against Third-Party Defendant Burns

The court finally turns its attention to Third-Party Defendant Burns's arguments regarding this court's lack of subject matter jurisdiction over claims against him.

### 1.  Third-Party Defendants' Arguments

Third-Party Defendant Burns argues that U.S. Bank cannot compel contribution for Companion's claims because he shares common citizenship with Companion; therefore, U.S. Bank's claim against him should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  (ECF No. 83-1 at 14.)  In his Response, Third-Party Defendant Burns further declares that "'original jurisdiction' can only be conferred . . . at the inception of [Companion]'s first-party case" and that "U.S. Bank's diversity with [Third-Party Defendant] Burns cannot provide a second basis for 'original' jurisdiction because its claims against him depend upon, and could not have been brought in the absence of, [Companion]'s first-party claims."  (ECF No. 111 at 2.)  Third-Party Defendant Burns primarily relies on *Balt. & O. R. Co. v. Saunders*, 159 F.2d 481, 484 (4th Cir. 1947) (affirming the district court's decision to deny a motion to implead a third party), for why U.S. Bank's third-party action should be dismissed for want of jurisdiction.  (*Id.* at 3–4.)

### 2.  U.S. Bank's Arguments

In response, U.S. Bank argues that based on its pleadings and the record, the court clearly has diversity jurisdiction over Third-Party Defendant Burns and the fact that Third-Party Defendant Burns shares South Carolina citizenship with Companion does not matter since Companion has not asserted a claim against him.  (ECF No. 104 at 24–25.)

### 3. Court's Review

This court agrees with U.S. Bank. "The fact that [plaintiff] and [third-party defendant] may be co-citizens is completely irrelevant. Unless [plaintiff] chooses to amend his complaint to assert a claim against [third-party defendant], [plaintiff] and [third-party defendant] are simply not adverse, and there need be no basis of jurisdiction between them." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 66 n.1 (1996) (quotations omitted). While Third-Party Defendant Burns may have concerns about him not being a party in the first-party action, the fact is that this court's jurisdictional analysis of U.S. Bank's third-party claim against him is distinct from Companion's first-party claim against U.S. Bank. *See* 3 J. Wm. Moore, *Moore's Federal Practice* § 14.41[1], (Matthew Bender 3d ed. 2015) (explaining that "once federal subject matter jurisdiction is established over the underlying case, other claims may be asserted . . . if they individually invoke a basis of subject matter jurisdiction" and that "the relevant inquiry is simply whether this claim— by Defendant against Third-Party Defendant—satisfies a basis of subject matter jurisdiction"); *see also Johnson v. New River Scenic Whitewater Tours, Inc.*, 313 F. Supp. 2d 621, 626 (S.D.W. Va. 2004) (concluding that it had subject matter jurisdiction over the third-party defendant despite the fact that the first-party plaintiff was a resident of the same state because the jurisdictional analysis of a claim by the third-party plaintiff against a third-party defendant is separate from that of plaintiff over defendant); *Guigliano v. Danbury Hosp.*, 396 F. Supp. 2d 220, 224 (D. Conn. 2005) ("Impleader of a third-party defendant who is not diverse from the plaintiff does not divest a court of diversity jurisdiction.").

As to Third-Party Defendant Burns's reliance on *Balt. & O. R. Co. v. Saunders*, 159 F.2d 481, 484 (4th Cir. 1947), the court directs Third-Party Defendant Burns's attention to *Ford Motor*

*Co. v. Milby*, 210 F.2d 137, 138 (4th Cir. 1954) (distinguishing *Saunders* and *Pierce v. Ford Motor Co.*, 190 F.2d 910 (4th Cir. 1951) (following *Saunders*), both of which Defendant Burns marshals in support of his argument, (ECF No. 111 at 4–5)).  *Saunders* involved a plaintiff bringing a negligence claim against a defendant, who then moved to bring in a third party on the same negligence claim.  *Saunders*, 159 F.2d at 483.  The *Saunders* court explained that the district court's decision to deny that motion was appropriate since bringing in a third party "would have required plaintiffs to litigate a cause of action which they did not assert in their complaint against parties whom they did not join as defendant, and whose joinder, if they had been joined, would have defeated the jurisdiction of the court."  *Id.* at 484.

This third-party action does not involve such a scenario. In the words of the Fourth Circuit, distinguishing *Saunders*: "The bringing in of a third party defendant liable to the original defendant for a liability asserted by plaintiff against the original defendant alone is an entirely different matter."[21]  *Ford Motor Co. v. Milby*, 210 F.2d 137, 138 (4th Cir. 1954) (citing *Blair v. Cleveland Twist Drill Co.*, 197 F.2d 842 (7th Cir. 1952)).  Moreover, Third-Party Defendant Burns's request that U.S. Bank "not be permitted to prosecute [Companion]'s claims on its behalf,"—the same concern the *Saunders* court addressed, *Saunders*, 159 F.2d at 484—is inapposite. It is not evident, for example, that Companion would stand to gain anything from U.S. Bank's recovery from Third-Party Defendants under a contribution, equitable indemnification, or apportionment claim.  Thus,

---

[21] In *Ford Motor Co.*, the Court of Appeals for the Fourth Circuit distinguished *Saunders*, pointing out that Rule 14(a) of the Federal Rules of Civil Procedure did not apply to cases where the defendant was seeking to hold the third party liable to the defendant if the plaintiff should obtain a judgment against the defendant.  210 F.2d 137, 138 (4th Cir. 1954).  The *Ford Motor Co.* court further noted that the 1946 amendment of Rule 14, effective 1948, eliminated from Rule 14(a) the language permitting the joinder that *Saunders* condemned.  *Id.*  The court was referring to the fact that prior to the 1946 amendment, Rule 14(a) provided that a defendant might serve a third-party complaint upon a person "who is or may be liable to him for all or part of the plaintiff's claim against him or against the plaintiff."  The 1948 amendment eliminated the quoted portion.

while Third-Party Defendant Burns proclaims that his jurisdictional arguments "are not unique," (ECF No. 111 at 3), this court concludes that dismissal of U.S. Bank's claims on such grounds would be nonetheless erroneous.

U.S. Bank and Third-Party Defendant Burns are citizens of different states; there is a matter in controversy between them; U.S. Bank alleged damages; and the amount in controversy exceeds $75,000. (*See* ECF No. 50 at 1–5.) This court therefore has diversity jurisdiction over U.S. Bank's third-party claims against Third-Party Defendant Burns per 28 U.S.C. § 1332. In light of this court's determination that it has original jurisdiction over the claims against Third-Party Defendant Burns, this court will not address his arguments regarding whether it would be appropriate for this court to exercise supplemental jurisdiction over them. *See* 3 James Wm. Moore, *Moore's Federal Practice* § 14.41[4][d][v] (Matthew Bender 3d ed. 2015) ("If a claim independently satisfies federal question or diversity of citizenship jurisdiction, supplemental jurisdiction is not needed and should not be addressed.")

## V.     CONCLUSION

For the reasons set forth above, the court hereby **GRANTS IN PART** and **DENIES IN PART** Third-Party Defendants' Motions to Dismiss (ECF Nos. 80, 83-1). This court specifically dismisses U.S. Bank's claims for apportionment and equitable indemnification.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

May 27, 2016
Columbia, South Carolina