## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property and<br>Casualty Insurance Company (n/k/a<br>Sussex Insurance Company), | ) )<br>)<br>) | Civil Action No. 3:15-cv-01300-JMC |
| Plaintiff,<br>v. | )<br>)<br>)<br>) | **ORDER AND OPINION** |
| U.S. Bank National Association,<br>Defendant. | )<br>)<br>)<br>) | |
| U.S. Bank National Association,<br>Third-Party Plaintiff,<br>v. | )<br>)<br>)<br>)<br>) | |
| Redwood Reinsurance SPC, Ltd.;<br>Southport Specialty Finance;<br>Southport Lane Advisers;<br>Administrative Agency Services;<br>Alexander Chatfield Burns; and<br>AON Insurance Managers (Cayman) Ltd.,<br>Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Alexander Chatfield Burns,<br>Fourth-Party Plaintiff,<br>v. | )<br>)<br>)<br>)<br>) | |
| U.S. Bank Trust National Association,<br>Fourth-Party Defendant. | )<br>)<br>)<br>) | |

This case concerns the loss of value in trust accounts that served as security for a reinsurance program occasioned by the substitution into those accounts of allegedly worthless and otherwise defective assets. More specifically, the case concerns which party or parties involved in

the reinsurance program should bear that loss. Before the court is a motion by Third-Party Plaintiff U.S. Bank National Association ("U.S. Bank") to dismiss the counterclaims of Third-Party Defendant Alexander Chatfield Burns ("Burns") pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 160.) For the reasons that follow, the court **GRANTS** the motion **IN PART** and **DENIES** it **IN PART**.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

Companion Property and Casualty Insurance Company ("Companion") participated in a fronted insurance program (the "Program") with Redwood Reinsurance SPC, Ltd. ("Redwood") and Dallas National Insurance Company ("Freestone"), two reinsurance companies. In a fronted insurance program, the reinsurer—here, Redwood and Freestone—bears the actual risk of program performance. The insurance company—here, Companion—receives a fee for allowing its name and paper to be used as the front. As part of the Program, reinsurance collateral trusts established for Companion's benefit under the reinsurance agreements secured Redwood's and Freestone's reinsurance obligations to Companion.

U.S. Bank was substituted as a successor trustee on Companion's reinsurance trust agreements with Redwood and Freestone under two separate trust agreements, the Redwood Trust Agreement and the Freestone Trust Agreement (collectively the "Trust Agreements"). The Trust Agreements named Redwood and Freestone, respectively, as grantors, U.S. Bank as trustee, and Companion as beneficiary. Under the terms of the Trust Agreements, "[Redwood or Freestone] may direct [U.S. Bank] to substitute Assets of comparable value for other Assets presently held in the Trust

---

[1] A fuller account of the background of this case may be found in the court's orders disposing of previously filed motions to dismiss. (*See* ECF Nos. 41, 118.) For purposes of the instant motion, a somewhat abridged version of the facts as set forth in those orders will suffice. Accordingly, the court directs interested readers to its previous orders and will forego reference to the record except where the court quotes from the record, where the court refers to facts beyond those set forth in the previous orders, or where reference would be particularly useful.

Account with written notification to [Companion] of the substitute Assets. [U.S. Bank] shall comply with any such direction." (ECF No. 50-2 § 4(c).) The Trust Agreements also stated that Redwood and Freestone would be making representations and warranties regarding the quality and sufficiency of the assets that they transferred for deposit in the trust accounts. Specifically, by agreement, Redwood and Freestone would promise that the assets: (1) consisted only of "Eligible Securities" as defined by contract; (2) were in such form that Companion could transfer and dispose of any assets without the consent of anyone else; and (3) at all times had a value sufficient to cover 125% of Redwood's and Freestone's respective reinsurance obligations.

According to U.S. Bank's third-party complaint, Burns founded a number of corporate entities, to which U.S. Bank refers collectively as "Southport."[2] U.S. Bank asserts that Burns was, at all times relevant to this action, Southport's beneficial owner, controlling person, and chief strategist. Affiliates of Southport acquired Redwood in 2012 and Freestone in 2013. U.S. Bank alleges that Southport Lane Advisors ("SLA"), named as a third-party defendant, managed the asset allocation strategies for all of Southport's companies, including Redwood and Freestone and that Burns was the "Ultimate Control Person" and "Chief Strategist" for SLA. (ECF No. 50 at 4.) U.S. Bank further alleges that SLA had authority "at all times [to] act on behalf of, and as agent of" Redwood and Freestone based on "Investment Management Agreements" entered into with each of them and that Freestone and Redwood, "directly or through [SLA]," decided which assets to buy, which to sell, and in what amounts. (*Id.* at 18, 37.)

---

[2] In its third-party compliant, U.S. Bank uses "Southport" to refer collectively to Southport Lane, LP; Southport Lane Management, LLC; Southport Lane Genesis, LP; SLI Holdings, Inc.; and Southport Lane Financial, Inc. and their respective subsidiaries and affiliates. Burns objects to the aggregation of these entities on various grounds. (*See* ECF No. 139 at 1 n.1.) The court concludes that it is unnecessary to decide whether the entities are validly aggregated in U.S. Bank's complaint in order to decide the instant motion. Accordingly, the court adopts U.S. Bank's use of the term "Southport" in reference to the collective entities only for ease of reading.

On March 20, 2015, Companion filed a complaint in this court against U.S. Bank, alleging that, between May 2013 and January 2014, U.S. Bank, as trustee, approved and permitted the substitution of assets for various investments for the Freestone and Redwood trust accounts. Companion asserts that U.S. Bank is liable for these substitutions because certain assets in the trust accounts violated the terms of the Trust Agreements. Specifically, Companion alleges certain Southport affiliate securities held in the trust accounts were not "Eligible Securities" under the Trust Agreements, were not freely negotiable, and/or had little to no value. Companion makes these same allegations with regard to the acquisition of Destra Targeted Income Unit Investment Trusts ("Destra UITs") for the trust accounts.

Although U.S. Bank denies Companion's claims, it argues that, if Companion's allegations are proven at trial, Third-Party Defendants, including Burns, are liable to Companion. First, U.S. Bank alleges Redwood and Freestone—either directly or through SLA—directed U.S. Bank's purchases of securities and other membership interests in various companies and that SLA falsely represented the values of the securities to be purchased. Second, U.S. Bank alleges that Redwood and Freestone caused the Redwood and Freestone trust accounts to acquire Destra UITs from June 2013 through January 2014. As with the securities and ownership interests, U.S. Bank alleges Redwood and Freestone directed its purchases of units in the Destra UITs—directly or through SLA—from June 2013 through January 2014 and falsely represented the values of the units to be purchased.

U.S. Bank filed a third-party complaint against Third-Party Defendants and specifically named Burns, alleging that he "dominated and controlled" each of the other Third-Party Defendants (ECF No. 50 at 33) and "directed or participated in all of the relevant conduct" (ECF No. 104 at 12). U.S. Bank alleges that "it was reasonably foreseeable, and Burns should have

4

known, did know, and/or intended, that Companion . . . would receive the asset valuations that Burns originated in account statements and other communications directed to Companion" and that Burns had a pecuniary interest in making representations regarding the assets.  (ECF No. 50 at 33.) With these underlying tort theories of liability, U.S. Bank asserted three specific causes of action against Burns and other Third-Party Defendants: (1) apportionment under S.C. Code. Ann. § 15-38-15 (2015); (2) contribution under S.C. Code § 15-38-10 (2015), *et seq.*, or other applicable grounds; and (3) equitable indemnification. After Third-Party Defendants, including Burns, filed motions to dismiss (ECF Nos. 80, 83-1), the court dismissed U.S. Bank's claims for apportionment and equitable indemnification, leaving only its claim for contribution intact (ECF No. 118).

Burns then filed an answer to U.S. Bank's third-party complaint as well as seven counterclaims against U.S. Bank. (ECF No. 139.) In his first counterclaim for contribution, Burns avers

> In the event [Burns] is held liable to either [Companion or U.S. Bank], then he is entitled to contribution from U.S. Bank under the South Carolina Contribution Among Tortfeasors Act [S.C. Code Ann.] § 15-38-10 [(2015)] *et seq.* ("SCCATA").
>
> . . . . In the event that Companion pursues any right of action against [Burns] and proves those allegations true at trial or [Burns] were to discharge any common liability while this action is pending, then U.S. Bank would be liable to [Burns].

(*Id.* at 35.)

In the remaining counterclaims, Burns asserts that "[i]f U.S. Bank's allegations [that he dominated or controlled Redwood and/or Freestone] are proven true at trial, [Burns] may be deemed a beneficiary to Redwood['s] and Freestone's rights," "a beneficial owner of the property [that was held by Redwood and Freestone]," "a party that relied to his detriment [on statements made by U.S. Bank to Redwood and Freestone] and from whom U.S. Bank became unjustly

enriched," "a party to whom U.S. Bank owed a fiduciary duty [due to its special relationship of trust with Redwood and Freestone]," and "a party to whom U.S. Bank owed a duty of reasonable care [in connection with its role as trustee of the Trust Agreements]." (*Id.* at 36, 38-42.) Based on these assertions, Burns alleges counterclaims for breach of contract, conversion, unjust enrichment, breach of fiduciary duty, negligence and gross negligence, and negligent misrepresentation. (*Id.* at 36-43.)

On August 5, 2016, U.S. Bank filed the instant motion to dismiss Burns' counterclaims against it, pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (ECF No. 160.) With respect to Burns' contribution counterclaim, U.S. Bank argues that, to the extent he seeks contribution for an underlying claim against him lodged by U.S. Bank, South Carolina law does not permit Burns to seek contribution from U.S. Bank for his liability to U.S. Bank. (ECF No. 160-1 at 5.) To the extent Burns seeks contribution from U.S. Bank for an underlying claim lodged against him by Companion, U.S. Bank argues that South Carolina law does not permit such a counterclaim because Companion has not filed a claim against Burns. (*Id.*) Accordingly, U.S. Bank argues that the contribution counterclaim should be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim for which this court could grant relief.

With respect to the remaining counterclaims, U.S. Bank argues first that Burns fails to overcome the prudential barriers to standing erected by Supreme Court precedent. (*Id.* at 6-11.) Specifically, U.S. Bank contends that Burns' counterclaims run afoul of the prudential standing rule that a claimant may not assert the rights or interests of third-parties. (*Id.* (citing *Warth v. Seldin*, 422 U.S. 490 (1975)).) Second, U.S. Bank argues that the doctrine of *in pari delicto* bars the counterclaims, as the counterclaims themselves demonstrate that Burns was as equally responsible as U.S. Bank for the alleged wrongdoing. (*Id.* at 12-13). Third, U.S. Bank argues that,

6

because Burns attempts to enforce rights or interests belonging to Redwood and Freestone, each of the remaining counterclaims must necessarily fail on their merits under the substantive law and, thus, dismissal under Rule 12(b)(6) is appropriate. (*Id.* at 14-27.)

## II. LEGAL STANDARDS

"Challenges to the sufficiency of a counterclaim . . . under Rule 12 . . . motions are subject to the same rules as when they are directed toward an original complaint." 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1407 (3d ed. 2011). Accordingly, the court assesses U.S. Bank's motion to dismiss Burns' counterclaims under the standards normally applied to such motions seeking to dismiss a plaintiff's complaint.

### A. Rule 12(b)(6) standard

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a complainant's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). When considering a motion to dismiss, the court

should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the complainant. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Dismissal is appropriate if, even accepting well-pled allegations and viewing the complaint in the complainant's favor, the complaint could not state a legally cognizable claim for which the court could grant relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) ("[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.); *c.f. Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (explaining that *Iqbal* and *Twombly* plausibility standards are not always at issue).

## B. Rule 12(b)(1) standard

A motion to dismiss for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* In a motion to

dismiss pursuant to Rule 12(b)(1), "[t]he burden of establishing subject matter jurisdiction rests with the [complainant]." *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

## III. ANALYSIS

**A. Contribution counterclaim**

In his contribution counterclaim, Burns alleges that he is entitled, under South Carolina law, to contribution from U.S. Bank in the event he is found liable to Companion or U.S. Bank. (ECF No. 139 at 35.) U.S. Bank moves to dismiss the counterclaim, arguing that, whether it is premised on Burns' liability to Companion or to U.S. Bank, it fails to state a claim on which relief could be granted.

### 1. Contribution premised on liability to U.S. Bank

U.S. Bank's only claim against Burns is for contribution for U.S. Bank's liability to Companion. Thus, Burns' counterclaim seeks contribution from U.S. Bank for his own liability in contribution to U.S. Bank. Contribution does not work this way. In common law, "[a]n entitlement to contribution can potentially arise in any setting in which two parties are jointly and severally liable to a third." *Restatement (Third) of Restitution and Unjust Enrichment* § 23, cmt. a (2011); *see also* 18 Am. Jur. 2d., *Contribution* § 4 ("The law of contribution is meant to apportion the responsibility to pay innocent, injured third parties between or among those causing the injury".); *id.* § 9 ("It is essential to the application of the principle of contribution that the parties be under a common . . . liability[.] . . . Common liability exists when an injured party has a legal remedy against both a party that is seeking contribution and the party from whom contribution is sought . . . ."). Because a contribution must be used to apportion the common liability that two or more wrongdoers have to a third party, it cannot be used to assert liability directly between the two wrongdoers. In other words, one of the wrongdoers cannot seek contribution against the other for

a claim of liability (such as a tort claim) that one has against the other. *See* 18 Am. Jur. 2d., *Contribution* § 4 ("[T]here can be no contribution between two parties based on a direct claim between them.").

SCCATA reinforces these basic principles of contribution from the common law. By its terms, SCCATA provides a right of contribution by one "tortfeasor" against another "tortfeasor," both of whom become "jointly or severally liable in tort for the same injury" or who share "common liability." S.C. Code Ann. §§ 15-38-15(D), -20. This language is nonsensical in the absence of a third-party to whom both tortfeasors have a common liability for inflicting an injury. This can be clearly seen when a defendant seeks contribution from a plaintiff that is prosecuting a tort claim against the defendant. The plaintiff cannot be said to have a liability to itself that it shares with the defendant, nor can it be said to have inflicted an injury on itself rendering it a tortfeasor as to itself, at least not in any legally cognizable way. *See G & P Trucking v. Parks Auto Sales Serv. & Salvage*, 591 S.E.2d 42, 46 (S.C. Ct. App. 2003) (rejecting contribution claim against "the injured party" because it "could not have been a tortfeasor as to its own injury, let alone a joint tortfeasor," and thus "there was no 'common liability'" (citing *Shipes v. Piggly Wiggly St. Andrews*, 238 S.E.2d 167, 168 (S.C. 1977) (defining "duty" in a negligence case as "the obligation to conform to a particular standard of conduct toward *another*") (emphasis added))).

To the extent that Burns seeks contribution from U.S. Bank for Burns' liability to U.S. Bank, contribution is not available. Like the hypothetical plaintiff in the preceding paragraph, U.S. Bank cannot be viewed as having liability against itself and, therefore, cannot constitute a joint tortfeasor with Burns against which Burns may prosecute a claim for contribution. Anticipating this, Burns shifts the focus, explaining that the real purpose for his contribution claim premised on his liability to U.S. Bank is his fear that he will be called upon to contribute more than his *pro rata*

share to Companion if other unnamed tortfeasors are not identified and compelled to pay their *pro rata* shares. (ECF No. 205 at 5.) Burns anticipates that U.S. Bank will pay more than its *pro rata* share to Companion because other tortfeasors will not be identified timely and that he will be forced to contribute to this payment, such that he will pay more than his *pro rata* share. (*Id.*) His contribution counterclaim, he explains, is simply a method to claw back any overpayments he anticipates making to U.S. Bank. (*Id.*)

The court agrees with U.S. Bank that this explanation is too thin a nail on which to hang a contribution counterclaim. It is unclear that, after shifting the focus to joint tortfeasors with a common liability to Companion, Burns' argument still relates to a counterclaim for contribution premised on his liability to U.S. Bank. In any event, as explained above, a contribution counterclaim brought against U.S. Bank premised on Burns' liability to U.S. Bank is simply not the correct vehicle for accomplishing his claw back goals.

### 2. Contribution premised on liability to Companion

Burns also premises his contribution counterclaim on his liability to Companion. However, as Burns implicitly admits, Companion has not filed suit against him. U.S. Bank argues that the fact that Companion has not filed suit against Burns is fatal to a contribution counterclaim against U.S. Bank that is premised on Burns' liability to Companion. In response, Burns asserts that "there is simply no 'pending litigation' prerequisite" to a contribution claim under SCCATA. (ECF No. 205 at 3.) To this, U.S. Bank replies that Burns' counterclaim does not satisfy SCCATA's requirements for a contribution action in § 15-38-40(D). (ECF No. 221 at 2-3.)

In relevant portion, SCCATA provides:

(A) Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

11

(B) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability . . . .

S.C. Code Ann. § 15-38-20(A)-(B). It also provides:

(D) If there is no judgment for the injury . . . against the tortfeasor seeking contribution, his right of contribution is barred unless he has either (1) discharged by payment the common liability within the statute of limitations period applicable to claimant's right of action against him and has commenced his action for contribution within one year after payment, or (2) agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.

S.C. Code Ann. § 15-38-40(D).

This court first had occasion to interpret SCCATA in *Lightner v. Duke Power Company*,

719 F. Supp. 1310 (D.S.C. 1989). There, the court noted the Virginia Supreme Court's distinction

between a contribution cause of action and a contribution right of action:

There is a valid distinction between the accrual of the equitable, *inchoate* right to contribution that arises at the time of jointly negligent acts and the maturation of the right to *recover* contribution that arises only after payment of an unequally large share of the common obligation. Stated differently, the right to recover contribution arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable, while the cause of action for contribution arises at the time of the jointly negligent acts. Once in being, although contingent, subordinate, or inchoate, the cause of action has an existence in contemplation of law until it is no longer needed as a resource to which the joint tortfeasor may look for relief from an inequitable burden placed upon him by reason of the refusal of another to perform such other's duty by paying his honest share of the common obligation. This cause of action is a substantive right.

719 F. Supp. at 1315 (internal quotation marks and brackets omitted) (quoting *Shiflet v. Eller*, 319

S.E.2d 750, 754 (Va. 1984)). The *Lightner* court then compared the Virginia Supreme Court's

framework to South Carolina law:

12

> A "cause of action" in South Carolina is defined as a legal wrong threatened or committed against the complaining party. It is composed of three parts—a right in the plaintiff, a correlative duty or obligation resting on the defendant, and some act or omission done by the latter in violation of the right. . . . [T]he cause of action is the right claimed or wrong suffered by the plaintiff on the one hand, and the duty or delict of the defendant on the other, and these appear by the facts of each separate case. The remedy sought to redress the cause of action is entirely separate from the cause of action itself and it is governed by different rules and principles. A "cause of action" may exist before the aggrieved party's "right of action" accrues.

*Id.* at 1316 (internal citations, quotation marks, and brackets omitted). The *Lightner* court accordingly held that

> a right to contribution, and hence a cause of action for contribution, arises when the underlying tort giving rise to a common liability occurs. This inchoate right matures into a complete and enforceable right of action only after a tortfeasor pays more than his pro rata share of the judgment. [SCCATA] creates the right to contribution in express terms: "[W]here two or more persons become jointly or severally liable in tort for the same injury . . . there is a right of contribution among them even though judgment has not been recovered." S.C. Code Ann. § 15–38–20(A)[]. The Act limits the enforceability of this right, however, to "a tortfeasor who has paid more than his pro rata share of the common liability." *Id.* § 15–38–20(B). Thus, the inchoate right accrues when the common liability arises, but the remedy is not available until a tortfeasor pays more than his share of the judgment.

*Id.*

The South Carolina Supreme Court adopted this same view of SCCATA, distinguishing between the accrual of a contribution cause of action, which "arises at the time of the jointly negligent acts," and a right to recover contribution, which "arises only when one tortfeasor has paid or settled a claim for which other wrongdoers are also liable." *Cousar v. New London Eng'g Co.*, 410 S.E.2d 243, 244 (1991) (quoting *Shiflet*, 319 S.E.2d at 754) (citing *Lightner*, 719 F. Supp. 1310). However, interpreting SCCATA in light of state court procedural rules, specifically S.C.R. Civ. P. 14, which governs third-party practice, the Court later held that a tortfeasor seeking contribution first must pay the plaintiff, pursuant to § 15-38-20(B), before the action is ripe because

"a third-party complaint is premised upon an existing right of the third-party plaintiff." *First Gen. Servs. of Charleston, Inc. v. Miller*, 445 S.E.2d 446, 448 (S.C. 1994); *accord Se. Freight Lines v. City of Hartsville*, 443 S.E.2d 395 (S.C. 1994) .

Subsequently, this court determined that *First General*'s holding, which did not permit a party to file a third-party claim for contribution until that party had paid or settled the claim, was the product of the application of S.C.R. Civ. P. 14 to SCCATA. *See Brown v. Shredex, Inc.*, 69 F. Supp. 2d 764, 766 (D.S.C. 1999). After a thorough analysis under the *Erie*[3] doctrine, the court concluded that S.C.R. Civ. P. 14 was procedural in nature and that Fed. R. Civ. P. 14 "trumps this state-law rule," permitting a third-party plaintiff to raise a contribution claim against a third-party defendant even if no judgment has been entered against the third-party plaintiff. *Id.* at 767-69. Following *Brown*, this court has twice ruled—once by the undersigned in the instant case—that the Federal Rules of Civil Procedure permit a party seeking contribution under SCCATA to raise the claim in a third-party action even before the party has made any payments to the person to whom it is putatively liable. (*See* ECF No. 118 at 28-31); *Tetra Tech EC/Tesoro Joint Venture v. Sam Temples Masonry, Inc.*, No. 3:10-cv-1597-CMC, 2011 WL 1527066, at *3 (D.S.C. Apr. 20, 2011). Both the undersigned's order and *Tetra Tech* relied heavily on *Brown*'s analysis, which, in turn, relied heavily on the fact that *First General*'s holding was the result of state court procedural rules.

Harking back to *Lightner* and *Cousar*, the court here re-emphasizes the basic points made in those cases: "a cause of action for contribution[] arises when the underlying tort giving rise to a common liability occurs." *Lightner*, 719 F. Supp. at 1316. However, "the right to recover contribution," which, under South Carolina procedural rules must exist before a third-party claim

---

[3] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

for contribution may be raised, "arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable . . . ." *Cousar*, 410 S.E.2d at 39. The upshot of *Brown*, *Tetra Tech*, and this court's previous order is that the state-court procedural rule requiring accrual of the right to recover contribution before the claim can be raised does not apply under the Federal Rules of Civil Procedure. Thus, a party proceeding in federal court that wishes to raise a claim for contribution in a third-party action need only have accrued a cause of action for contribution, which, under South Carolina law, arises when the underlying tort has occurred. In a case proceeding in federal court, nothing in SCCATA, as interpreted in *Lightner* and *Cousar*, requires that, before a cause of action for contribution accrues, the person to whom the party seeking contribution is liable must file suit against that party for the underlying tort at issue. The court holds, therefore, that SCCATA does not require that the party seeking contribution be made a defendant in a suit for the underlying tort before that party may raise a claim for contribution in a third-party action.

U.S. Bank attempts to escape this result by arguing that Burns does not meet the requirements set forth in § 15-38-40(D). That subsection, which applies when, as here, no judgment has been entered against the party seeking contribution, states that a party's "right of contribution is barred" unless that party (1) has discharged the common liability by payment within the limitations period for the underlying tort and has commenced his contribution action within one year after payment or (2) has agreed, while an action against him for the underlying tort is pending, to discharge the liability and within one year has discharged the liability by payment and commenced his contribution action. S.C. Code Ann. § 15-38-40(D). The court rejects this argument. By its terms, § 15-38-40(D) acts as a bar to the right of contribution, not to the cause of action. Moreover, § 15-38-40(D) only requires payment or a promise of payment as a condition to

a party's accruing a right of contribution, which is not distinguishable from § 15-38-20(B)'s condition that a party pay for the common liability before the right to contribution exists, which this court has ruled, on multiple occasions, does not prohibit a party from raising a contribution claim in a third-party action.

Because the torts giving rise to U.S. Bank's and Burns' common liability to Companion have already occurred, Burns' cause of action for contribution has accrued. Burns need not wait until Companion sues him for those torts. U.S. Bank's argument that the contribution counterclaim premised on Burns' liability to Companion should be dismissed because Companion has not yet sued Burns is rejected.

In sum, the court will grant U.S. Bank's motion to dismiss Burns' contribution counterclaim to the extent it is premised on his liability to U.S. Bank but deny it to the extent it is premised on his liability to Companion.

## B. Remaining counterclaims

Aside from his contribution counterclaim, Burns also asserted six other counterclaims sounding in contract and tort. For each of these remaining counterclaims, Burns' theory of liability rests on a condition: that U.S. Bank succeeds on its claim that Burns dominated and controlled Redwood and Freestone, such that he could be held individually liable to U.S. Bank to the same extent as Redwood and Freestone would be if U.S. Bank prevailed on its contribution claims against them. In arguing its motion to dismiss, U.S. Bank contends that, through these counterclaims, "Burns does not seek to recover losses that he himself incurred or to vindicate rights that he himself possesses. Rather, Burns seeks to recover damages on behalf of Redwood and Freestone, and to assert contract and tort claims on their behalves." (ECF No. 160-1 at 12.) This, U.S. Bank argues, runs afoul of the prudential standing doctrine.

As the Fourth Circuit has concisely explained,

The standing doctrine has both constitutional and prudential components. In order to satisfy the constitutional component of standing, a party must meet three requirements:

> (1) the party has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

With regard to the prudential component of standing, courts generally recognize three self-imposed constraints. First, when the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction. Second, *the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.* Third, a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.

*Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (emphasis added) (internal citations, quotation marks, and brackets omitted) (citing, *inter alia*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000); *Allen v. Wright*, 468 U.S. 737 (1984); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982); *Warth*, 422 U.S. 490). "In determining whether a party has standing to bring suit, the party invoking the jurisdiction of the court bears the burden of establishing standing." *Id.* at 424.

U.S. Bank does not challenge Burns' constitutional standing to bring the remaining counterclaims; rather, it argues only that the counterclaims fail to overcome the second prudential limitation on standing, often called the limitation on third-party standing, which is italicized in the preceding paragraph.[4] As a general rule, the third-party standing doctrine operates to prevent a

---

[4] The court notes that it is not entirely clear under which subsection of Rule 12(b) its analysis of U.S. Bank's prudential standing challenge should proceed. The Fourth Circuit has explained that "[u]nlike Article III standing, issues of prudential standing are non-jurisdictional and may be

shareholder of a corporation from bringing a direct claim against a third party on the ground that

the corporation was injured by a third party's conduct. *See Franchise Tax Bd. v. Alcan Aluminium*

*Ltd.*, 493 U.S. 331, 336 (1990) (noting that the "shareholder standing rule" is a matter of prudential

standing "that generally prohibits shareholders from initiating actions to enforce the rights of the

corporation unless the corporation's management has refused to pursue the same action for reasons

other than good-faith business judgment"); *see also Rivers v. Wachovia Corp.*, 665 F.3d 610, 614-

15 (4th Cir. 2011); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008); *Kuntz v.*

*Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004); *Smith Setzer & Sons, Inc. v. S.C. Procurement*

*Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) ("It is considered a fundamental rule that a

shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs

to the corporation." (internal quotation marks and brackets omitted)). This is the rule in South

Carolina.[5] *See Todd v. Zaldo*, 403 S.E.2d 666, 668 (S.C. Ct. App. 1991) ("[A] cause of action for

---

pretermitted in favor of a straightforward disposition on the merits." *United States v. Day*, 700
F.3d 713, 721 (4th Cir. 2012). Another district court in this circuit, interpreting *Day*, has ruled that
a challenge asserted on third-party prudential standing grounds "is raised under [Rule] 12(b)(6),"
citing a Fifth Circuit case, which more clearly stands for the same proposition. *Callender v.*
*Callender*, No. TDC-15-4015, 2016 WL 3647613, at *3 (D. Md. June 30, 2016) (citing *Harold H.*
*Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for
lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack
of prudential or statutory standing is properly granted under Rule 12(b)(6).")). Confusingly, the
same court has also ruled that "[a] motion to dismiss for lack of . . . prudential standing is generally
treated as a motion under Rule 12(b)(1) because, absent a Plaintiff with standing, a court lacks
subject matter jurisdiction over a claimant's case." *Bailey v. Atl. Auto. Corp.*, 992 F. Supp. 2d 560,
565 (D. Md. 2014); *see also Thompson v. Cnty. of Franklin*, 15 F.3d 245, 247-49 (2d Cir. 1994)
(strongly suggesting that prudential standing challenges should be assessed under Rule 12(b)(1)).
In the face of conflicting authority, the court declines to decide whether it is more appropriate to
proceed under Rule 12(b)(1) or 12(b)(6). Because the court finds it unnecessary to consider facts
outside the pleadings or those properly the subject of judicial notice, it appears that whether Rule
12(b)(1)'s or 12(b)(6)'s standards are employed is inconsequential. *See Nordisk Sys., Inc. v. Sirius*
*Computer Solutions, Inc.*, 156 F. Supp. 3d 1212, 1215 (D. Or. 2015); *Payne v. Chapel Hill N.*
*Props., LLC*, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013).

[5] As this court's diversity jurisdiction is implicated, South Carolina choice of law rules apply. *See*
*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *see also CACI Int'l, Inc. v. St.*

recovery of an asset of a corporation belongs to the corporation as opposed to the individual shareholders. If an individual stockholder has suffered a particular loss due to mismanagement of a corporation then the stockholder may bring an action for his loss since it is his personal asset. But, this loss must be personal and not a loss of the corporation." (internal citations omitted)); *accord Kreischer v. Kerrison Dry Goods Co.*, 172 F.3d 863, *7 (4th Cir. 1999) (unpublished table decision); *Umphlett Lumber Co. v. Trident Sys., Inc.*, 878 F. Supp. 844, 846 (D.S.C. 1995).

As a corollary, a shareholder lacks standing to bring a claim against a third party, alleging that he personally was injured by the third party's conduct when the claim flows from the contractual relationship between the corporation and the third party. *See Umphlett Lumber*, 878 F. Supp. at 846-47 (citing, *inter alia, ITT Diversified Credit Corp. v. Kimmel*, 508 F. Supp. 140 (N.D. Ill. 1981); *Smith Setzer & Sons*, 20 F.3d 1311; *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881 (Iowa 1983); *see generally* 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5910 (2013). "Nevertheless, the general rule that a shareholder cannot bring a direct suit for injuries to a corporation has two exceptions: (1) when the shareholder suffers an injury separate and distinct from that suffered by other shareholders, and (2) when the alleged wrongdoer owes a fiduciary relationship to the shareholder and full relief cannot be accomplished through recovery by the corporation." *Patterson v. Witter*, ___ S.E.2d ___, 2016 WL 3349133, at * 6 (S.C. Ct. App. June 15, 2016) (citing *Rice-Marko v. Wachovia Corp.*, 728 S.E.2d 61, 65 (S.C. Ct. App. 2012)); *see also Smith Setzer & Sons*, 20 F.3d at 1317 (internal quotation marks omitted);

---

*Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Although neither party directly addressed which jurisdiction's substantive law should govern the court's assessment of third-party or shareholder standing under South Carolina's choice of law rules, the court notes that both parties cite to South Carolina law in their arguments regarding the assessment of the merits of each of Burns' counterclaims. Accordingly, the court applies South Carolina substantive law. *See Cosey v. Prudential Life Ins. Co.*, 735 F.3d 161, 169 n.7 (4th Cir. 2013) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)); *Tehram-Berkeley v. Tippetts-Abbett*, 888 F.2d 239, 242 (2d Cir. 1989); *Schiavone Const. Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984).

*see also Franchise Tax Bd.*, 493 U.S. at 336-37. *Umphlett Lumber*, 878 F. Supp. at 846; Fletcher, *supra*, § 5910.[6]

Here, Burns does not dispute that, if his counterclaims are on behalf of Redwood and Freestone, they would fail under the shareholder standing rule outlined above and, therefore, that he would be barred from bringing the counterclaims under the prudential standing doctrine. Even viewing Burns' remaining counterclaims in the light most favorable to him, it is clear that each of them attempts to state a cause of action that would otherwise belong to Redwood and Freestone because, in each of them, Burns expressly states that his theory of liability depends to some extent on proof of an abnormal relationship to Redwood and Freestone, such that he could assert their rights in relation to U.S. Bank or duties owed them by U.S. Bank. Based on the rules of shareholder standing set forth above, the court concludes that, unless Burns somehow demonstrates that those rules do not apply to him, his counterclaims are barred by the prudential standing doctrine. To avoid this result, Burns raises three related arguments.

1. Dominion and control

First, Burns argues that his counterclaims are not on behalf of Redwood and Freestone but rather that they "only seek recovery for his *direct* losses in the event it is somehow proven that he exercised dominion and control over either entity or both." (ECF No. 205 at 6.) Somewhat more

---

[6] Aside from the general rule, with its limited exceptions, that a shareholder may not bring a claim against a third-party wrongdoer on behalf of the corporation, U.S. Bank also avers that Freestone is under a liquidation order of the Delaware Court of Chancery, that Redwood is under a liquidation order of the Grand Court of the Cayman Islands, and that the law of those jurisdictions provides that the respective receiver and official liquidators have exclusive authority to initiate and prosecute any legal action against third parties on behalf of the respective companies. (ECF No. 160-1 at 7-10.) It further avers that, because Burns is no longer affiliated with Redwood or Freestone, he could not bring an action on their behalves. (*Id.* at 10.) Burns disputes none of this; rather, he argues that his claims are for losses he personally incurred and are not brought on behalf of Redwood and Freestone. (ECF No. 205 at 6.) Thus, the court need not consider these arguments or the exhibits U.S. Bank provided to support them.

specifically, he contends that his counterclaims "would not arise from Redwood's and/or Freestone's assets, but from a showing that Redwood and/or Freestone themselves were once his assets." (*Id.*)

The court concludes that Burns' characterization of his counterclaims may be taken two ways, neither of which is ultimately availing. On the one hand, Burns might be understood as arguing that his counterclaims fit under the exception to the prohibition on shareholder standing that permits a shareholder to prosecute a claim for "an injury separate and distinct from that suffered by other shareholders." *Patterson*, 2016 WL 3349133, at * 6. A shareholder's injury is not "separate and distinct" if it is merely derivative of the corporation's injury, and a shareholder's injury is derivative "'if the gravamen of [the shareholder's] complaint is an injury to the corporation and not to the individual interest of the shareholder.'" *Id.* at 5 (quoting *Brown v. Stewart*, 557 S.E.2d 676, 684 (S.C. Ct. App. 2001)). "In essence, a derivative action is one 'in which the right claimed by the shareholder is one the corporation could itself have enforced in court.'" *Bowen v. Houser*, No. 3:12-173-MBS, 2012 WL 2873873, at *2 (D.S.C. July 13, 2012) (quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529 (1984)). Thus, to be "separate and distinct" from the corporation's injury, a shareholder's injury must "not flow indirectly from harm to the corporation." *Id.* (citing *Brown*, 557 S.E.2d at 684-85); *see Brown*, 557 S.E.2d at 685 (defining relevant question as whether alleged wrongdoer's action "'affected the [shareholders] *directly,* or as their interests were submerged in the corporation whose assets were thus dissipated.'" (quoting *Stewart v. Ficken,* 149 S.E. 164, 165 (1929))).

The court concludes that Burns' counterclaims do not fit under the exception. For purposes of the exception, whether Burns, as a shareholder, dominated Redwood and Freestone to such an extent that they may be viewed as his assets is irrelevant. *See Todd*, 403 S.E.2d at 668 ("[T]he

right to recover . . . belongs to the corporation, not [the shareholder] individually. None of the items [belonging to the corporation] is an asset of [the shareholder] *although he may view the companies as his alter ego*." (emphasis added)). Even if Redwood and Freestone are viewed as having been Burns' assets, the injuries he asserts in his counterclaims would be derivative of the companies' injuries because the counterclaims assert the rights of the companies in relation to U.S. Bank, which the companies themselves could have enforced in court. Thus, regardless whether Burns dominated and controlled Redwood and Freestone, the personal injuries he alleges necessarily flow indirectly from harm allegedly inflicted by U.S. Bank on those two companies. The gravamen of his counterclaims is injury to Redwood and Freestone. Burns provides no legal authority supporting his theory that, merely because a shareholder treats a corporation as an alter ego, he may evade the general rule that claims asserting injury to the corporation must be brought by the corporation and not the shareholder. Because such a theory is inconsistent with South Carolina law, the court will not endorse it.

On the other hand, Burns might not be trying to fit under the exception to the rule barring shareholder standing but, instead, might be understood as arguing that, if Redwood and Freestone are shown to be alter egos, then the rule does not apply to him in the first place. The court rejects this argument too. As U.S. Bank persuasively argues, under South Carolina law as well as the law of many other jurisdictions, a shareholder may not engage in "reverse veil-piercing" and ignore the corporate entity when it is convenient. *See Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1344 (4th Cir. 1992) (citing *DeWitt Truck Bros. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976)); *Magnum v. Maryland Cas. Co.*, 500 S.E.2d 125, 127-28 (S.C. Ct. App. 1998) (rejecting reverse veil-piercing in similar circumstances); Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33, 51 (1990) ("It would be clearly

aberrant to allow a corporate insider to reverse pierce the corporate entity because the insider caused the entity to fail to observe the requisite corporate formalities and operated it as the insider's alter ego. This would violate perhaps the most fundamental rule of equity by allowing a person to profit from personal wrong doing."); *see generally* 18 Am. Jur. 2d, *Corporations* § 46; 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41.70 (2006). The court concludes that, to the extent Burns argues that the rule against shareholder standing should not apply to him if it is shown that he operated Redwood and Freestone as his alter egos, this argument amounts to a request to pierce the corporate veil in reverse and that the law does not permit him to do so in order to perfect standing.

### 2. Reputational harm and consequential damages

Second, Burns argues that his counterclaims contain assertions of injury peculiar to him. He avers that his reference to "reputational harm" from U.S. Bank's actions are "his claim and his alone." (ECF No. 205 at 6.) This argument is belied by the allegations in the counterclaims, in which Burns states "[a]s a direct and proximate result of U.S. Bank's [actions], Redwood and Freestone (and [Burns] if U.S. Bank's allegation are proven true at trial) have suffered damages, including . . . reputational harm and other losses." (ECF No. 139 at 36-37, 40-41, 43.) In every instance in which his counterclaims allege Burns has suffered reputational injury, such injury is expressly alleged to be the same reputational injury suffered by Redwood and Freestone or directly derived therefrom. Burns has no standing to bring these reputational injuries for the reasons discussed above.

Burns also points to his allusions to unspecified "consequential damages" in two of his counterclaims. (ECF No. 205 at 6 (citing ECF No. 139 at 38, 40).) As Burns' allegations of reputational harm, this argument fails because the counterclaims expressly state that these

"injuries" to Burns arise from injuries to Redwood and Freestone. (*See* ECF No. 139 at 38, 40 ("[Burns] is entitled to . . . consequential damages, including but not limited to, damages arising from U.S. Bank's furtherance of the insolvencies of Redwood and Freestone as a result of its [actions].").) Thus, Burns lacks standing to assert these consequential-damages injuries for the reasons discussed above.[7]

### 3. Control premium

Third, Burns argues that, although the diminution in the value of Redwood's and Freestone's assets "may in fact include claims exclusive to the[ir] receivers and liquidator, any loss of 'control premium' above and beyond those values would be claims exclusive to him if it is proved he was the "control person" for Redwood and Freestone. (ECF No. 205 at 6-7.) Essentially, Burns contends that, if he exercised dominion and control over the companies, then, in a sale of his interests in them, he could have charged a premium for the buyer's right to purchase that dominion and control and that harm to his interest in a control premium is separate and distinct from harm to the companies.

The court rejects this argument. Burns cites no authority for his argument, and the court notes that it appears to be inconsistent with South Carolina law, *see Todd*, 403 S.E.2d at 278 ("The right [asserted] . . . is an asset of the company and not an asset of an individual shareholder although he owns the majority of its stock."), as well as other jurisdictions' versions of the rule against shareholder standing, *see Smith Setzer & Sons*, 20 F.3d at 1317 ("It is considered a fundamental rule that a shareholder—*even the sole shareholder*—does not have standing to assert claims alleging wrongs to the corporation." (emphasis added) (internal quotation marks and brackets

---

[7] To the extent Burns argues that the "including but not limited to" language in these counterclaims alleges injuries in the nature of consequential damages that somehow are not the same injuries that are suffered by Redwood and Freestone, the court concludes that such injuries are not sufficiently pled for Rule 12(b)(6) purposes.

omitted)). Moreover, such an argument, if endorsed, would mean that any time a corporation incurs an injury, any shareholder who has a controlling share would necessarily incur a separate and distinct injury to his ability to charge a control premium and could bring a direct suit against the alleged wrongdoer. This result does not seem contemplated by South Carolina law. Because Burns can point to no authority supporting his position and the extant authority appears to undermine it, the court concludes that Burns has failed to establish standing by means of this argument.

In sum, because Burns' remaining counterclaims are barred by the rule against shareholder standing and because Burns' arguments that the rule should not apply to him are unavailing, the court concludes that he lacks standing to bring the counterclaims. Accordingly the court will dismiss the counterclaims as they are barred by prudential limitation on third-party standing. The court declines to consider U.S. Bank's separate grounds for dismissal, namely its arguments regarding application of the *in pari delicto* doctrine and the merits of the counterclaims.

### III. CONCLUSION

For the reasons set forth above, U.S. Bank's Motion to Dismiss (ECF No. 160) Burns' counterclaims is hereby **GRANTED IN PART** and **DENIED IN PART**. Burns' counterclaim for contribution, to the extent it is premised on his liability to U.S. Bank, and the remainder of Burns' counterclaims are **DISMISSED**. The court declines to dismiss Burns' counterclaim for contribution to the extent it is premised on his liability to Companion.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 3, 2016
Columbia, South Carolina

25