UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Companion Property and Casualty Insurance Company (n/k/a Sussex Insurance Company), | Civil Action No.: 3:15-cv-01300-JMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| U.S. Bank National Association, | |
| Defendant. | |
| U.S. Bank National Association, | |
| Third-Party Plaintiff, | |
| v. | |
| Redwood Reinsurance SPC, Ltd.; Southport Specialty Finance; Southport Lane Advisors; Administrative Agency Services; and Alexander Chatfield Burns, | |
| Third-Party Defendants. | |
| Alexander Chatfield Burns, | |
| Crossclaim Plaintiff, | |
| v. | |
| Companion Property and Casualty Insurance Company (n/k/a Sussex Insurance Company), | |
| Crossclaim Defendant. | |

Before the court are two motions, pursuant to Fed. R. Civ. P. 42(b), one filed by Plaintiff

Companion Property and Casualty Insurance Company ("Companion") (Motion to Sever Third

and Fourth Party Claims, ECF No. 279), and one filed by Third-Party Defendant Alexander Chatfield Burns ("Burns") (Motion to Bifurcate Trial, ECF No. 329) (collectively, motions for separate trials), both requesting the court to order separate trials, one trial for Companion's claims against U.S. Bank National Association ("U.S. Bank") and U.S. Bank's counterclaims against Companion and a second trial for all remaining third-party claims by U.S. Bank against Redwood Reinsurance SPC ("Redwood"), Ltd., Southport Specialty Finance, Southport Lane Advisors, Administrative Agency Services, and Burns (together "Third-Party Defendants") and Burns' counterclaim against U.S. Bank and crossclaim against Companion. (ECF Nos. 279 & 329.) For the reasons that follow, the court **GRANTS** both motions for separate trials.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

Companion participated in a fronted insurance program with two reinsurance companies, and, as part of the program, reinsurance collateral trusts established for Companion's benefit under the reinsurance agreements secured the reinsurance companies' obligations to Companion. In 2012, U.S. Bank was substituted as a successor trustee on these reinsurance agreements through two separate trust agreements, which named U.S. Bank as trustee and Companion as beneficiary. Under the terms of the trust agreements, the reinsurance companies "may direct [U.S. Bank] to substitute Assets of comparable value for other Assets presently held in the Trust Account[s] with written notification to [Companion] of the substitute Assets. [U.S. Bank] shall comply with any such direction." (ECF No. 50-2 § 4(c).) Further, under the trust agreements, the reinsurance companies promised that the assets: (1) consisted only of "Eligible Securities" as

---

[1] A fuller account of the background of this case may be found in the court's orders disposing of various motions to dismiss. (*See* ECF Nos. 41, 118, 268, 280.) For purposes of the instant motion, a somewhat abridged version of the facts as set forth in those orders will suffice. Accordingly, the court directs interested readers to its previous orders and will forego reference to the record except where the court quotes from the record, where the court refers to facts beyond those set forth in the previous orders, or where reference would be particularly useful.

defined by contract; (2) were in such form that Companion could transfer and dispose of any assets without the consent of anyone else; and (3) at all times had a value sufficient to cover 125% of the reinsurance companies' respective reinsurance obligations.

According to U.S. Bank's pleadings, Third-Party Defendant Burns founded a number of corporate entities, to which U.S. Bank refers collectively as "Southport," which acquired the reinsurance companies in 2012 and 2013. U.S. Bank alleges that Third-Party Defendant Southport Lane Advisors ("SLA") managed the asset allocation strategies, such as determining which assets to buy and sell and in what amounts, for all of the Southport companies, including the two acquired reinsurance companies. U.S. Bank asserts that Burns was, at all times relevant to this action, Southport's beneficial owner, controlling person, and chief strategist, essentially treating SLA and other Southport entities, including the reinsurance companies, as his alter egos.

On March 20, 2015, Companion filed a complaint in this court against U.S. Bank, alleging that, between May 2013 and January 2014, U.S. Bank, as trustee, approved and permitted the substitution of assets for various investments for the trust accounts. Companion asserts that U.S. Bank is liable for these substitutions because certain assets in the trust accounts violated the terms of the trust agreements.

In its January 15, 2016 answer, U.S. Bank denied that the trust agreements imposed the obligations on it that Companion asserts in its complaint and denied that its actions breached any obligations imposed by the trust agreements. (*Compare* ECF No. 1 ¶¶ 25, 30, 37, 45 *with*, ECF No. 46 ¶¶ 25, 30, 37, 45.) U.S. Bank's answer also asserted numerous affirmative defenses against Companion's claims, including, as relevant here, that Companion's injuries were caused by Companion's own acts or omissions or by the acts or omissions of Third-Party Defendants. (ECF No. 46 ¶¶ 79-80.) U.S. Bank also asserted counterclaims for breach of contract and

negligent misrepresentation against Companion based on the allegation that Companion withdrew cash and securities from the trust accounts for purposes other than those permitted by the trust agreements while falsely representing that the withdrawals were necessary to fulfill the reinsurance companies' obligations under the reinsurance agreements. (*Id.* at 13-22.)

On January 29, 2016, U.S. Bank filed a third-party complaint against Third-Party Defendants.[2] U.S. Bank argues that, if Companion's allegations are proven at trial, Third-Party Defendants are liable to Companion. First, U.S. Bank alleges that the reinsurance companies—either directly or through SLA—directed U.S. Bank's purchases of securities and other membership interests in various companies and that SLA falsely represented the values of the securities to be purchased. Second, U.S. Bank alleges that the reinsurance companies caused the trust accounts to acquire ineligible securities, directed U.S. Bank to purchase the ineligible securities, and falsely represented the values of the securities. With respect to Burns, U.S. Bank alleges that he dominated and controlled several of the corporate Third-Party Defendants and directed or participated in all of the relevant conduct.

In his answer to U.S. Bank's third-party complaint against him, Burns asserted a number of counterclaims against U.S. Bank, including, as relevant here, a claim for contribution premised on the allegation that, if, in some future litigation, Burns is found liable to Companion, then he is entitled to contribution from U.S. Bank. Burns also asserted a number of crossclaims against Companion, including, as relevant here, a claim for contribution or comparative

---

[2] In a subsequently filed amended third-party complaint, U.S. Bank added Aon Insurance Managers (Cayman) Ltd. ("Aon") as another third-party defendant. (ECF No. 131.) The court later dismissed the amended third-party complaint as to Aon for lack of personal jurisdiction. (ECF No. 280.)

negligence.[3] (ECF No. 139 at 43 to 65.) The contribution crossclaim appears to be premised on the assertion that, if Burns is found liable to U.S. Bank, then he is entitled to recover against Companion.[4] (*Id.* at 56.)

After disposing of various motions to dismiss (*see* ECF Nos. 41, 118, 268 & 280), a number of claims remain pending, which, for purposes of this motion, may be placed in one of two groups. In the first group are Companion's claims against U.S. Bank for breach of contract, breach of fiduciary duty, negligence or gross negligence, and negligent misrepresentation and U.S. Bank's counterclaims against Companion for breach of contract and negligent misrepresentation. In the second group are U.S. Bank's third-party claims against Third-Party Defendants for contribution, U.S. Bank's third-party claim against Third-Party Defendant Redwood for contractual indemnification, Burns' counterclaim against U.S. Bank for contribution,[5] and Burns' crossclaim against Companion for contribution (together, the "third-party claims").[6]

On November 14, 2016, Companion filed one of the instant motions, asking the court, pursuant to Rule 42(b) to order separate trials, one to first adjudicate the claims between Companion and U.S. Bank and another to adjudicate the third-party claims, if Companion

---

[3] Burns later stipulated to the dismissal of all other crossclaims against Companion, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (ECF No. 322.)

[4] Because the only pending claim by U.S. Bank against Burns is the contribution counterclaim, it appears that Burns' crossclaim against Companion is contingent on U.S. Bank being found liable to Companion.

[5] In its order dismissing most of Burns' counterclaims against U.S. Bank, the court dismissed the counterclaim for contribution to the extent it was premised on his liability to U.S. Bank. (ECF No. 268 at 25.) The contribution counterclaim remains pending only to the extent it is premised on Burns' liability to Companion. (Id.)

[6] Burns also filed a fourth-party complaint against U.S. Bank Trust National Association (ECF No. 143), which the court later dismissed for lack of personal jurisdiction (ECF No. 280).

prevails on its claims in the first trial. (ECF No. 279.) U.S. Bank opposes the motion. (ECF No. 294.) Burns joined in Companion's motion but "explicitly reserve[d] the right to file a separate motion to sever the third-party claims in whole or in part, citing the same, similar and/or different grounds." (ECF No. 292.)

On January 25, 2017, the court noted in a text order that, though Companion and U.S. Bank had waived their right to a jury on the first-party claims, a jury trial has been demanded for the third-party claims. (ECF No. 324.) Accordingly, the court directed Companion and U.S. Bank to file supplemental briefs addressing "how the fact that the primary claims are set to be tried to the court and that the third-party claims are set to be tried to a jury affects the analysis of [] Companion's Rule 42(b) motion." (*Id.*) In the text order, the court also gave Burns the choice of briefing the same issue or relying on the briefing of another party. (*Id.*)

On February 3, 2017, Burns filed his own motion to bifurcate the trial, which included responsive briefing to the court's text order. (ECF No. 329.) Both U.S Bank and Companion submitted their own responsive briefs, arguing that the presence of a jury strengthens their original arguments in favor of consolidation and bifurcation, respectively. (ECF Nos. 331 & 332.) Thereafter, on February 17, 2017, Companion and U.S. Bank filed responses to Burns' motion (ECF Nos. 336 & 337), and Burns filed a reply (ECF No. 374).

## II. LEGAL STANDARD

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). It further directs that, "[w]hen ordering a separate trial, the court must preserve any federal right to a jury trial." District courts have broad discretion in deciding whether to bifurcate claims for trial. *See Sentry*

6

*Select Ins. Co. v. Guess Farm Equip., Inc.*, No. 5:12-03504-JMC, 2013 WL 5797742, at *4 (D.S.C. Oct. 25, 2013) (citing *Dixon v. CSX Transp., Inc.,* 990 F.2d 1440, 1443 (4th Cir. 1993); *White v. Bloomberg,* 501 F.2d 1379 (4th Cir. 1974)); *see also* 9A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2388 (3d ed. 2008). Whether bifurcation should be ordered is to be determined based on the facts and circumstances of each case. Although bifurcation should not be ordered routinely and should remain an exception to the normal practice of all claims and issues being tried together, *see* 8 James Wm. Moore et al., *Moore's Federal Practice* § 42.20[4][a] (3d ed. 2016); 9A Wright et al., *supra*, § 2388, bifurcation is not uncommon in certain types of cases, *see F&G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999); 9A Wright et al., *supra*, § 2390.

"The party seeking bifurcation has the burden of proving that bifurcation will satisfy the expressed objectives of the rule, including furtherance of convenience, avoidance of prejudice, or enhancement of expedition and economy." 8 Moore et al., *supra,* § 42.20[8]; *see Sentry Select,* 2013 WL 5797742, at *4; 9A Wright et al., *supra,* § 2388. However, a court may order separate trials under Rule 42(b) even in the absence of a motion. *See* 8 Moore et al., *supra*, § 42.20[5][a]; 9A Wright *et al.*, supra, § 2388. Although a decision on a motion for separate trials generally turns on whether bifurcation would satisfy the expressed objectives of Rule 42(b), the Fourth Circuit has held that a court abuses its discretion when its decision, even if otherwise serving those objectives, results in inevitable prejudice to a party, such that the party cannot receive a fair trial on a claim. *See Dixon*, 990 F.2d at 1445 (citing *Arnold v. E. Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1983)).

# III. ANALYSIS

## A. Companion's Motion for Separate Trials

Companion argues that bifurcation is appropriate as it would further the ends of efficiency and judicial economy, primarily because adjudication of the claims between Companion and U.S. Bank might obviate the need for further discovery,[7] motions practice, and trial on the third-party claims. (*See* ECF No. 279-1 at 9-13.)

U.S. Bank opposes the motion on several grounds. First, U.S. Bank argues that Companion has failed to show that bifurcation would promote efficiency. (*See* ECF No. 294 at 13-16.) In its estimation, the fact that many of the third-party claims are for contribution weighs in favor of adjudication in a single trial, which would be more efficient. (*See id.* at 13-14 (citing *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 165 n.23 (2003); *Whalen v. CSX Transp., Inc.*, No. 13 Civ. 3784 (LGS)(HBP), 2016 WL 4787337, at *3, *7 (S.D.N.Y. Sept. 14, 2016); *United States v. Dravo Corp.*, No. 8:01-cv-500, 2002 WL 1832274, at *4 (D. Neb. March 6, 2002)).) U.S. Bank further contends that bifurcation would not simplify motions practice because "[t]he discovery disputes that have arisen in this case—and seem poised to continue—are between U.S. Bank and Companion, and do not involve the Third-Party Defendants." (*Id.* at 14.) Second, U.S. Bank argues that Companion has not demonstrated that bifurcation would avoid prejudice, as the only prejudice it asserts from holding a single trial is the delay in waiting for trial to commence, which is scheduled for November 2017. (*Id.* at 16.) Third, U.S. Bank argues that bifurcation should not be ordered because of its affirmative defense that Third-Party Defendants, rather than

---

[7] The court observes that discovery has concluded for all parties in this case. (*See* Fifth Amended Scheduling Order, ECF No. 314, and Text Order, dated July 24, 2017 (extending deadlines for certain depositions), ECF No. 460.) Accordingly, the court finds that the parties' arguments focusing on the impact third-party discovery has on the issue of bifurcation are no longer relevant. (*E.g.*, ECF Nos. 279-1 at 7–8, 13 & 294 at 14–15.)

U.S. Bank, are liable for Companion's injury. (*Id.* at 10-13.) If bifurcation is ordered, it argues, then it will be forced to present duplicative evidence in both trials: in the first trial, it will present evidence of Third-Party Defendant's liability for Companion's injury as a defense against its own liability for the injury, and, in the second trial, it would present the same evidence to prove its claims for contribution against Third-Party Defendants. (*Id.*)

**B. Burns' Motion for Separate Trials**

Burns, in a separate motion, has also moved to bifurcate the trial. (ECF No. 329 at 1-2.) Contained in his motion and in support thereof, Burns also briefed the jury trial issue as suggested by the court in its January 25, 2017 text order. (*Id.* at 13-15.)

While many of Burns' arguments in favor of bifurcation are similar to those of Companion,[8] Burns also raises two new arguments. First, Burns argues that South Carolina statutory law compels bifurcation. (*Id*. at 10-12.) Burns cites S.C. Code Ann. § 15-38-40 (2017) for the proposition that an action based on a theory of contribution is barred until "there is either a judgment in favor of Companion, or U.S. Bank pays the entire liability (or agrees to pay the entire liability while the first-party action is pending and then makes good on that agreement within one year) . . . ." (ECF No. 329 at 10.) Thus, Burns argues that a federal court in South Carolina must bifurcate a trial when contribution claims are present.

Burns also argues that he will be prejudiced by a consolidated trial. This is because, at the time of the filing of the motion, he "is the only party sued individually," and that his resources "are not comparable to those fighting the first-party action." (*Id.* at 22.) Thus, Burns appears to

---

[8] For example, Burns argues that bifurcation would be more efficient because of the potential mootness of the third-party claims based on U.S. Bank's prevailing in the first trial, (ECF No. 329 at 15-19), and that prejudice would result from bifurcation due to jury confusion, (*Id.* at 20-22).

argue that he is prejudiced by the fact that U.S Bank and Companion have hired more attorneys and the fact that he is on the same discovery track as them, though he was added to the case later.

**C. The Parties' Responses to the Court's Text Order**

All parties relevant to these motions responded to the court's text order directing them to brief the issue of how the presence of a jury determination of some claims affects the bifurcation issue.[9] Both Companion and Burns argue that the presence of a jury weighs in favor of bifurcation. U.S. Banks argues that it weighs in favor of a single trial.

U.S. Bank argues in its supplemental brief that Companion cannot establish that bifurcation would reduce jury confusion. (ECF No. 331 at 4.) U.S. Bank argues that, during the consolidated trial, "U.S. Bank will offer substantially the same evidence in connection with its defense of Companion's claims as it will in connection with the prosecution of its third-party claims." (*Id.*) Thus, according to U.S. Bank, bifurcation is unnecessary because there is almost nothing the jury would hear in a consolidated trial that they would not hear in a bifurcated one. While U.S. Bank admits that "[t]he determination of Companion's alleged damages is [an] issue where the jury may be exposed to evidence extraneous to the claims before it," U.S. Bank argues that this does not mean that bifurcation is necessary, because "[c]ourts routinely conduct trials where some issues are tried to the court and others to a jury." (*Id.* at 5.) U.S. Bank argues that with proper instructions to the jury, the presentation of any unrelated evidence will not confuse them. (*Id*. at 6.)

Companion argues that the presence of a jury weighs in favor of bifurcation. (ECF No. 332.) Specifically, Companion argues that a single trial risks jury confusion, because in a consolidated trial, a jury would be required to sit through the presentation of evidence and

---

[9] Burns addressed the issue in his motion to bifurcate. (ECF No. 329.)

arguments unrelated to the third-party claims that they would be tasked to determine. (*Id.* at 4.) Furthermore, Companion argues that it would be inefficient to empanel a jury that might, in the end, not even be necessary, were the court to rule against Companion on the first-party claims. (*Id*. at 5.)

Burns also argues that the presence of a jury weighs in favor of bifurcation. (*Id.* at 13-15.) Burns argues that the right to a jury trial outweighs any of the other factors in the consideration of whether to bifurcate. (*Id.* at 15.) Burns further argues that a consolidated trial would lead to jury confusion and prejudice to Burns, because the jury would hear arguments and evidence relating to the first-party claims without Burns' participation. (*Id.* at 21.) Due to the fact that the court's subject matter jurisdiction prevents Burns from being cross-claimed into the first-party action, Burns argues that he will not be able to participate in cross-examination. (*Id.*) Burns argues that "a reasonable jury may find that the Third-Party Defendants presence, but total silence, is tantamount to culpability, complicity or even some sort of collusion . . . ." (*Id.*)

Companion filed a response to Burns' motion and joined in it to the extent that it moved for bifurcation. (ECF No. 336 at 1.) However, Companion states that it "neither consents nor objects to Burns' request to adjourn the Third-Party Defendants' deadlines as set forth in the Fifth Amended Scheduling Order." (*Id.* at 1-2.) Furthermore, Companion states that it "does not join in Burns' arguments regarding the South Carolina Contribution Among Tortfeasor's Act," and "also does not join in Burns' allegations or arguments regarding the underlying facts of the case, the evidence in the case or the merits of any party's substantive claims." (*Id.*)

**D. The Court's Review**

As a general matter, the court finds that Companion has demonstrated that bifurcation would serve the objectives of promoting convenience and achieving an expeditious and

economical resolution to the claims raised by the parties. In reaching this finding, the court begins by noting that one of Rule 42(b)'s primary purposes is to facilitate the liberal joinder provisions of the Federal Rules of Civil Procedure. *See United States v. Yellow Cab Co.*, 340 U.S. 543, 555-56 (1951); *Lankford v. Ryder Truck Sys., Inc.*, 41 F.R.D. 430, 432-33 (D.S.C. 1967); 8 Moore et al., *supra*, § 42.20[1]; 9A Wright et al., *supra*, § 2387. Thus, Rule 42(b) bifurcation is particularly applicable in cases involving third-party claims, as holding a trial on third-party claims separately from a trial on the primary claims aids in enabling the court to adjudicate the third-party claims in the first place, without incurring the confusion, prejudice, and delay that would inhere to a single trial on all the claims. Moreover, as numerous authorities attest, when resolution of the third-party claims is contingent upon resolution of the primary claims, Rule 42(b)'s objectives are often best served by holding a trial on the primary claims prior to a trial on the contingent, third-party claims. *See Corvello v. New England Gas Co., Inc.*, 247 F.R.D. 282, 286-88 (D.R.I. 2008); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231 (RCL), 2007 WL 851823, at *2 (D.D.C. March 14, 2007) (citing, *inter alia*, *Webb v. Hyman*, 861 F. Supp. 1094, 1120 (D.D.C. 1994)); *Schreiber v. Lockformer Co.*, No. 02 C 6097, 2003 WL 21805122, at *1 (N.D. Ill. June 19, 2003); *Fulk v. Hartford Life Ins. Co.*, 839 F. Supp. 1181, 1185 (M.D.N.C. 1993); 8 Moore et al., *supra*, § 42.20[4][d]; 9A Wright et al., *supra*, § 2388.

For instance, when a defendant asserts claims for contribution or indemnification against third-parties that are contingent upon the defendant being found liable in the main action, many courts have ordered a separate trial for the contribution or indemnification claims. *See Corvello*, 247 F.R.D. 282; *Miller,* 2007 WL 851823; *Schreiber*, 2003 WL 21805122; *Webb*, 861 F. Supp. 1094; *Fulk*, 839 F. Supp. 1181; 9A Wright et al., *supra*, § 2389. Bifurcation in such cases is

often thought to increase convenience and efficiency because, if the defendant is found not liable in the first trial, the need for the second trial is obviated, and, if the defendant is found liable in the first trial, such a result facilitates settlement and a potential narrowing of the issues for the second trial. *See Corvello*, 247 F.R.D. at 287-88; *Schreiber*, 2003 WL 21805122, at *1; *Williams v. CSX Trans., Inc.*, No. Civ.A. 01-3433, 2002 WL 31618455, at 2* (E.D. Pa. Nov. 15, 2002).

In some cases, bifurcation of contingent third-party claims also fosters convenience, efficiency, and economy by potentially reducing the amount of discovery needed before commencing the first trial and potentially reducing or eliminating altogether the discovery needed for the second trial. *See Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984); *Johnson v. M.I. Windows & Doors, Inc.*, No. 2:11-cv-0167, 2012 WL 1015798, at *3 (D.S.C. March 23, 2012); *Corvello*, 247 F.R.D. at 287. Moreover, bifurcation in more complicated cases involving primary claims, counterclaims, and crossclaims is thought to avoid potential prejudice, as jurors presented with multiple types of claims in the same trial are apt to misunderstand the presence of third-parties, confuse the issues to be decided, and simply lump alleged wrongdoers together when allocating fault. *See Kosters v. Seven-Up Co.*, 595 F.2d 347, 356 (6th Cir. 1979); *Corvello*, 247 F.R.D. at 286-87; *Schreiber*, 2003 WL 21805122, at *1 (citing *Bailey v. N. Tr. Co.*, 196 F.R.D. 513, 518 (N.D. Ill. 2000)). The conveniences and efficiencies gained by bifurcation in such circumstances often are found to outweigh the potential inefficiencies caused by delaying the adjudication of the third-party claims and conducting two trials in which some of the evidence presented might overlap. *See Kosters*, 595 F.2d at 356; *Corvello*, 247 F.R.D. at 286-87; *Schreiber*, 2003 WL 21805122, at *1.

The instant case illustrates these points. Here, resolution of the third-party claims of U.S. Bank against Third-Party Defendants for contribution and indemnification are contingent upon

U.S. Bank being found liable for Companion's injuries.[10] If, in a first trial, U.S. Bank is found not liable for Companion's injuries, U.S. Bank's third-party claims against Third-Party Defendants would be resolved against U.S. Bank and a second trial on Third-Party Defendants' liability to U.S. Bank would be obviated. If, on the other hand, U.S. Bank is found liable to Companion in a first trial, the factual basis for the scope of liability will have been developed and this result might facilitate settlement negotiations between U.S. Bank and Third-Party Defendants on the third-party claims and might narrow the issues regarding the claims for contribution and indemnification. If separate trials are held and U.S. Bank is found not liable for Companion's injuries, then the need for an additional trial and the issues attendant thereto is obviated; and, if U.S. Bank is found liable, the issues in the third-party claims might be narrowed significantly.

Admittedly, bifurcation would introduce some risk of inefficiency, as U.S. Bank might be required to litigate in two separate trials, which may include some overlapping evidence. However, the court finds that this potential inefficiency is outweighed by the fact that, as already noted, separate trials will greatly simplify the issues, diminish jury confusion, mitigate prejudice to Companion, and more efficiently utilize the resources of the court and the parties.

---

[10] The court specifically rejects U.S. Bank's contention that the fact that the third-party claims are for contribution and indemnification weighs in favor of adjudicating all claims in a single trial. In support of this contention, U.S. Bank cites *Ayers*, *Whalen*, and *Dravo*. *Ayers* says nothing about Rule 42 or the reasons for ordering separate trials for primary claims and contingent contribution claims within the same action; it simply attests to the desirability of adjudicating both types of claims within the same action generally. *See* 538 U.S. at 165 n.23. *Whalen* applied Fed. R. Civ. P. 21, not Rule 42, and therefore is inapposite. *See* 2016 WL 4787337; *see also Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 441–42 (7th Cir. 2006) (explaining significant differences between the rules). Although the *Dravo* court did find that separating contribution claims into a distinct trial was not warranted, it did so only after determining that the small number of claims and parties at issue did not present the complexities of normal Comprehensive Environmental Response, Compensation, and Liability Act cases, in which bifurcation or trifurcation is often ordered. *See* 2002 WL 1832274, at *4–5.

Additionally, both Companion and U.S. Bank have requested a bench trial for the primary case; therefore, the trial will move along more expeditiously and there will be no need to engage in continual precautionary or curative jury instructions as to which issues are to be considered by the court and which issues are to be considered by the jury. In sum, although bifurcation introduces the risk of some inefficiency by duplicating the presentation of some evidence in both trials, the court finds, as a general matter, that bifurcation best serves the interests of efficiency and convenience as it has the potential to obviate adjudication of the third-party claims and best serves the avoidance of prejudice by alleviating the confusion that likely would arise if a jury were presented with the contingent and contradictory claims simultaneously. As the court has decided that there will be two separate trials, it need not reach decision on any remaining issues.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** Plaintiff Companion Property and Casualty Insurance Company and Third-Party Defendant and Crossclaim Plaintiff Alexander Chatfield Burns' motions for separate trials. (ECF Nos. 279 & 329.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 23, 2017
Columbia, South Carolina