**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY (n/k/a SUSSEX INSURANCE COMPANY), | ) ) ) ) ) | Civil Action No. 3:15-cv-01300-JMC |
| Plaintiff, | ) ) | **COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY'S RESPONSE MEMORANDUM IN OPPOSITION TO U.S. BANK NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF COMPANION'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| REDWOOD REINSURANCE SPC, LTD., SOUTHPORT LANE ADVISORS, SOUTHPORT SPECIALTY FINANCE, ADMINISTRATIVE AGENCY SERVICES, and ALEXANDER CHATFIELD BURNS, | ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ......................................................................................................1

FACTUAL BACKGROUND ......................................................................................2

    A.    U.S. Bank Aggressively Courts Southport as a Client............................................4

    B.    Companion Relies on U.S. Bank's Inflated Account Statements............................5

    C.    U.S. Bank Ignores Warnings That the Southport Assets Are Illiquid, Unmarketable, and Overvalued. ................................................................................8

    D.    U.S. Bank Continues to Misrepresent the Value and Nature of the Assets. ............9

ARGUMENT ...........................................................................................................10

I.    U.S. BANK'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES RESTS ON A FALSE PREMISE AND IMPLICATES NUMEROUS FACTUAL ISSUES REGARDING THE BASIS AND AMOUNT OF DAMAGES. ......10

    A.    Any Contract Damages Will Flow to BCBS, and BCBS Has Not Been Made Whole..................................................................................................................11

    B.    Numerous Disputes of Material Fact Related to the Measure of Companion's Contract Damages Remain Unresolved. ........................................13

II.    Companion's Tort Claims Are Not Time-Barred. ............................................14

    A.    The One-Year Statute of Limitations Under Section 1005(a) Does Not Apply to Companion's Tort Claims......................................................................15

    B.    Even if the Trust Code's Statutes of Limitations Apply to Companion's Alleged Torts, the One-Year Limitation Period Does Not Apply Here, Where U.S. Bank Did Not Provide a Report Adequately Disclosing the Existence of a Potential Claim. ...............................................................................17

    C.    If the One-Year Statute of Limitations Under Section 1005(a) Applies, U.S. Bank's Misconduct Requires That It Be Equitably Estopped from Raising a Statute of Limitations Defense......................................................................21

III.    COMPANION JUSTIFIABLY RELIED ON THE ASSET VALUATIONS IN THE ACCOUNT STATEMENTS. .........................................................................24

      A.    Summary Judgment Is Inappropriate Where Reliance Is Based on a Special or Fiduciary Relationship. ........................................................................25

      B.    Contrary to U.S. Bank's Assertions, the Evidence Shows Companion's Diligence Efforts Were Reasonable Under the Circumstances. ...........................27

IV.    U.S. BANK'S ADMISSIONS IN ITS MOTION FOR SUMMARY JUDGMENT RESOLVE ALL FACTUAL DISPUTES RELATED TO COMPANION'S NEGLIGENT MISREPRESENTATION ALLEGATIONS AND THIS CLAIM SHOULD BE RESOLVED IN COMPANION'S FAVOR AS A MATTER OF LAW. ..................................................................................................................29

CONCLUSION ....................................................................................................................33

# TABLE OF AUTHORITIES

**Case**                                                                                              **Page(s)**

*Ashmore v. Fowler,*
    Civil Action No. 8:14-cv-04449-JMC, 2016 WL 4089551
    (D.S.C. Aug. 2, 2016) ...........................................................................................10

*Atkinson v. Orkin Exterminating Co.,*
    604 S.E.2d 385 (S.C. 2004) .................................................................................11

*Carolina Chloride, Inc. v. Richland County,*
    714 S.E.2d 869 (S.C. 2011) ..............................................................................26, 27

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .............................................................................................10

*Crossmann Cmties. Of N.C., Inc. v. Harleysville Mut. Ins. Co.,*
    No. 4:09-cv-1379-RBH, 2013 WL 5437712 (D.S.C. Sept. 27, 2013).............................11

*Dillon County Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.,*
    332 S.E.2d 555 (S.C. Ct. App. 1985), *overruled on other grounds by*
    *Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.,*
    462 S.E.2d 858 (S.C. 1995). .................................................................................21

*Elders v. Parker,*
    332 S.E.2d 563 (S.C. Ct. App. 1985).....................................................................25

*Epstein v. Howell,*
    419 S.E.2d 379 (S.C. Ct. App. 1992)..............................................................25, 26, 28

*Erbe v. Lincoln Rochester Trust Co.,*
    214 N.Y.S.2d 849 (N.Y. App. Div. 1961) ..............................................................23

*Estate of Gump,*
    1 Cal. App. 4th 582 (1991) ..................................................................................17

*Foy v. Giant Food Inc.,*
    298 F.3d 284 (4th Cir. 2002) ...............................................................................16

*Goldston v. Bank of Am. Corp.,*
    577 S.E.2d 864 (Ga. Ct. App. 2003)......................................................................23

*Gulf States Creosoting Co. v. Loving,*
    120 F.2d 195 (4th Cir. 1941) ...............................................................................12

*Hardwick v. Bank of America, N.A.,*
    Civil Action No. 4:15-2222-MGL-KDW, 2016 WL 3563083 (D.S.C. June 8, 2016) ......21

*Holladay Towne Ctr., L.L.C. v. Brown Family Holdings, L.L.C.*,
    248 P.3d 452 (Utah 2011) ................................................................12

*Indus. Trust Co. v. Stidham*,
    42 Del. 339 (1942) ...........................................................................12

*Kelly v. S.C. Farm Bureau Mut. Ins. Co.*,
    450 S.E.2d 59 (S.C. Ct. App. 1994)................................................28

*Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Cmtys., Inc.*,
    725 S.E.2d 112 (S.C. Ct. App. 2012)..............................................21

*Malachowski v. Bank One, Indianapolis*,
    590 N.E.2d 559 (Ind. 1992) ............................................................23

*Moore v. Weinberg*,
    644 S.E.2d 740 (S.C. Ct. App. 2007)..............................................12

*Newport News Holdings Corp. v. Virtual City Vision*,
    650 F.3d 423 (4th Cir. 2011) ...........................................................10

*Osprey, Inc. v. Cabana Ltd. P'ship*,
    532 S.E.2d 269 (S.C. 2000) .............................................................12

*In re Primus*,
    436 U.S. 412 (1978)........................................................................12

*Quail Hill, LLC v. County of Richland*,
    692 S.E.2d 499 (S.C. 2010) .......................................................26, 27

*Ramage v. Ramage*,
    322 S.E.2d 22 (S.C. Ct. App. 1984)................................................25

*Redwend Ltd. Partnership v. Edwards*,
    581 S.E.2d 496 (S.C. Ct. App. 2003).........................................25, 26

*Reid v. Harbison Dev. Corp.*,
    330 S.E.2d 532 (S.C. Ct. App. 1985)..............................................28

*Regions Bank v. Kramer*,
    98 So.3d 510 (2012).........................................................................16

*Regions Bank v. Reed*,
    60 So.3d 868 (Ala. 2010).................................................................16

*Riddle-Duckworth, Inc. v. Sullivan*,
    171 S.E.2d 486 (S.C. 1969) .............................................................27

*RWE NUKEM Corp. v. ENSR Corp.*,
  644 S.E.2d 730 (S.C. 2007) .................................................................................22

*S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth.*,
  426 S.E.2d 748 (S.C. 1993) .................................................................................22

*Steele v. Victory Sav. Bank*,
  368 S.E.2d 91 (S.C. Ct. App. 1988).....................................................................25

*Turner v. Milliman*,
  708 S.E.2d 766 (S.C. 2011) .................................................................................30

*Unlimited Servs., Inc. v. Macklen Enterprises, Inc.*,
  401 S.E.2d 153 (S.C. 1991) .................................................................................28

*Verenes v. Alvanos*,
  690 S.E.2d 771 (S.C. 2010) .................................................................................31

*Wade v. Danek Med., Inc.*,
  182 F.3d 281 (4th Cir. 1999) ...............................................................................21

*Wells Fargo Bank, N.A. v. Cook*,
  775 S.E.2d 199 (Ga. App. 2015).........................................................................20

*Winburn v. Ins. Co. of N. Am.*,
  339 S.E.2d 142 (S.C. Ct. App. 1985)...................................................................31

**Statutes**

California Probate Code § 16400................................................................................17

S.C. Code Ann. § 15-3-350(5) (2015) ...............................................................14, 20

S.C. Code Ann. § 62-7-100(c) (2016).......................................................................20

S.C. Code Ann. § 62-7-105(b)(2) (2014)..................................................................25

S.C. Code Ann. § 62-7-106 (2016) ...........................................................................15

S.C. Code Ann. § 62-7-804 (2014) .......................................................................3, 31

S.C. Code Ann. § 62-7-1005(a) (2013)................................................................17, 30

**Rules**

Fed. R. Civ. P. 56(a) ..........................................................................................9, 10, 29

5 S.C. Jur. Assignments § 2 (2006) .........................................................................12

**Other Authorities**

George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees*
§ 951 (rev. 3d ed. 2017) ............................................................................................23

Restatement (Second) of Torts § 552, Comment d, at 129-30 (1977)..........................................31

Plaintiff Companion Property and Casualty Insurance Company ("Companion") respectfully submits this response memorandum of law in opposition to U.S. Bank National Association's ("U.S. Bank") Motion for Summary Judgment. (ECF No. 480.)

## INTRODUCTION

In a last-ditch attempt to avert a November trial on Companion's claims, U.S. Bank brings the instant motion for summary judgment, claiming that "undisputed facts entitle U.S. Bank to summary judgment on Companion's claims as a matter of law." Nothing could be further from the truth. In reality, U.S. Bank's motion rests on distortions of the law and the facts, implicating many hotly disputed factual matters, including when U.S. Bank placed Companion on notice of U.S. Bank's breaches of the Trust Agreements and whether Companion's reliance on U.S. Bank's own account statements was justifiable. Critically, U.S. Bank's recitation of the facts glosses over the overwhelming evidence in the record that U.S. Bank was repeatedly warned about the assets in the Trust Accounts and elected ***not*** to warn Companion while continuing to collect fees and report false and inflated asset values to Companion. In any case, these issues are best resolved on the basis of a full record, after trial, whereupon the Court will have the benefit of live expert and fact witness testimony.

What is remarkable about U.S. Bank's motion is that in its zeal to argue that Companion's tort claims are time barred, U.S. Bank now admits that the monthly account statements that it provided to Companion were deficient. Indeed, U.S. Bank now concedes that its account statements (which bear the imprimatur of U.S. Bank on their face) were so deficient that they placed Companion on inquiry notice of its tort claims against U.S. Bank by no later than January 2014. While U.S. Bank may be wrong on the law, this important admission—which was made in the context of U.S. Bank's instant motion—removes any genuine dispute of material fact that U.S. Bank's monthly account statements constituted false representations to Companion. Combined

1

with uncontested testimony from Companion and U.S. Bank witnesses, including most notably U.S. Bank's trust expert Anthony A. Guthrie, this concession provides a basis for the Court to enter judgment in favor of Companion on its negligent misrepresentation claim. Accordingly, Companion cross-moves for summary judgment on its negligent misrepresentation claim.[1]

In short, U.S. Bank's breaches of its commitments as trustee, ***followed by its repeated misrepresentations to Companion about those breaches***, defeat its motion for summary judgment. As detailed below, U.S. Bank breached its contractual and fiduciary duties by accepting for deposit and substitution illiquid, unmarketable, and highly questionable assets in the Trust Accounts, even as its employees privately began to raise questions about these assets. U.S. Bank did so even though one of its affiliates served as trustee for the primary illiquid security deposited into the Trust Accounts and thus was intimately familiar with its true nature and value. Even then, U.S. Bank continued reporting faulty valuations for the trust assets until shortly before this action was brought and, when confronted by Companion, repeatedly misrepresented that its valuations were correct. These breaches caused Companion significant damages— ███████████████ As a result, U.S. Bank's attempt to obtain summary judgment on the basis of a cherry-picked and one-sided record should be denied. Indeed, U.S. Bank's motion only serves to underscore that Companion's claims, especially its negligent misrepresentation claim, are meritorious.

## FACTUAL BACKGROUND

This case centers on U.S. Bank's breaches of contract and fiduciary duty. The governing Trust Agreements[2] established affirmative duties on the part of U.S. Bank as trustee, including,

---

[1] If U.S. Bank had made this clear concession earlier, Companion would have moved for summary judgment on August 21, 2017. However, given the chronology of events, including this concession and the testimony of U.S. Bank's trust expert on August 10, Companion was only in position to make the instant motion as a cross motion.

[2] References herein to the "Trust Agreements" are to the Dallas National Trust Agreement (attached as Ex. 1) and to the Redwood Trust Agreement (attached as Ex. 2).

among others, to (1) ensure that assets deposited into the Trust Accounts were "freely negotiable," (2) calculate the fair market value of the assets "according to the best information and belief of the Trustee," and (3) confirm that the fair market value of any assets being added to the account was not less than the fair market value of any assets being replaced. (*See* Ex. 1 §§ 4(c), 7(b), 7(f); Ex. 2 §§ 4(c), 7(b), 7(f).)  In other words, U.S. Bank was required by contract to ensure that the assets in the Trust Accounts were liquid and properly valued, and that all asset substitutions were for equivalent value.  These specific contractual duties were incremental to the minimum standard of care set for all trustees in South Carolina by statute.  *See* S.C. Code Ann. § 62-7-804 (2014) ("[T]he trustee shall exercise reasonable care, skill, and caution.").

In brief, beginning in May 2013, Southport Lane, L.P. ("Southport") initiated a scheme to withdraw the bona fide collateral assets held in the Trust Accounts[3] established for Companion's benefit and replace them with highly illiquid and questionable assets created by Southport, with assistance from U.S. Bank affiliates.[4] ████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

Against the backdrop of its persistent breaches, U.S. Bank relies heavily on the fact that Companion took credit for the collateral deposited into the Trust Accounts under the statutory

---

[3] As used herein, "Trust Accounts" refers to the "Redwood Trust Account" ███████████ and the "Dallas National Trust Account" ███████████.

[4] *Compare* Ex. 3 (listing holdings in Redwood Trust Account as of January 31, 2013) *with* Ex. 4 (listing holdings in Redwood Trust Account as of March 17, 2014), *and* Ex. 5 (listing holdings in Dallas National Trust Account as of January 31, 2013) *with* Ex. 6 (listing holdings in Dallas National Trust Account as of March 10, 2014).
████████████████████████████████████████████████
███████████████████████████████

"credit for reinsurance" provisions of South Carolina law.  (USB Br. at 3, 5, 7.[6]) ███████

████████████████████████████████████████████████████████

█████████████████████████████████████ But U.S. Bank ignores the fact that

under the Trust Agreements, the duty to determine eligibility was allocated to the grantors—*i.e.*,

Dallas National and Redwood—who *represented* to Companion that the assets were eligible for

deposit.  (*See* Ex. 1 § 1(c); Ex. 2 § 1(c).)  Put simply, Dallas National and Redwood, not

Companion, were responsible under the contracts for monitoring eligibility.

### A.    U.S. Bank Aggressively Courts Southport as a Client.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[6] U.S. Bank's Memorandum of Law In Support of Its Motion for Summary Judgment (ECF No.
480) is abbreviated herein as "USB Br."
████████████████████████████████████████████████

███████ ████████████████████████████████████████████████

███████████████████████████ █████████████████████████ ██

          ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

**B.      Companion Relies on U.S. Bank's Inflated Account Statements.**

In late December 2012, U.S. Bank and Companion, along with the Grantors, executed the Trust Agreements.  (*See generally* Ex. 1 (Dallas National Trust Agreement); Ex. 2 (Redwood Trust Agreement).)  ███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[8] *See* Ex. 34.
[9] *See* Ex. 35.
█ ████████████████████████
█ ███████████████████████████████████████████







█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

**C.    U.S. Bank Ignores Warnings That the Southport Assets Are Illiquid, Unmarketable, and Overvalued.**

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

_____

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████



**D.    U.S. Bank Continues to Misrepresent the Value and Nature of the Assets.**

██████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

## ARGUMENT

Summary judgment should only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party." *Ashmore v. Fowler*, Civil Action No. 8:14-cv-04449-JMC, 2016 WL 4089551, at *2 (D.S.C. Aug. 2, 2016) (citing *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011)). It is the burden of the moving party to show the absence of any issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and "[i]n ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party." *Ashmore*, 2016 WL 4089551, at *2 (internal citation omitted).

I.     **U.S. BANK'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT DAMAGES RESTS ON A FALSE PREMISE AND IMPLICATES NUMEROUS FACTUAL ISSUES REGARDING THE BASIS AND AMOUNT OF DAMAGES.**

The basis for and calculation of damages owed to Companion as a result of U.S. Bank's breaches of the Trust Agreements comprise perhaps the most bitterly contested issues in this case.

████████████████████████████████████████████████

███████████████████████████████████████ U.S. Bank now asks the Court to ignore these unsettled issues entirely and instead adopt the overly simplistic and unsubstantiated view that Companion never suffered any contract damages ███████████████████████.

(USB Br. at 9-10.) This conclusion relies on a tortured application of law and misleading treatment

10

of the record, and thus, rather than making the necessary showing of "no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), U.S. Bank's request for summary judgment on Companion's breach of contract claim only underscores the significant factual disputes remaining on this issue.

### A.     Any Contract Damages Will Flow to BCBS, and BCBS Has Not Been Made Whole.



But it is black letter law in South Carolina that "[t]he interest in property assigned

---

[24] U.S. Bank relies on *Crossmann Cmties. Of N.C., Inc. v. Harleysville Mut. Ins. Co.*, No. 4:09-cv-1379-RBH, 2013 WL 5437712 (D.S.C. Sept. 27, 2013), which in turn cites *Atkinson v. Orkin Exterminating Co.*, 604 S.E.2d 385 (S.C. 2004), for the proposition that South Carolina does not follow the collateral source rule in breach of contract cases.  This misreads *Atkinson*, where the Supreme Court of South Carolina actually *applied* the collateral source rule in reversing an offset to a combined jury award of damages for both breach of contract and negligence.  *Id.* at 393-94. In any event, cases declining to apply the collateral source rule are wholesale inapplicable here, since they, unlike the present case, did not involve the assignment of the breach of contract claim, which obviates any concern about a double recovery.  (USB Br. at 11-12.)

can be present, future, or contingent; it may represent contract rights to money, property, or performance, or *rights to causes of action*." *Moore v. Weinberg*, 644 S.E.2d 740, 745 (S.C. Ct. App. 2007) (emphasis added) (citing 5 S.C. Jur. Assignments § 2 (2006)).  Hence, assignments of breach of contract claims—████████████████████—are routinely held enforceable.  *See Holladay Towne Ctr., L.L.C. v. Brown Family Holdings, L.L.C.*, 248 P.3d 452, 464 (Utah 2011) ("A party may assign its right to sue for breach of contract.") (citations omitted); *Indus. Trust Co. v. Stidham*, 42 Del. 339, 343-44 (1942) ("The assignment of a cause of action founded on breach of contract, or of a verdict recovered in the suit, carries the right to judgment afterwards recovered or entered up.") (citations omitted); *Gulf States Creosoting Co. v. Loving*, 120 F.2d 195, 199 (4th Cir. 1941) (holding, under North Carolina law, "[a] cause of action for breach of contract had therefore already arisen, and it is not disputed that such a cause of action is assignable").

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████ █ ████████████████████████
████████████████████████

---

[25] ████████████████████████████████
████████████████████████     As the Supreme Court has written, "maintenance is helping another prosecute a suit; [and] champerty is maintaining a suit in return for a financial interest in the outcome." *In re Primus*, 436 U.S. 412, 424 n.15 (1978).  But the Supreme Court of South Carolina has explicitly abolished the common law prohibition on champerty: "We abolish champerty as a defense because we believe it no longer is required to prevent the evils traditionally associated with the doctrine as it developed in medieval times."  *Osprey, Inc. v. Cabana Ltd. P'ship*, 532 S.E.2d 269, 277 (S.C. 2000).

**B.** **Numerous Disputes of Material Fact Related to the Measure of Companion's Contract Damages Remain Unresolved.**

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ U.S. Bank previously represented to the Court that program performance was the ***only*** appropriate measure of damages:  In seeking and obtaining additional discovery on Companion's program performance losses, U.S. Bank expressly argued that the diminution in the value of the

13

collateral assets in the Trust Accounts—which it now says is the proper measure of damages—is not "a valid damages computation because it is not based on a loss actually suffered by Companion, only an alleged shortfall of collateral to protect it from a loss that might occur." (ECF No. 256 at 5 n.4.) U.S. Bank offers no explanation for this reversal in its position.

 Because U.S. Bank has offered no discussion or analysis on this point, this fact question remains open.

## II.    Companion's Tort Claims Are Not Time-Barred.

U.S. Bank claims that Companion's tort claims are time-barred. They are not. Contrary to U.S. Bank's argument, the one-year statute of limitations under South Carolina Code Section 62-7-1005(a) ("Section 1005(a)") does not apply to Companion's claims for breach of fiduciary duty, negligent misrepresentation, or negligence, which are instead governed by a three-year statute of limitations. S.C. Code Ann. § 15-3-350(5). Even if the provisions of Section 62-7-1005 did generally apply, the limitations period specified in subsection (a) would not because U.S. Bank did not provide Companion with a report that adequately disclosed that Companion had a potential claim against U.S. Bank, a requirement to trigger the one-year statute of limitations. Lastly, even if Companion was provided with such disclosure, any delay in filing suit was due to U.S. Bank's

14

own misconduct and as such U.S. Bank should be equitably estopped from raising a statute of limitations defense.

### A. The One-Year Statute of Limitations Under Section 1005(a) Does Not Apply to Companion's Tort Claims.

U.S. Bank asserts—without any reference to South Carolina precedent—that Companion's claims for breach of fiduciary duty, negligence, and negligent misrepresentation are in fact all claims for "breach of trust" governed by the South Carolina Trust Code (the "Trust Code"). (USB Br. at 13.) However, the claims alleged by Companion are instead standalone torts subject to a three-year statute of limitations under Section 15-3-350(5). The one-year statute of limitations under Section 1005(a) does not apply to these claims as they are not claims for breaches of trust.

There is no indication in either the Trust Code or South Carolina's case law that when a plaintiff adequately pleads the torts alleged here, the court should recast them as a breach of trust. Although the text of the Trust Code states that "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust" subject to the statute of limitations in Section 62-7-1005, ***it does not state that this statute of limitations applies to all torts alleged against trustees***. Nor do the comments to the Trust Code. Nor does South Carolina case law. The Trust Code was intended to supplement the existing common law and case law of South Carolina, "except to the extent modified by [the Trust Code]." S.C. Code Ann. § 62-7-106. Absent an express indication that the Trust Code was intended to create a statute of limitations for the torts of breach of fiduciary duty, negligence, and negligent misrepresentation, the Court should not create a new standard without any precedential support.[26]

---

[26] This would appear to be an issue of first impression in South Carolina and one that the Court need not reach. As explained below, even assuming Section 62-7-106 applies to Companion's tort claims, U.S. Bank did not meet the requirements of subsection (a), and in any event principles of equity require that U.S. Bank be estopped from raising a statute of limitations defense.

The only support U.S. Bank can muster for its argument—a handful of out-of-state cases—is not binding in South Carolina.  Moreover, several of the cases cited do not even support the position that U.S. Bank asserts, *i.e.*, that some states have found that a claim for breach of fiduciary duty or other torts must be viewed as a breach of trust under the state's applicable trust code.  For example, U.S. Bank cites *Regions Bank v. Reed*, 60 So.3d 868 (Ala. 2010), for the proposition that "if a claim substantively alleges breach of trust, it is subject to the law that governs breach of trust—no matter how it is characterized in the complaint."  (USB Br. at 15.)  This was not the holding in *Reed*.  As the Supreme Court of Alabama held in *Regions Bank v. Kramer*, "*Reed* does not stand for the proposition that claims otherwise cognizable under Alabama law . . . or by legislative enactment . . . are not available under Alabama law against a trustee in relation to that trustee's acts or omissions in administering a trust.  *Contrary to the notion that we held that such claims do not exist and should be dismissed, we simply held in Reed that those claims could be litigated in the probate court.*"  98 So. 3d 510, 521 (2012) (emphasis added).  Similarly, *Foy v. Giant Food Inc.*, 298 F.3d 284 (4th Cir. 2002), did not hold that the "gravamen common to all" of the plaintiff's claims was the improper termination of a union employee, requiring application of the collective bargaining agreement's limitations period.  (USB Br. at 16.)  Instead, the court held that the plaintiff's surviving claims were specifically preempted by Section 301 of the Labor Management Relations Act and, accordingly, such claims were governed by the limitations period applicable to breaches of a collective bargaining agreement.  *Id.* at 287-91.

Nor is it true that "[c]ourts nationwide agree" that torts alleged against a trustee should be recast as breaches of trust.  At least one state that defines breach of trust similarly to South Carolina appears to allow a claim for breach of trust to exist separately from other torts, such as negligence.  In *Estate of Gump*, the court found substantial evidence that Wells Fargo Bank, N.A., the trustee

for several trusts created under the will of Mr. Gump, could be denied certain compensation on account of its maladministration of the trust. 1 Cal. App. 4th 582, 595 (1991). The court held that Wells Fargo's "[n]egligence, which is the failure to meet the standard of care, *is also* a breach of trust by virtue of [California's Probate Code]." *Id.* (emphasis added). The applicable section of California's Probate Code states that "[a] violation by the trustee of any duty that the trustee owes the beneficiary is a breach of trust." *Id.* (citing California Probate Code § 16400). This mirrors Section 62-7-1001 of the South Carolina Trust Code. It is thus not the case that a tort alleged against a trustee must necessarily—and exclusively—be cast as a breach of trust.

> **B.    Even if the Trust Code's Statutes of Limitations Apply to Companion's Alleged Torts, the One-Year Limitation Period Does Not Apply Here, Where U.S. Bank Did Not Provide a Report Adequately Disclosing the Existence of a Potential Claim.**

According to U.S. Bank, the Trust Account statements it provided were sufficient to trigger the statute of limitations under Section 1005(a) of the Trust Code.[27]  (USB Br. at 16.)  However, this limitations period is only applicable where the trustee provides the beneficiary with a "report that *adequately disclosed the existence of a potential claim for breach of trust*." S.C. Code Ann. § 62-7-1005(a) (emphasis added). Even assuming that the statements constitute "reports" under § 62-7-1005(a),[28] they were not sufficient to provide Companion with adequate disclosure that it had

---

[27] U.S. Bank takes the peculiar position that the Trust Account statements triggered the statute of limitations, but, even though U.S. Bank provided Companion with such statements since early 2013 and the improper transfers began in May 2013, the statute of limitations was not triggered until 2014. (USB Br. at 18.) Either the statements triggered the statute of limitations, in which case it was triggered in May 2013, or they were never sufficient to trigger the statute of limitations. Of course, U.S. Bank takes this position to avoid the logical conclusion that if the statements were so facially deficient as to trigger the statute of limitations, it is necessarily the case that U.S. Bank breached its contractual and fiduciary duties as trustee for the Trust Accounts. *See* Section IV below.

[28] "Report" is not defined under § 62-7-1005(a). Whether the trust account statements provided by U.S. Bank constitute a "report" is therefore a factual dispute that should not be decided at summary judgment. If the account statements do not constitute "reports" under Section 1005(a),

a claim against U.S. Bank. █████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

    ██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

    ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

Companion's tort claims would be subject to a three-year statute of limitations, either under
Section 15-3-350(5) or under Section 62-7-1005(c).
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

U.S. Bank again cites no South Carolina cases to support its contention that the account statements provided adequate disclosure of Companion's potential claims, but *Wells Fargo Bank, N.A. v. Cook*, a Georgia case cited by U.S. Bank, is in fact "instructive" on this point.  (USB Br. at 17.)  U.S. Bank is correct that the court in that case found account statements to be "reports" triggering Georgia's similar statute of limitations for breach of trust.  *Id.*  U.S. Bank conveniently ignores, however, that in *Cook* the trust beneficiaries "wished to receive a fixed annual distribution . . . *without depleting the corpus of the trust*."  775 S.E.2d 199, 202 (Ga. App. 2015) (emphasis added).  However, over the subsequent 11 years, the trust statements furnished by Wells Fargo evidenced that "the corpus of the Trust declined in value every year." *Id.* at 202.  The beneficiaries' claims relating to the alleged failure to follow their investment objectives were therefore barred by the applicable two-year statute of limitations where the statements "consistently showed the value of the Trust declining over time." *Id.* at 204.  Here, U.S. Bank continued to misrepresent the value of the assets through late 2014, and as such Companion had no indication that the assets were worth far less than the values U.S. Bank represented or that they were not freely negotiable.

Because the Trust Account statements provided by U.S. Bank did not adequately disclose Companion's potential claims against U.S. Bank, they were not sufficient to trigger the one-year limitations period of Section 1005(a).[30]  Absent such a disclosure, the three-year statute of limitations applies to Companion's tort claims, which were thus timely filed.

---

**C.    If the One-Year Statute of Limitations Under Section 1005(a) Applies, U.S. Bank's Misconduct Requires That It Be Equitably Estopped from Raising a Statute of Limitations Defense.**

Even if the Trust Account statements that U.S. Bank provided triggered the one-year statute of limitations under Section 1005(a), U.S. Bank's own actions in continuing to misrepresent the value of the assets and affirmatively stating that ███████████████████████████ ██████ require that U.S. Bank be equitably estopped from raising it as a defense.  South Carolina courts broadly recognize equitable estoppel and it applies in any case where a South Carolina statute of limitations is implicated.  *See Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Cmtys., Inc.*, 725 S.E.2d 112, 124-26 (S.C. Ct. App. 2012); *Hardwick v. Bank of America, N.A.*, Civil Action No. 4:15-2222-MGL-KDW, 2016 WL 3563083, at *7 (D.S.C. June 8, 2016) (citing *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999)).

In South Carolina, "the doctrine of equitable estoppel may prevent resort to the statute of limitations [by the defendant] . . . . when the delay that otherwise would give operation to the statute has been induced by the defendant's conduct."  *Dillon County Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.*, 332 S.E.2d 555, 561 (S.C. Ct. App. 1985) (citations omitted), *overruled on other grounds by Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 462 S.E.2d 858 (S.C. 1995).  This doctrine is most applicable "where the aggrieved party's delay in bringing suit was caused by his opponent's intentional misrepresentation; but deceit is not an essential element of estoppel."  *Id.* (citations and quotation marks omitted).  Instead, it "*is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped* in allowing the limitations period to expire."  *Id.* (emphasis added; citations and quotation marks omitted).  The issue of whether a defendant is estopped from claiming a statute of limitations bars a particular claim "is ordinarily a question of fact," and as such "summary judgment is appropriate where there is *no evidence* of conduct on the defendant's part warranting

21

estoppel." *RWE NUKEM Corp. v. ENSR Corp.*, 644 S.E.2d 730, 734 (S.C. 2007) (emphasis added).

The elements of estoppel with respect to the party estopped are: "(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts." *S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth.*, 426 S.E.2d 748, 750 (S.C. 1993) (citations omitted). With respect to the party claiming the estoppel, the elements are: "(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) prejudicial change in position." *Id.*

There is ample evidence that Companion reasonably relied on U.S. Bank's false representations concerning the assets in the Trust Accounts. That Companion was entitled to and expected to rely on the statements provided by U.S. Bank is discussed at length in Section III below,

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

That Companion's reliance on U.S. Bank, in its capacity as trustee, was reasonable and is sufficient for purposes of equitable estoppel is further supported by similar cases. *See, e.g.*, *Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 563-64 (Ind. 1992) (reversing lower court's summary judgment ruling and holding that a question of fact existed regarding reliance on a trustee's representation because "the notion that the Beneficiaries were not entitled to rely upon the good faith of [Trustee Bank One], but were instead under some duty to be suspicious of Bank One's activities and to investigate whether Bank One's representations were true, would seem to undercut the very essence of a trust relationship"); *Goldston v. Bank of Am. Corp.*, 577 S.E.2d 864, 869 (Ga. Ct. App. 2003) (holding that trustee's "own fraud which deterred or debarred the bringing of an action will toll the statute of limitations" and distinguishing a case where the trustee had provided accurate account statements rather than "with[olding] information which would have allowed [the plaintiff] to discover her cause of action"); *Erbe v. Lincoln Rochester Trust Co.*, 214 N.Y.S.2d 849, 852-54 (N.Y. App. Div. 1961) ("[I]t should not be held that a trustee can take advantage of the limitations statute when the beneficiaries of the trust may have been led to believe that there was no breach of the relationship by statements of false facts or concealment of true facts by the fiduciary"); *see also* George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 951 (rev. 3d ed. 2017) ("If the beneficiary does not learn of the breach or

repudiation because the trustee, by fraud, concealment, or other wrongful conduct keeps the beneficiary in ignorance of the situation, clearly the Statute of Limitations should not run.").

On this basis, U.S. Bank should be estopped from asserting a statute of limitations defense. It would be inequitable to allow U.S. Bank to take advantage of a such a defense where it was the continued misrepresentations on the part of U.S. Bank, ████████████████████████████ ██████████████████████████████, that caused any delay on Companion's part in pursuing its claims against U.S. Bank.

## III.    COMPANION JUSTIFIABLY RELIED ON THE ASSET VALUATIONS IN THE ACCOUNT STATEMENTS.

U.S. Bank challenges only a single element of Companion's negligent misrepresentation claim:  Companion's justifiable reliance on the inaccurate monthly account statements provided by U.S. Bank.  Essentially, U.S. Bank argues that because Companion feasibly could have uncovered U.S. Bank's misrepresentations regarding the value of the assets in the Trust Accounts, there can be no justifiable reliance.  (USB Br. at 23.)  This argument is fundamentally flawed, as it ignores the fiduciary and contractual relationship between Companion and U.S. Bank, which frames any obligation Companion had to independently verify the statements of U.S. Bank.  As the Court recognized in its opinion denying U.S. Bank's motion to dismiss on this count, "Plaintiff has presented an interpretation of § 7(l) and an argument regarding Defendant's fiduciary duties under the TA, which permit the court to infer that Plaintiff justifiably relied on Defendant's representations."  (Order and Opinion, ECF No. 41 at 16.)  Discovery has only confirmed that Companion's reliance was justified.  At a bare minimum, whether Companion's reliance was justified, in the context of its contractual and fiduciary relationship with U.S. Bank, is a disputed issue of material fact.

A.    **Summary Judgment Is Inappropriate Where Reliance Is Based on a Special or Fiduciary Relationship.**

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████    Critically, however, U.S. Bank does not account for the contractual and fiduciary relationship between Companion and U.S. Bank.  In making a determination regarding justifiable reliance, it is crucial to consider the positions and relations of the parties.  *See Elders v. Parker*, 332 S.E.2d 563, 567 (S.C. Ct. App. 1985) ("Whether reliance is justified in a given situation requires an evaluation of the circumstances involved, including the positions and relations of the parties.").  This is particularly true in the context of a fiduciary relationship, *i.e.*, a relationship "founded on trust and confidence reposed by one person in the integrity and fidelity of another." *Id.* at 476 (citing *Steele v. Victory Sav. Bank*, 368 S.E.2d 91, 93 (S.C. Ct. App. 1988)); *see also* S.C. Code Ann. § 62-7-105(b)(2) (stating that it is "the duty of a trustee to act in good faith and in accordance with the purposes of the trust").  That a fiduciary and contractual relationship exists between U.S. Bank and Companion is not disputed.  *See, e.g.*, *Ramage v. Ramage*, 322 S.E.2d 22, 27 (S.C. Ct. App. 1984) (holding that trustees are fiduciaries).

Here, in the context of a fiduciary and contractual relationship between the Parties, it would be inappropriate for the Court to hold that Companion did not justifiably rely on the statements by U.S. Bank regarding the valuation of the Trust Account assets.  Justifiable reliance is typically a question to be resolved by the finder of fact rather than being amenable to resolution at the summary judgment stage.  *Redwend Ltd. Partnership v. Edwards*, 581 S.E.2d 496, 504-05 (S.C. Ct. App. 2003); *Epstein v. Howell*, 419 S.E.2d 379, 381 (S.C. Ct. App. 1992) ("Issues of reliance and its reasonableness . . . are preeminently factual issues for the triers of the facts") (quotations and citations omitted).  ***Moreover, where a fiduciary relationship exists, reliance is far more***

*likely to be justifiable*.  For example, in *Epstein*, the court held that a corporation's shareholders who agreed to buy the ownership interest held by the corporation's president and manager were entitled to rely on seller's incorrect statement that the corporation's payroll and FICA taxes had been paid.  *Id.* at 380-82.  Citing the defendant's fiduciary duty, the court found the plaintiffs' reliance to be justified, "notwithstanding that [the Plaintiff] did not trust [the Defendant] and that the [Plaintiffs] might have ascertained the falsity of the representation had they investigated."  *Id.* at 381; *see also Redwend*, 581 S.E.2d at 506 (holding that a jury question existed regarding justifiable reliance in the context of the fiduciary relationship that exists between partners in a partnership).

      U.S. Bank's reliance on *Quail Hill, LLC v. County of Richland* and *Carolina Chloride, Inc. v. Richland County* is therefore entirely misplaced.  In those cases, the plaintiffs sought to develop certain plots of land and inquired with the local government concerning their zoning designation. *Quail Hill, LLC v. County of Richland*, 692 S.E.2d 499, 501 (S.C. 2010); *Carolina Chloride, Inc. v. Richland County*, 714 S.E.2d 869, 871-73 (S.C. 2011).  In both cases, the government official who responded to the inquiries provided inaccurate information about the plots' zoning classification upon which the plaintiffs relied.  *Quail Hill, LLC*, 692 S.E.2d at 501; *Caroline Chloride, Inc.* 714 S.E.2d at 871-72.  The court held the plaintiffs were not in fact justified in relying upon these statements, as they were contradicted by the official zoning maps, which the plaintiffs could have consulted.  *Quail Hill, LLC*, 692 S.E.2d at 509; *Carolina Chloride, Inc.*, 714 S.E.2d at 875-76.  ***Crucially, however, there was no relationship whatsoever between the plaintiffs in Quail Hill/Carolina Chloride and the government officials who provided the incorrect statements.***  *See Epstein*, 419 S.E.2d at 382 n.3 (distinguishing as inapposite to the

determination of justifiable reliance a case not involving a fiduciary relationship).[31]  As such, these plaintiffs are not "just like" Companion, with whom U.S. Bank had both a contractual and fiduciary relationship.  (*See* USB Br. at 24.)

### B. Contrary to U.S. Bank's Assertions, the Evidence Shows Companion's Diligence Efforts Were Reasonable Under the Circumstances.

While U.S. Bank concedes that Companion could rely on the monthly account statements that misrepresented the value of the Trust Account assets, U.S. Bank nevertheless argues that Companion had an independent diligence duty to confirm that the values represented were correct,

█████████████████████████████████████████████████████

████████████████████████  (USB Br. at 23-25.)  But U.S. Bank offers no support as to why such an inquiry would have been necessary under the circumstances.

████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████  Companion had every right to believe that U.S. Bank, a reputable institution with no history or reputation of making false statements, would provide accurate account information.  *See Riddle-Duckworth, Inc. v. Sullivan*, 171 S.E.2d 486, 492 (S.C. 1969) (finding justifiable reliance was a question for the jury where defendant "held himself out to the public and knowledgeable and experienced").  ████████

█████████████████████████████████████████████████████

---

[31] The courts in *Quail Hill, LLC* and *Carolina Chloride, Inc.* also held that reliance was not justified because the misrepresentations concerned matters of law, which are not actionable.  *Quail Hill, LLC* 692 S.E.2d at 509; *Carolina Chloride, Inc.*, 714 S.E.2d at 875-76.  That is not the situation here, where the valuation of the Trust Account assets is a question of fact.
█ ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

According to South Carolina law, a plaintiff who has a right to rely on the underlying truth of a defendant's statements has no duty to make inquiries beyond those statements. In *Kelly v. S.C. Farm Bureau Mut. Ins. Co.*, a dispute concerning the scope of the Plaintiff's insurance coverage, the Court of Appeals affirmed the trial court's denial of Defendant's directed verdict motion, which had argued that there could be no justifiable reliance when Defendant had not read the insurance policy setting forth the terms of her coverage. 450 S.E.2d 59, 61-63 (S.C. Ct. App. 1994). The court found that where the defendant had made inquiries about the scope of coverage, she "reasonably relied upon her agent whom she trusted to provide her with the same coverage she enjoyed under [a previous insurance policy]," even though a review of the policy would have disclosed the lack of coverage. *Id.* at 63. Nor is such reliance justified solely in the context of a customer-insurance agent relationship.[33]

Here, U.S. Bank raised no concerns that would have led Companion to question the accuracy of the asset valuations U.S. Bank provided in the account statements. In light of this, U.S. Bank cannot argue that Companion's diligence efforts were unreasonable. *See Macklen*, 401 S.E.2d at 155 (holding reasonableness to be a jury issue where defendant did nothing to place plaintiff on notice of a problem). ███████████████████████████████

---

[33] *See, e.g.*, *Reid v. Harbison Dev. Corp.*, 330 S.E.2d 532, 534 (S.C. Ct. App. 1985) (holding that purchasers of a residential lot could rely on seller's representations and had no independent obligation to review public land records); *Unlimited Servs., Inc. v. Macklen Enterprises, Inc.*, 401 S.E.2d 153, 155 (S.C. 1991) (finding that tenants could rely on statements by landlord regarding access road to property where "it does not appear that anything was ever done to put [defendant] on notice that there was a problem"); *see also Epstein*, 419 S.E.2d at 381 (stating that the plaintiffs' reliance was reasonable even when they did not trust the defendant and might have ascertained the falsity of the representation had they investigated).



In such circumstances, reliance is justified and Companion had no obligation to investigate further.

In light of the fiduciary nature of Companion and U.S. Bank's relationship as well as the undisputed evidence that shows Companion had no reason to doubt the reliability of the account statements, the Court should deny U.S. Bank's motion for summary judgment on Companion's claim for negligent misrepresentation.

## IV. U.S. BANK'S ADMISSIONS IN ITS MOTION FOR SUMMARY JUDGMENT RESOLVE ALL FACTUAL DISPUTES RELATED TO COMPANION'S NEGLIGENT MISREPRESENTATION ALLEGATIONS AND THIS CLAIM SHOULD BE RESOLVED IN COMPANION'S FAVOR AS A MATTER OF LAW.

Companion cross-moves for summary judgment on its negligent misrepresentation claim. This claim seeks recovery for the damages Companion suffered because of the false asset values U.S. Bank reported in the monthly account statements that it issued while serving as trustee of the Trust Accounts.  (*See supra* at 6-10; Complaint at ¶ 63 (ECF No. 1).)  U.S. Bank now acknowledges that these statements included false asset values, conceding in its instant motion that the account statements were deficient to the point of placing Companion on inquiry notice of its tort claims.  (USB Br. at 18.)  This unequivocal concession, "shown by undisputed facts" (USB Br. at 22), leaves "no genuine dispute as to any material fact" with respect to Companion's

negligent misrepresentation allegation, thereby entitling Companion to summary judgment on this claim as a matter of law.  Fed. R. Civ. P. 56(a).

In order to establish liability for negligent misrepresentation, Companion must show by a preponderance of the evidence:  (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.  *See Turner v. Milliman*, 708 S.E.2d 766, 769 (S.C. 2011) (citation omitted).  None of the elements of Companion's negligent misrepresentation claim remain materially disputed.

In arguing that its own account statements were so facially deficient that Companion should have been put on notice that U.S. Bank was breaching its duties as trustee, U.S. Bank has admitted to making false representations to Companion: "Based on the undisputed facts [the account statements] are 'report[s] that adequately disclosed the existence of a potential claim for breach of trust.'"  (USB Br. at 16 (citing S.C. Code Ann. § 62-7-1005(a)).)  While U.S. Bank errs in its interpretation of the legal significance of this concession, there is no way that U.S. Bank could present this argument, consistent with its duty of candor, unless the account statements disclosed a potential breach of trust claim ***because they reflected misrepresentations by U.S. Bank concerning the fair market values of the assets in the Trust Accounts***.  That is because Companion's tort claims are all predicated on the falsity of the asset values in the monthly account statements.  Stated differently, U.S. Bank argues that the asset values were ***so obviously deficient*** that mere receipt of the account statement should suffice to trigger the running of the statute of limitations.  While it is disputed that Companion ***knew*** that the asset values were inflated, the first

30

element of Companion's negligent misrepresentation claim is satisfied, as there is no dispute as to any material fact regarding whether U.S. Bank made a false statement to Companion.

Under the Trust Agreements, U.S. Bank was responsible for furnishing Companion with "a statement of all Assets in the Trust Account including their fair market value" on a monthly basis. (Ex. 1 at 10; Ex. 2 at 10.) Under South Carolina law, this constitutes a pecuniary interest. "The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even [if] he receives no consideration for it at the time." *Winburn v. Ins. Co. of N. Am.*, 339 S.E.2d 142, 146-47 (S.C. Ct. App. 1985) (citing Restatement (Second) of Torts § 552, Comment d, at 129-30 (1977)). Similarly, as trustee U.S. Bank owed a duty of care to Companion, the beneficiary of the trust. S.C. Code Ann. § 62-7-804 ("A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution."); *see also Verenes v. Alvanos*, 690 S.E.2d 771, 773 n.4 (S.C. 2010) ( "[A] trustee owes a trust a duty of reasonable care, skill, and caution.") (citing S.C. Code Ann. § 62-7-804). Thus, the pecuniary interest and duty of care elements are met.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

Companion is entitled to summary judgment on the element of reasonable reliance for the same reasons U.S. Bank's motion for summary judgment on Companion's negligent misrepresentation claim should fail: Companion's reliance on the account statements was reasonable due to their facial appearance of reliability and the contractual and fiduciary relationship through which they were provided.  (*See supra* at Section III.)   Beyond the reasonableness of Companion's reliance on the account statements, Companion did in fact rely on U.S. Bank's representations. ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

Finally, that Companion suffered a pecuniary loss as a proximate result of its reliance on the account statements is undisputed.  As the Court found in denying U.S. Bank's motion to dismiss, Companion "has sufficiently alleged that it suffered a pecuniary loss as the proximate result of these representations" (ECF No. 41 at 16), and nothing in the factual record contradicts this.  By relying on the asset values provided by U.S. Bank, Companion was unable to prevent the

---

██████████████████████████████████████████████

loss of value of its collateral and the other ██████████████████ that caused the harm

at issue in this case.[35]

## CONCLUSION

For all of these reasons, U.S. Bank's Motion for Summary Judgment should be denied in

full and Companion's cross-motion on its claim for negligent misrepresentation should be granted.

Respectfully submitted,

By: /s/Adam J. Hegler

MALLOY LAW FIRM
    Gerald Malloy (Fed. ID 5630)
    gmalloy@bellsouth.net
    108 Cargill Way
    Hartsville, SC 29551
    (843) 339-3000 (telephone)
    (843) 332-4646 (fax)

OF COUNSEL:
WILLKIE FARR & GALLAGHER LLP
    Todd G. Cosenza (*pro hac vice*)
    tcosenza@willkie.com
    Charles D. Cording (*pro hac vice*)
    ccording@willkie.com
    787 Seventh Avenue
    New York, NY 10019
    (212) 728-8000 (telephone)
    (212) 728-8111 (fax)

NELSON MULLINS RILEY &
SCARBOROUGH LLP
    David E. Dukes (Fed. ID 00635)
    david.dukes@nelsonmullins.com
    John D. Martin (Fed. ID 7651)
    john.martin@nelsonmullins.com
    Amanda S. Kitts (Fed. ID 9005)
    amanda.kitts@nelsonmullins.com
    Adam J. Hegler (Fed. ID 11401)
    adam.hegler@nelsonmullins.com
    Frank B. B. Knowlton (Fed. ID 2379)
    frank.knowlton@nelsonmullins.com
    Heyward D. Bonyata (Fed. ID 10692)
    heyward.bonyata@nelsonmullins.com
    Post Office Box 11070
    Columbia, SC 29211
    (803) 255-5524 (telephone)
    (803) 255-9163 (fax)

*Attorneys for Plaintiff*

---

[35] If the Court were to grant Companion's motion for summary judgment on this claim, Companion would request that it present evidence at a hearing on its damages resulting from U.S. Bank's negligent misrepresentation.